# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Peter Rickmyer
       Plaintiff,

    vs.

Defendants Michael (kip) Browne, Megan Goodmundson,
Dan Rother, Robert Hodson, John George Hubbard II,
Dave Haddy, Ann McCandless, John Does 1-3
in their individual capacities, and in their official capacity
with Jordan Area Community Council, Inc.

Defendants David Schooler, John Willard Hoff, William
McDonald and John Does 4-6 in their individual capacities
and Jordan Area Community Council, Inc.,

       Defendants.

Court File Number,

13-559 SRN/SER

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

## AFFIDAVIT OF COMPLAINT

STATE OF MINNESOTA  )
                    ) ss.
COUNTY OF HENNEPIN )

    I, Peter Richard Rickmyer, the Plaintiff in the above named caption, submit this

Affidavit of complaint, sworn to under oath regarding the facts surrounding the filing of

complaint.

### INTRODUCTION

    Peter Rickmyer files this "new" lawsuit in Federal Court per Rule 60.02(c) and Minn.

Stat § 548.14 since defendant Michael Kip Browne is a licensed attorney who committed Fraud

upon adverse party and Fraud upon the Court in 27-cv-10-3378 and Fraud upon the Court in

27-cv-11-11012.

    Peter Rickmyer sues for First Amendment Retaliation under 42 U.S.C.A. §§§ 1983,

2



1985, 1986 and Prohibition against retaliation and coercion of Americans Disabilities Act of

1990 42 U.S.C.A. § 12203, Interference with judicial process under as well as intentional

interference of contract, Breach of Contract, Default Judgment against John Hoff.

## PARTIES

1.  Plaintiff **Peter Rickmyer** ("Rickmyer", "I", "me", "my", "myself") is an individual, who

resides in Hennepin County, Minnesota. Signed a contract around September of 2006 with

Minnesota Department of Corrections ("MDOC"), at material times and under supervision of

Hennepin County Parole Department ("HDOC"), is eligible member of JACC and Approx.

February of 2009 appointed to Finance committee of JACC. I am disabled.

2.  Defendant **Jordan Area Community Council** ("JACC") is a Minnesota non-profit

corporation is considered a government instrumental, located in Jordan neighborhood in

Hennepin County, Minnesota. JACC  rents 2539 Irving Avenue North to HDOC.

3.  Defendant **Michael (kip) Browne** ("Browne") at material times lived in Hennepin

County, Minnesota and in 2009, 2010, 2011 and held leadership roles in JACC.

4.  Defendant **Megan Goodmundson** ("her") lives in Hennepin County,  Minnesota and at

material times Board member of  JACC, significant other is Hoff.

5.  Defendant **John Willard Hoff** ("Hoff") lives in  Hennepin County, Minnesota operates

JohnnyNorthside ("website", "blogged") and covers stories in Jordan neighborhood and

Significant is a member or eligible member of JACC.  Hoff's significant other is Goodmundson.

6.  Defendant **Robert Hodson** ("Hodson") lives in Hennepin County, Minnesota and at

material times Board member, Corporate treasurer of JACC, significant other is Rother.

7.  Defendant **Dan Rother** ("Rother") lives in Hennepin County, Minnesota  and at material

times a member, and Board of Directors of JACC, Rother's significant other is Hodson.

3

8.   Defendant **William McDonald** ("McDonald") works for HDOC as a Parole Officer and at material times supervised me.

9.   Defendant **David Schooler** ("Schooler") a licensed attorney who represented defendants JACC et al. and was sued by me in 27cv-10-3378.

9a. Defendant **Ann McCandless** lives in Hennepin County, Minnesota and at material times a member, Board of Directors of JACC and a retired Minneapolis Police Officer.

## JURISDICTION

10. Pursuant to 28 U.S.C.A. § 1331, This Court has jurisdiction over this matter, which arises in part under the laws of the United States including 42 U.S.C.A. §§§§ 1983, 1985, 1986, 12203. This Court has the authority to take jurisdiction over all other claims, as supplemental jurisdiction.

## FACTUAL STATEMENT

11. Defendant Browne on behalf of Goodmundson, Hoff, Hodson, Rother, Hubbard, Haddy, McCandless, Browne and John Does 1-5 ("JACC group") committed Fraud on the Court by not informing the court Browne requested his organization (JACC) tenant HDOC to deny me from stating a claim by prohibiting me from amending the complaint to survive summary judgment motion. In 27-cv-10-3378 ("10-case") and 27-cv-11-11012.

12. Defendant Browne on behalf of Goodmundson, Hoff, Hodson, Rother, Hubbard, Haddy, McCandless, Browne and John Does 1-5 ("JACC group") committed Fraud on the Court by not informing the court JACC's tenant HDOC granted Browne's request for relief.

"I hope you find this acceptable and it provides you the relief you are seeking."

13. These new conditions provided Browne with "relief" in the 10-case.

14. Goodmundson and Hoff conspired with McDonald to obtain relief from10-case by

4

having McDonald meet *ex parte* on 3-3-2011 with Judge Blaeser to rule summons is invalid.

15. Defendant Hoff on behalf of JACC group on November 15, 2009 blogged:

> Why is Pete showing … around JACC meetings again? Hasn't Pete learned
> his lesson after his last episode of sticking his nose into JACC business?

16. Defendant Hoff On July 23, 2009 blogged:

> [Peter] could of have lived a low-key life in North Minneapolis, checking in with [his]
> probation officer in a surly-yet-dutiful way, generally minding his p's and q's so the non-
> sex-offender world wouldn't lower the boom on [his] miserable … . Instead, [Peter] went
> around trying to slap a restraining order on [Hubbard] a member of JACC.

17. This blog shows Hoff's malice over me being able to exercise First Amendment rights,

such as: i) participating in a neighborhood meeting; and ii) filing lawsuits; iii) Exercising my

First Amendment rights with regard to a member of JACC and being at liberty.

18. Defendant Hubbard was considered a danger to society because of two convictions of

carrying guns illegally and was on probation with HDOC when JACC authorized Hubbard and

Haddy to come to my house in May of 2009 knowing they were not welcomed and making false

allegations.

19. Someone convinced Minneapolis Police Officer Olson to make statements which were

false, Olson later recanted and will not in the future make any statements I was representing

myself as part of JACC's public safety committee.

20. Until the JACC group became interested in running me out of my neighborhood and

ultimately depriving me of my liberty on July 23, 2009 and March 9, 2011, I was living in the

community, cognizant of my conditions.

21. Browne On July 22, 2009, through his wife (who is also a government employee), sent an

email to my parole officer, requesting to see Plaintiff's conditions of release. Browne's wife

specifically referenced I had filed an appeal on the HRO (Hubbard) matter, stating that I had

5

mentioned JACC in his appeal. Of course, I had a right to file the appeal, and a right to mention JACC, parole agent(s) acquiesced in sending Browne's wife a copy of my conditions and faxed them to Browne.

22. On July 23, 2009, I was arrested on alleged parole violations.

23. At various times herein, Goodmundson, Hoff and McDonald have made inaccurate claims about what my conditions were, and then demanded that I follow the [inaccurate] condition. This was done with intent to harm me, in the form of more and more restrictive conditions from my agent, or to prevent me from exercising First Amendment rights, and ultimately, with the intent of taking my liberty from me.

24. I was arbitrarily deprived of my liberty by McDonald on behalf of JACC group as set forth below. In sum McDonald committed fraud on the judicial system (MDOC Hearings and Release). McDonald took this action of depriving me of my liberty, not for some legitimate correctional reason, but to please the individual defendants in this case: JACC group.

25. McDonald using my disability (cognitive deficits) to accuse me of only wanting to hear what I wanted to hear (selective hearing), to help violate my parole in 2009 and 2011. When I requested directives in writing McDonald either said he would, then refused or just refused as McDonald knew I was following his directives, however telling MDOC I was not.

26. I attended Board and Finance meetings February through April of 2009 and I was appointed to finance committee where I voiced my opinion the JACC house was inappropriate and should move, I also asked pin pointed questions about JACC's rental property. JACC refused to move so I requested government to take action. (See Letter dated June 11, 2010 and Email dated October 18, 2011)

27. JACC group took steps to retaliate and punish me by conspiring with McDonald to

6

restrict or take away my Rights which included but not limited to: freedom of speech,

association, liberty, access to courts, due process, free from cruel and unusual punishment for

voicing my opinion that persons with disabilities should not be excluded.

28. Hoff on behalf himself and JACC group On November 15, 2009 blogged:

> [Peter is not] allowed to touch a computer, be on a computer, write things on a computer, etc. YET THIS DOCUMENT WAS OBVIOUSLY WORD PROCESSED and includes a printout of an email, which obviously originated on the internet. [Hoff] suspect somebody will be having a talk with [Peter's] probation officer / case manager / ... zoo keeper / whatever on Monday morning, so [Peter] might want to be sure to enjoy the weekend.

29. This statement shows Hoff's: a) intent to retaliate against me for exercising First

Amendment rights; and b) Hoff's association with individual(s) who intended to misuse Parole

agent Bobbie C. Jones ("Jones") to harm befall me, a form of retaliation, but also intent to

infringe upon my liberty interest. Indeed, Hoff said as much, blogging later, "Pete should be

locked away for life ..."

30. Hoff later blogged that he sent the following email to my Parole agent Jones:

> I am forwarding a document which was apparently created by [Peter ...]. This document was OBVIOUSLY originated on the internet. As you're well aware, Peter is not supposed to have anything to do with computers.

> The document was provided to me and my blog by a neighborhood leader, who I am "blind cc'ing" on this email. Recently, Peter handed the document over at a neighborhood meeting of the JACC describing the document as his "grievance."

> This matter has already been written about on my blog, and here is a link to that post. ...

> Would you please look into this matter and deal with Peter's latest episode?

> Thanks so much for your assistance.

31. It is not accurate that I had a condition-of-release-condition that I could not have

"anything to do with computers." Certainly not the broad and indirect definition used by Hoff.

Hoff's definition would mean that I could not receive a paper copy of an email, and then utilize it

to my protection or benefit, or to petition government for redress of grievances. Those were not my conditions.

32. The email shows that Hoff was not only retaliating against me for exercising my First Amendment rights, but Hoff was attempting to enlist a government official to assist in accomplishing the goal.

33. As early as November 16, 2009, Hoff knew I was, indeed, allowed to use the Internet while on supervision. This clearly upset Hoff to a point Hoff started harassing Agent Jones by publicly vilified and humiliated Jones.

34. According to Hoff, Browne on behalf of JACC group also made repeated phone calls to my Parole agent attempting to enlist the government official to aid and abet his retaliation of me.

35. In February 2010, having borne what I considered frequent harassment, I commenced a lawsuit against defendants JACC group and several others associated with them (10-case).

36. Hoff on behalf of JACC group misrepresented facts and or lied on his website on February 20, 2010 by stating "[Peter's] incredible, rambling, gibberish-filled **96 page so-called lawsuit"** for the purposes manipulating the general public to write letters, email or call HDOC, MDOC and Fourth Judicial District to complain about me in attempt to take away my rights.

37. Hoff attended law school and has represented himself in court hearings and is acutely aware the 10-case complaint was 12 pages and Hoff had a responsibility not to misrepresent facts or be untruthful; (See settlement agreement exhibit a (10-case lawsuit))

> see *In re Special forces Ministries, et al., Respondents, vs. WCCO Television, a subsidary of CBS Inc., et al., 584 N.W.2d 789 (Minn. 1998).* Appellants argue that respondents cannot prove fraud because Jonson had not duty to disclose that she worked for WCCO. [HN7] Fraud requires an affirmative misrepresentation, and a person generally has no duty to disclose material facts. *L & H Airco, Inc. v. Rapistan Corp., 446 N.W.2d 372, 380 (Minn. 1989).* However a duty is imposed when disclosure is necessary to clarify information already disclosed which would otherwise be misleading." *Id,; see also M.H. v. Caritas Family Servs., 488N.W.2d 282, 288 (Minn.*

*1992)* failure of adoption agency to reveal child's complete genetic background to prospective parents held actionable.

38. Hoff on his website on February 20, 2010, by stating;

[Peter's] incredible, rambling, gibberish-filled **96 page so-called lawsuit**

39. Hoff on his website on February 20, 2010, blogged;

Common sense would argue somebody in such a highly-publicized, pariah-like status would do best to just keep their head down and avoid giving offense to the world by, for example, showing up at a JACC meeting

But Peter Rickmyer … doesn't appear to accept his short leash or the severe-yet-sensible restrictions placed upon his … hide.

Yes, Peter may have the "right" to show up at public functions --- until his overworked zoo handlers tell him otherwise and reel him in, which it appears has happened a few times … but does Peter have a "right" not to have his actions questioned in public?

Somehow [Peter] manages to put Sheriff's deputies at his service, serving his worthless paper. It is blasphemy and an outrage: armed, trained, socially valuable sheriff's deputies at the beck and call of [Peter] serving his frivolous legal paper!

Somebody needs to talk to Pete's keeper, Bobbi Chavalier-Jones, and find out how Pete has managed to carve out this unacceptable latitude beneath her very nose.

Just the day before yesterday, Vice Chair Kip Browne was served with the purported lawsuit document, as well as attorney David Schooler, while they waited outside a courtroom for a hearing on "Old verses New Majority" JACC issues. …

 **(I insist on calling the 96-page manifesto a "purported" or "alleged" lawsuit** because I believe it fails to state a claim. It is more along the lines of a long, rambling complaint wrongly categorized as a lawsuit)

Rickmyer has fired the first salvo in this conflict … a lawsuit … that's war. [T]hat "shot across the bow" will be answered with "legal shock and awe." … [T]he reverberations of his outrageous legal paper will echo far beyond his small desperate, pathetic life. …

40. As noted above in Hoff's blog, Browne was served with the 10 case. Quickly thereafter, Browne called my Parole officer to complain that I had the Sheriff's department serve Browne with process, and that this was an "abuse " of the system.

41. On February 24, 2010, Browne again called Community Corrections, specifically asked

what the government agent was going to do about the 10 case I had brought against him. Browne complained that my lawsuit was "frivolous."

42. Agent Jones properly told Browne that topic was not related to the supervision role. Agent Jones properly stated that Corrections could not infringe on my civil rights by directing me not to file a lawsuit.

43. When agent Jones refused to take part in Hoff's (on behalf of Browne and JACC group) retaliation against me by JACC group and refused to infringe my First Amendment rights, Hoff (for himself and as an agent, aider or abettor of Browne and JACC group) publicly vilified and humiliated agent Jones on Hoff's blog. This became so severe that Agent Jones was removed from supervising me because she was fearful about retaliation against her family including herself.

44. I allege that Hoff and Browne on behalf of JACC group sought to bully agent Jones off my case, because she was defending my rights and liberty (as agent Jones was required by law to do), which was counter to their agenda.

45. Goodmundson, who uses the handle "NoMi Passenger" posted a public comment to Hoff's blog On 2/24/10 showing how she turned against me when I exercised my First Amendment rights or liberty;

> I gotta admit – I used to have a slight bit of respect for this man because I would see him working his fingers to the bone around the 26th / Penn 2 block area – chopping brush, picking up litter etc.

> Now all that good he put out to keep up his area is totally voided with his continued mission to pursue extended liberties he should not have.

> Pete, you should have stuck to tearing down overgrown brush. You are good at that.

46. Goodmundson also began emailing and calling Community Corrections.

47. On or about March 24, 2010, the attorneys for some of the defendants in the 10-case filed

a motion asking the [district] court to find that I was a "frivolous litigant." On March 24, 2010,

Hoff blogged about that motion.

48. HDOC and MDOC lacked the authority to prevent me from filing lawsuits or motions.

Indeed, at that time the DOC did not support the directive that I could not file any lawsuits

motions.

49. On May 27, 2010, Hoff began asking why I was allowed to have a cell phone. Hoff

blogged, Before I even hit "publish" on this blog post, I'll be sending an email to Pete's

probation officer and asking those questions.

50. Browne knew I had deficiencies in 10-case and denied me the right to state a claim by

prohibiting me from amending 10-case to ensure I would lose summary judgment motion on

April 20, 2010, which resulted in May 17, 2010 order.

51. Browne knew he had or was going to ask HDOC to prohibit me from filing any motions

in court through his attorney, on March 30, 2010 filed a ex-parte motion with order which Judge

Bush signed on April 1, 2010.

52. Browne, a defendant in 10-case, continued his demands to HDOC and On April 1, 2010

received email from cc stating I had been "re-structured" and informing them of my new

conditions, which in part stated;

> Mr. Rickmyer must cease the filing of any new motions, briefs or lawsuits until after the
> JACC motion is heard by [the judge] on April 20th.

> We have suspended Mr. Rickmyer's use of the internet completely.

> Mr. Rickmyer has been ordered to not attend any JACC meetings what so ever.

> "I hope you find this acceptable **and it provides you the relief you are seeking**."

53. These new conditions provided JACC group with "relief" in the 10-case and also began

the continued restrictions upon me, which were designed to protect the JACC group from future lawsuit(s).

54. As would become clear from future blog posts by Hoff, Browne and Goodmundson on behalf of JACC group they did not want me to be able to use the Internet or a computer, *so that I could not use those tools to work on the lawsuit against them.*

55. But the April 1, 2010 email also laid the groundwork for the campaign to punish me for my exercise of rights. It stated, "Do not hesitate to contact us should you be aware first hand that Mr. Rickmyer has violated these conditions."

56. Browne clearly shared this email with Hoff and Goodmundson and they set up a Campaign to get me "violated" -- that is, to have the MDOC find he had violated his conditions, and therefore should be sent to prison.

57. Browne was making frequent calls, and pressuring HDOC to assist him in defending against 10-case.

58. On or about April 7, 2010 I found out Browne on behalf of JACC group filed ex-parte motion / order on March 30, 2010 and granted on April 1, 2010 in 10-case, when I requested relief from ex-parte order, Browne quickly notified HDOC informing I had violated my "new" conditions an attempt to remove me from my neighborhood by having my parole violated.

59. Browne had his attorney file ex-parte motion / order so when I asked for relief, I would be punished.

60. Browne knew that [his] lawyer had filed a motion on behalf of JACC group to have me declared a frivolous litigant, and Browne was improperly seeking assistance of government agency in order to gain an advantage in civil litigation against me.

61. When Hoff covered the April 20,2010 hearing for summary judgment motion in his

April 23, 2010 blog, Hoff noted that one of the first comments made by Browne's attorney at the hearing was that I had not filed any papers in opposition to the "frivolous litigant" motion, Hoff of course knew Browne had worked in concert with others and government to prevent me from being able to file a response to that motion.

62. Hoff's April 23, 2010 blog poked fun at me for alleging that JACC group had him removed from the community.

63. On May 17, 2010, the Judge issued an order declaring me a frivolous litigant, and stating;

> Until further order of this Court, Plaintiff may not file any new cases unless an attorney licensed to practice law in Minnesota has signed the complaint and the Chief Judge or the Presiding Judge of Civil has approved. The Clerk of Court is instructed to not accept any filings from Plaintiff unless these conditions are met.

64. The May 17, 2010 order declaring me a frivolous litigant and dismissing most defendants with prejudice including Minneapolis Police Officers Joel Pucely, Brandon Bartholomew, Scott Olson, Jeffery Newman and Michael Martin ("City defs") based on Browne's fraud on the Court.

65. City defs  through their attorney was informed by me Browne committed Fraud on the Court and it was my intentions to vacate the May 17, 2010 order.

66. City defs through their attorney and I on February 13, 2013 entered into a settlement agreement dismissing City defs in 10-case. (See settlement agreement with exhibit a)

67. Hoff blogged on May 19, 2010, "I think I will also send an email to his parole officer in the next few minutes. Now that Pete's lawsuit has been declared frivolous, I think I will complain about him filing it against me."

68. When I tried to work on an appeal of the state district judge's order, in the Law Library at the Government Center, where there are computers with word processing capability but no internet capability, Hoff on behalf of JACC group harassed and stalked me there, taking pictures of me and posting them on his blog.

69. Hoff also used a frequenter of the library to gather drafts from tables and wastebaskets and feed them to Hoff allowing Hoff to glean that I was working on an appeal of the frivolous litigant issue (May 17, 2010 Order).

70. Hoff blogged on June 3, 2010,

"If I had to guess, I'd say [Peter] is appealing the dismissal of his case to a higher court."

Shortly thereafter, I was forced to abandon my appeal because there was no way / place I could work on it.

71. In June of 2010, I filed a complaint with the Minneapolis Department of Civil Rights ("MDCR") about JACC. This-First-Amendment-protected conduct enraged Hoff and Browne, who again on behalf of JACC group, pressured MDOC to again give JACC relief.

72. On June 27, 2010, Hoff blogged,

JACC has until July 5 to respond to the complaint. Thus this tiny volunteer neighborhood organization-already harassed by Rickmyer's previous frivolous crap-must deal, yet again with [Peter's] madness. And where, in all of this, are [Peter's keepers from the MDOC?

On the bright side … maybe this will be the stupid move which finally **puts {Peter] back behind bars for good.** [Peter's] latest filing appears to be an attempted "end run" around the judge's strictly worded order to STOP FILING FRIVULOUS LEGAL COMPLAINTS.

73. Hoff further asked that I be prohibited from using any word processor to write out complaints to, for example, city inspectors, upon information and belief Hoff feared building inspectors and sought to protect himself from inspections by city inspectors, at the expense of my First Amendment rights.

74. Hoff complained that he did not even want me accessing the MnCIS system which shows public court dockets for the state courts and specifically objected that I had found reference to an HRO once filed against Hoff by a former roommate.

75. These were all designed to prior restrain my exercise of First Amendment rights.

76. I made several complaints about Hoff harassing / stalking me in the government center which forced me to drop appeal in 10-case. On July 12, 2010, my parole agent gave me a directive that I could not contact the government center to make a complaint about Hoff. This directive violated my First Amendment rights.

77. In August 2010, defendants Browne, Goodmundson and Hoff would find McDonald again, who was willing once again to work together with JACC group to infringe my rights.

78. On August 5, 2010, McDonald gave me a directive that he was to bring him any legal papers he was working on, and if I went to an attorney, that McDonald specifically wanted the attorney's name and what I was telling him. This was a violation of my attorney-client privilege and First Amendment rights.

79. I objected [to McDonald] that would infringe my attorney-client privilege and requested that directive in writing so that I could seek a legal opinion. McDonald refused to give that directive in writing even though McDonald knew that I was disabled in communication.

80. On February 10, 2011, Browne on behalf of Goodmundson and Hoff again called McDonald, informing him that I was attending a public court session, and asking that I be made to leave.

81. I had a right to attend a public court hearing.

82. On February 12, 2011, Goodmundson sent an email to McDonald, complaining that someone (she had no evidence of who) had put pictures of her on the Internet.

83. Goodmundson wanted me punished for that.

84. But more Goodmundson wanted MDOC to conduct an investigation to learn who had taken and posted the pictures of her.

85. On February 12, 2010, Hoff emailed McDonald stating, "I thought Peter Rickmyer was

supposed to stay away from JACC and JACC people. Kip Browne and his wife Kelly are *on the witness list.*"

86. Hoff wanted HDOC to investigate to determine whether I was photographing "us." And complained that he suspected I was making calls to the City of Minneapolis 311 number to report Hoff to the city.

87. By February 13, 2011, Goodmundson was back dogging McDonald, [stating], "I am surprised I have not heard back from you. It disturbs me that Level 3 is sneaking around taking pictures.

88. At that time I did not own a camera phone or a camera.

89. Based on this flimsy evidence, from people with an obvious agenda and bias against me, on that very day McDonald searched my house. (June 3, 2010, Hoff photographed me without my permission or knowledge)

90. Also on that date, McDonald demanded that I tell him about any legal documents I was *Drafting.* That directive was not for any legitimate correctional purpose, but to please Browne, Goodmundson and Hoff.

91. Goodmundson objected to McDonald's conclusion, stating that I had contact with some people who put her picture on the Internet.

92. Even if that were true, I have a right, protected by the First Amendment, to associate with people, even people who I know who may or may not know who put Goodmundson picture on the Internet.

93. But McDonald during the search of my house as discussed in paragraph 85 did further limit my rights: he ordered me **not to attend court hearings** for John Hoff.

94. There was no basis for this directive, and this further restriction on my rights was not

supported by fact or law.

95. Hoff and Goodmundson engaged in a continual dialogue with McDonald and by February 28, 2011, McDonald (correctly) stated he could not ban me from the government center. But he said he would tell him to stay away from court hearings in which Hoff and Goodmundson were scheduled to appear.

96. I allege that directive given to me in paragraph 90 unnecessarily restricted his First Amendment rights, and that it was not instituted for any legitimate correctional purpose, but to please Hoff and Goodmundson and JACC group (who wanted to punish me for exercise of First Amendment rights and restricts my rights and liberties).

97. On March 2, 2011, I had a process server serve Hoff in the hallway on a court floor in the government center when there was no court proceedings or hearings in progress.

98. I informed McDonald that I did not violate the court order, but McDonald would not listen to me. McDonald was geared to listen to Goodmundson, Hoff or anyone from JACC group.

99. I was right, I did not violate the May 17, 2010 Order. (See paragraph 63)

100. McDonald had jumped to conclusions (or knowingly ignored the text of the order, see text in paragraph 62) in order to please the JACC group.

101. In McDonald's intent-to-revoke-allegations against me, McDonald would continue to mischaracterize the court's order rather than paying attention to its precise language.

102. Hoff promptly blogged about the issue, on March 3, admitting he had been dodging service, and that he had finally been served with the 10-case.

103. Hoff blogged that he had been so busy so, "my girlfriend Megan Goodmundson called Peter's zoo keeper, Will McDonald, who came within a short while to the Hennepin county Law

Library and obtained a copy of the crap Peter Rickmyer had served upon me."

104. The blog continued, "According to Goodmundson, McDonald appeared to almost have smoke coming out of his ears and was stating something about how he would contact a judge about Pete's latest escapade."

105. Goodmundson posted a "NoMi Passenger" comment that same day, stating,

When I was in Court this morning, Will McDonald of HennCo. Corrections came and got my attention. He informed me that John does not need to respond to the regurgitated lawsuit, he doesn't need to answer, he doesn't need to do anything (the state district court judge) is handling everything directly with the HennCo c/o Will McDonald.

106. On March 3, 2011, McDonald had an *ex-parte* communication with the state district judge in which they collaborated the court would issue an order the summons was invalid.

107. I was not informed of this judicial contact, however Goodmundson and Hoff were informed of it, and took full advantage of it.

108. Hoff indicated on his blog that he had the inside track with the state district court judge.

109. If there was any doubt whether Hoff, Goodmundson or JACC group were legitimately pursuing some fear of me as a sex offender, that was put to rest on March 4, 2011, when NoMi Passenger posted on Hoff's blog,

**This new nonsense about John, or anybody else, being so scared of [Peter] that we need Will McDonald, or a court bailiff or any other authority figure to protect us is just ridiculous.**

You do realize it's not about being afraid of [Peter]. You do realize it's not about being afraid of [Peter]. It is about being so fed up with his deviant, disgusting, deliberate disregard for 1) law 2) societal norms 3) decency 4) safety of children 5) direct orders from his corrections officials (zookeepers!) and court officials that we are sick of him coming to functions he is not welcome and not allowed and we want to see him dealt with and we want him OUT OF OUR NEIGHBORHOOD!!!

**Nobody is "Scared" of [Peter]** in the way you mean. **Especially not John.**

110. On March 7, 2011, Goodmundson called again, telling McDonald that I had served some

18

papers on Hoff.

111. On March 9, 2011, Goodmundson called to complain that I was stalking her in the government center. That claim was false.

112. At some point Goodmundson and / or Hoff contacted a "commissioner." Upon information and belief they contacted someone in upper management at the DOC, or they had someone else do it for them.

113. On March 9, 2011, MDOC signed an arrest warrant for me and I was put in custody (arrested) and taken to the Hennepin County jail.

114. On March 10, 2011, Hoff blogged,

> It is unknown but strongly suspected the arrest has something to do with Rickmyer's recent actions directed at myself and my blog, as documented in this recent post ... **JNS blog thanks unknown public officials for this prompt action. I sincerely hope the book is thrown at Pete and he does not walk the streets with decent people for a long, long time. Let me know if you need my testimony or that of Megan Goodmundson or others who are witnesses. (Emphasis added)**

115. Plaintiff as a direct result from JACC group and McDonald, I have been in custody (incarcerated, house arrest and or curfew) for over 1,000 days since the false accusations in 2009 and 2011 by JACC and McDonald, which included as individuals and conspiring with others within JACC group or other individuals outside of JACC group.

116. McDonald on behalf of JACC group kept giving me directives and telling others I was given different directives and waited for people to call and complain about me so McDonald could take steps to violate my parole on behalf of JACC group remove me from neighborhood.

117. McDonald used my disability to cover up the conspiracy by stating I only want to hear what I wanted to hear and when I asked for these directives in writing, McDonald refused.

118. JACC group and McDonald had the power to stop the conspiracy to take away my rights including speech, association, liberty, etc, etc but refused.

119. JACC has a long history of discriminating towards persons with disabilities and was warned on June 11, 2010 to stop. (See letter)

120. JACC was sent email on October 18, 2011 was told "Our request was that you cease and desist holding meetings of JACC and its committees at locations that did not meet the requirements of the Americans Disabilities Act." (See email)

121. I requested JACC to move out of JACC house in February of 2009 because it was inappropriate to be there and in finance committee I asked pin pointed questions about JACC rental property at 2539 Irving Avenue North.

122. In February 2012, JACC moved to a building which met minimum accessibility standards of ADA.

123. Approx. October of 2012 JACC finally complied with notice requirements of ADA.

124. JACC group conspired with others including McDonald to take away my rights including speech, association, due process, liberty, etc, etc so to allow JACC to continue to discriminate towards persons with disabilities.

125. JACC is continuing to discriminate towards persons with disabilities by violating ADA.

126. Schooler in 10-case signed a confidential settlement agreement with me.

127. Schooler on May 16, 2012 publicly vilified and humiliated me by lying to Judge Poston by stating I am his personal stalker. This was to get the court to remove me from the Courtroom and or violate my parole.

128. Judge Poston did not call Court security to stand guard during the court hearing, request Court security to have me removed from the courtroom and did not request I be taken into custody, Schooler was not believed.

129. Schooler lying to Judge Poston violated the contract between Schooler and I.

130. Goodmundson created a mythical story stating I was stalking her in the government

Center and now Schooler (gave advise to Hoff and Goodmundson) is now claiming I am his "personal stalker".

131. I am still being retaliated against by JACC group and McDonald for but not limited to: reporting ADA violations of JACC known as freedom of speech and redress of government.

132. Plaintiff Peter Rickmyer requests this Court to take jurisdiction over 27-cv-10-3378 as supplemental jurisdiction. (See settlement agreement, exhibit a,)

133. I served Hoff with Affidavit for Publication of summons (10-case) by U.S. Mail on May 10, 2010 and Propriety and completion of service by publication, via U.S. Mail on June 1, 2010.

134. 20 days have passed since June 1, 2010, Hoff has failed to answer or defend as to my complaint, or serve a copy of any answer or defense.

135. Hoff was served a summons and complaint on March 2, 2011 by process server.

136. 20 days have passed since March 2, 2011, Hoff has failed to answer or defend as to my complaint, or serve a copy of any answer or defense.

137. Hoff promptly blogged about the issue, on March 3, admitting he had been dodging service, and that he had finally been served with the 10-case.

138. I request this Court to find Hoff in Default for not serving a copy of any answer or defense within 20 days of being served by publication, and  not serving a copy of any answer or defense within 20 days of being served Summons and complaint. (See Notice of hearing on Motion for Default Judgment against Hoff)

139. Plaintiff Peter Rickmyer requests this Court to vacate the May 17, 2010 Order (10-case) since it was based on fraud upon the court by Browne not allowing me to state a claim by prohibiting me from amending the 10-case. (See Notice of Motion and Motion to Vacate May

17, 2010 Order.).

140. Browne, Hoff, Goodmundson on behalf of themselves and on behalf of JACC group

conspired with McDonald to interfere with my right to have meaningful access to courts.

141. Hoff has the inclination to act like a predator, and when the opportunity arises, Hoff

imitates a predator.

142. Hoff sent Agent Jones an email on November 15, 2009, end of email stated:

  "Would you please look into this matter and deal with Peter's latest episode"

143. Agent Jones on November 16, 2009 told Hoff no.

144. Hoff from November 16, 2009 harassed by publicly vilify, humiliating Agent Jones for

purposes of bullying and intimidation to either have Agent Jones take away my rights and or

have Agent Jones removed, Hoff achieved this goal in March of 2010 when Agent Jones

resigned from my case, fearing retaliation from Hoff and feared for her families safety.

145. Hoff harassed my attorney for years because she sued JACC and chose to represent me.

146. Hoff wrote more than 100 articles publicly vilifying and humiliating Jill Clark on the

Internet, which included more than 66 articles calling her crazy.

147. This hurt my attorney Jill Clark's reputation and ability to earn a living. I believe Hoff

helped push Jill Clark over the edge and this was done just because Jill Clark gave representation

to person(s) who sued JACC and represented me.

148. Hoff's tenant Lisa Ann Emery ("Emery") under oath stated;

  "On 1.10.10 (Hoff) demands $86.28. When I said "no" and the harassment needs to stop,
  he explodes into my room threatening that he will enter every hour. I am afraid for my
  safety."

149. Judge Belois signed Order for Harassment Restraining Order on January 12, 2010. (See

Emery's Affidavit and Petition for Harassment Restraining Order and Order on Petition for

Harassment Restraining Order)

150. I filed grievances with JACC about Hodson November 3, 2009 and Hodson and his significant other retaliated by threatening me, harassing me on the public buses, at bus stops and at CVS Pharmacy.

151. Hodson and his significant other (Rother) continued to harass me until December of 2012

152. Defendants Browne, Goodmundson, Rother, Hodson, Hubbard II, Haddy, McCandless, Schooler, Hoff and McDonald knew the goal of JACC group was to retaliate against me, in other words to punish me for requesting JACC to comply with A.D.A., requesting government to require JACC to comply with A.D.A. and filing grievances.

153. Defendants Browne, Goodmundson, Rother, Hodson, Hubbard II, Haddy, McCandless, Schooler, Hoff and McDonald knew of the conspiracy, had the power to stop the conspiracy, however refused to say anything to stop the conspiracy.

154. Person(s) from JACC group conspired with McDonald to interfere with judicial process.

155. Plaintiff Rickmyer has not been able to file motions in 10-case because of individuals in JACC group conspiring with McDonald to deny me meaningful access to court and or deny me access to court, the following motions are examples of denied access to courts but not limited to;

   a) Notice of Hearing on Motion for Default Judgment against Hoff (See Default Motion),

   b) Notice of Motion to Vacate May 17, 2010 Order, and Motion to Vacate May 17, 2010 Order (See Vacate Motions)

## COUNT I
### Violation of 42 U.S.C.A. §§§§ 1983, 1985, 1986 and 12203
### (Against all Defendants except Schooler)

Plaintiff Peter Rickmyer re-alleges all facts in this complaint as if fully set forth herein. This claim arises under title 42 of the United States Code (Civil Rights Act of 1964, as amended), including but not limited to §§§§ 1983, 1985, 1986 and 12203.

23

156. Defendants acted alone and or together (two or more in concert) to violate my rights.

157. Defendants deprived Plaintiff Peter Rickmyer of his rights, privileges, and immunities secured by the United States Constitution, and specifically the Fourteenth Amendment to the United States Constitution, in conjunction with other rights, including but not limited to the following clearly established rights:

a. **First Amendment retaliation** (against all defendants). Plaintiff Peter Rickmyer exercised his right to free speech, to criticize government including government instrumental. I was retaliated against, and the adverse consequences would chill a person of ordinary firmness. This retaliation includes prior restraint of speech and liberty.

b. **Fourth Amendment**: Right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

c. **Fifth Amendment**: No person shall be deprived of life, liberty, or property, without due process of law.

d. **Eighth Amendment:** Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

e. **Fourteenth Amendment:** Shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

158. Defendants (and each of them) knew they were violating the federal law and constitutional rights of Plaintiff and or acted with deliberate indifference to the rights of me as noted above. The Defendants acted under color of law of a statue, ordinance, regulation, resolution, policy, custom or usage when they deprived Plaintiff of his Constitutional rights, privileges, and immunities, and the private defendants acted in concert with public defendants to effectuate a common scheme or plan to violate my constitutional right to freedom of expression, access courts, petition government or government instrumental for redress of grievances and

24

interference with Judicial process.

159. As a direct and proximate result of the Defendants'' conduct, inaction, policy or customs as set forth in more detail above, I suffered the deprivation of my constitutional and or federal statutory rights and suffered damages including loss of freedom to attend meetings and or loss of liberty.

160. By reason of the foregoing, I was damaged, the damage was proximately caused by defendants, and I am entitled to judgment against each defendant, and jointly and severally, in access of $75,000.

### COUNT II
### (Intentional Interference with contract between MDOC and Plaintiff)
### (Against all defendants except Schooler)

161. Plaintiff Peter Rickmyer incorporates all facts prior alleged herein.

162. A valid contract existed between MDOC and myself. JACC group and McDonald knew about my contract with MDOC. Defendants JACC group and McDonald maliciously interfered with the contract between MDOC and myself. JACC group and McDonald intentionally induced MDOC violate the contract and put Plaintiff Peter Rickmyer in-custody (incarceration, house arrest and or curfew). JACC group and McDonalds' conduct was not justified and was illegal (working together with police, HDOC, MDOC, Fourth Judicial District to retaliate against me for my exercise of First Amendment rights).

163. The intentional interference caused the in-custody (incarceration, house arrest and or curfew) of me and my contract with MDOC terminated. As a direct or proximate result of the conspiracy of defendants JACC group and McDonald to get me out of the neighborhood, Plaintiff Peter Rickmyer has been damaged in an amount in excess of $75,000

## COUNT III
### (Breach of Settlement Agreement Contract)
### (Against David Schooler)

164. Schooler and I entered into a settlement agreement contract. I for my part, performed on the contract.

165. Schooler materially breached the contract.

166. As a direct and proximate result of the breach, I was damaged in an amount in excess of $75,000 to be proven at trial.

## Count IV
### (Default Judgment in 27-cv-10-3378)
### (Against John Willard Hoff)

167. Hoff was served on May 10, 2010, Affidavit for Publication of summons, and on June 1, 2010, Propriety and completion of service by publication and was served by process server on March 2, 2011.

168. Hoff has failed to answer or defend as to my complaint, or serve a copy of any answer or defense.

169. As a direct and proximate result of the breach, I was damaged in an amount in excess of $75,000

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Peter Rickmyer prays for relief in the form of an injunction against defendants and each of them, and or as follows:

a) Issuing a temporary, preliminary and or permanent injunction described in Count 1,
b)
c) Awarding Plaintiff Peter Rickmyer his damages, and all costs and attorney fees as appropriate in this action,

d) Such other relief as the Court deems advisable and necessary.

**FURTHER AFFIANT SAYETH NAUGHT**

Peter Rickmyer
2118 25th Avenue North
Minneapolis, Minnesota 55411
(612) 516-2853

Subscribed and sworn to before me
This 11th day of March, 2013

Notary Public



CHRISTINA THI NGUYEN
Notary Public
Minnesota
My Comm. Expires
Jan 31, 2015

27