RECEIVED
JUL 3 1 2013
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| Peter Rickmyer, | Court File Number 13-cv-559 (SRN/SER) |
| Plaintiff, | **PLAINTIFF PETER RICKMYER'S REPLY BRIEF AND OR MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS DAN ROTHER, MICHAEL (KIP) BROWNE, ANN MCCANDLESS, ROBERT HODSON, DAVE HADDY, JOHN GEORGE HUBBARD II AND JORDAN AREA COMMUNITY COUNCIL, INC. MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE AND MOTION TO TREAT RULE 12(B)(6) AS A RULE 56 MOTION** |
| vs. | |
| Michael (Kip) Browne et al, | |
| Defendants, | |

## MEMORANDUM OF LAW

### 1. JACC GROUP MADE PLEADINGS OUTSIDE 12(b)(6)

Defendants Dan Rother, Michael (kip) Browne, Ann McCandless, Robert Hodson, Dave Haddy, John George Hubbard II, Megan Goodmundson and Jordan Area Community Council, Inc.

("JACC group") on July 1, 2013 filed a Memorandum in Support of motion to dismiss.

JACC group in introduction page 2 made the following pleadings outside of 12(b)(6) which was; **"In addition, Plaintiff's lawsuit is prohibited by Minn. Stat.§ 554.03, Minnesota's Anti-SLAPP statute."** (Emphasis added)

JACC group has not cited any rule which allows them to disregard 12(d) and make pleadings outside of 12(b)(6).

1



## 2. <u>JACC GROUP MISLEADING THIS COURT</u>

Defendants Dan Rother, Michael (kip) Browne, Ann McCandless, Robert Hodson, Dave Haddy, John George Hubbard II, Megan Goodmundson and Jordan Area Community Council, Inc. ("JACC group") continues to mislead this Court by withholding relevant information which would clarify the facts JACC group gave, see *In re Special forces Ministries, et al., Respondents, vs. WCCO Television, a subsidiary of CBS Inc., et al.,* 584 N.W.2d 789 (Minn. 1998). Appellants argue that respondents cannot prove fraud because Jonson had not duty to disclose that she worked for WCCO. [HN7] Fraud requires an affirmative misrepresentation, and a person generally has no duty to disclose material facts. *L & H Airco, Inc. v. Rapistan Corp.,* 446 N.W.2d 372, 380 (Minn. 1989). However a duty is imposed when disclosure is necessary to clarify information already disclosed which would otherwise be misleading." *Id,; see also M.H. v. Caritas Family Servs.,* 488N.W.2d 282, 288 (Minn. 1992) failure of adoption agency to reveal child's complete genetic background to prospective parents held actionable.

JACC group has refused and continues to refuse to inform this Court that the City of Minneapolis has designated all Neighborhood Organizations that receive city funding are considered local government instrumentality. (See attached exhibit page 15)

JACC group has Intentionally withheld the fact Judge Porter *In re Benjamin Meyers, Esq., v. Dennis Wagner et al,.* ruled; "The anti-SLAPP applies to neighborhood organizations. See generally *Marchant Investment & Management Co., Inc. v. St. Anthony West Neighborhood Organization, Inc.,* 694 N.W.2d 92 (Minn. App. 2005) (applies the Anti-SLAPP statute to defamation and other claims brought against the St. Anthony West Neighborhood Organization and its officers and directors)." (See attached

exhibit page 5)

JACC group has refused and continues to refuse to inform this Court that Plaintiff Peter Rickmyer Participated as a volunteer on the Finance Committee of JACC when he requested JACC to stop discriminating by requesting JACC to be compliant with ADA, further has not informed this Court I requested favorable government action.

### 3. THIS COURT SHOULD LIBERALLY CONSTRUE PLAINTIFF'S FILINGS

It is well settled matter that a court must liberally construe the filings made by a pro-se litigant. The rules of this case require "the court shall liberally construe the petition and any amendments thereto and shall look to the substance thereof and waive any irregularities or defects in form. We have previously applied this section to support liberally construing petitions and considering claims despite not being properly raised." (*Roby v. State, 787 N.W.2d 186, 191* (Minn. 2010).) Further, for "courts to liberally construe [pleadings] to determine whether a [] timeliness exception is invoked." The Petition asks that in the interest of justice the asserted claims presented by [Rickmyer] should be reviewed by the Court. Based on these facts, [Rickmyer's opposition] is sufficient to invoke the interests-of justice exceptions." (Id.) The *Roby* court also ruled that: When pro-se litigants are "without the aid of an attorney, [] we have indicated that it may be appropriate to read the pleadings of pro-se appellants with an understanding eye." (*Leake v. state, 737 N.W.2d 531, 540 n.3 (Minn. 2007)*).

**Dated July 31, 2013**

Peter Rickmyer
2118 25th Avenue North
Minneapolis, Minnesota 55411
612-516-2853

<u>**Affidavit of Peter Richard Rickmyer**</u>

Court File Number 13-cv-559

STATE OF MINNESOTA  )
                    )
COUNTY OF HENNEPIN  )

I, Peter Richard Rickmyer, being first duly sworn, depose and say that:

1. Defendants Dan Rother, Michael (kip) Browne, Ann McCandless, Robert Hodson, Dave Haddy, John George Hubbard II, Megan Goodmundson and Jordan Area Community Council, Inc. ("JACC group") Pleaded anti-SLAPP Statute with 12(b)(6).

2. Defendants JACC group made pleadings outside of 12(b)(6).

3. Plaintiff requested JACC to be ADA complaint.

4. Plaintiff requested favorable government action and procured it.

5. JACC group did not disclose Plaintiff was volunteer with JACC

6. JACC withheld relevant information.

**FURTHER AFFIANT SAYETH NAUGHT**

*[signature]*

Peter Rickmyer

Subscribed and sworn to before me
This 31th day of July, 2013

*[signature]*
Notary Public

SETH OLAF AURNESS
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2015

1

FILE COPY

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

Benjamin Myers, Esq.,

    Plaintiff,

**ORDER**

v.

27 CV 08-24189

Dennis Wagner; Megan Goodmundson;
Anne MacCandles; John Doe; Jane
Doe,

    Defendants.

---

The above-entitled matter came before Judge Charles A. Porter, Jr. on April 13, 2009 for a hearing on Defendants' Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Complaint Under Minn.Stat. §544.01 et seq. (anti-SLAPP). Benjamin Myers, Esq. appeared for the Plaintiff. Ferdinand Peters, Esq. and Benjamin Loetscher, Esq. appeared for the Defendants.

Based upon the evidence adduced, the argument of counsel, and all of the files, records, and proceedings herein,

    IT IS ORDERED:

1. Defendants' Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Complaint Under Minn.Stat. §544.01 et seq. (anti-SLAPP) is hereby **GRANTED**. The Plaintiff's claims are **DISMISSED WITH PREJUDICE.** LET JUDGMENT BE ENTERED that Plaintiff is liable for Defendants' attorneys' fees and costs in the amount of $2334.50.

2. LET JUDGMENT BE ENTERED that Defendants' counterclaim is DISMISSED WITH PREJUDICE.

3. The attached memorandum is incorporated herein.

    **LET JUDGMENT BE ENTERED ACCORDINGLY.**

    BY THE COURT:

Dated: 7-10-09

Charles A. Porter, Jr.
Judge of District Court

# MEMORANDUM

## FACTS

This case arises out of statements made by the Defendants about the Plaintiff personally and professionally that the Plaintiff believes were defamatory. The Defendants now move for Rule 12 dismissal under the Anti-SLAAP statute.

The Plaintiff and Defendants are acquainted through the Jordan Area Community Council ("JACC"). The Complaint alleges defamation, intentional and negligent infliction of emotional distress, and negligence against all of the Defendants, and prays for compensatory and punitive damages. The Plaintiff alleges that the Defendants are all residents of the Jordan neighborhood in Minneapolis, and that the "continual harassment" that is the subject of this case "stems from Plaintiff being elected to a voluntary neighborhood organization in the North Minneapolis area, specifically, the Jordan Area Community Council." Compl. at Intro.

The Plaintiff alleges Defendant Dennis Wagner said and wrote that the Plaintiff is "untrustworthy, irresponsible and immoral," and had a conflict of interest in his various roles within JACC. The Plaintiff alleges the Wagner statements are untrue and "imply that Plaintiff is less than honest and ... directly impacts the Plaintiff's profession and future economic earnings." Compl. ¶12. He alleges he has suffered damage to his reputation and standing in the community as a result of the Wagner statements.

The Plaintiff alleges Defendant Anne McCandless accused him of being a racist and a womanizer, and being untrustworthy, unethical, and immoral. The Plaintiff also alleges Defendant McCandless "implied" that he stole or misappropriated JACC money. Compl. ¶18. In the factual allegations, the Plaintiff characterizes the McCandless

statements as "defamatory," he does not specifically allege they are false. Compl. ¶15. In count one (defamation), he alleges that all of the Defendants' alleged statements are false. He alleges he suffers economic loss as a result of the McCandless statements.

The Plaintiff alleges Defendant Megan Goodmundson filed an ethics complaint with the Minnesota Board of Professional Responsibility alleging he acted improperly and unethically. The Plaintiff alleges Defendant Goodmundson has accused him of being immoral and unethical, and engaging in illegal behavior that violated the JACC by-laws. The Plaintiff also alleges Defendant Goodmundson "insinuates" that he improperly used his authority as the JACC chair to appoint the woman with whom he lives on an ethics committee reviewing Defendant Wagner to improperly and unethically influence the outcome of the review. The Plaintiff specifically alleges the Goodmundson statements are false, and that he has suffered character and reputation damage and economic loss.

The Complaint was filed with the Court on November 24, 2008. Some of the allegations in the Complaint refer to one or more attachments for specificity. There are no attachments to the Complaint that was filed with the Court. The Defendants brought a Counterclaim for abuse of process.

The Defendants now move for Rule 12 dismissal of Plaintiff's claims under the Anti-SLAPP statute. The Plaintiff opposes the motion and disputes that the Anti-SLAPP statute applies to this case.

## LEGAL ANALYSIS

### Judgment on the Pleadings

Minnesota Rule of Civil Procedure 12.03 allows a party to move for judgment on the pleadings. On a Rule 12.03 motion, the Court considers only the pleadings; if the

Court considers matters submitted outside the pleadings, the motion is treated as summary judgment and the Court should give the parties a reasonable opportunity to submit materials appropriate for a summary judgment motion.

### The Anti-SLAPP Statute

The Strategic Lawsuits Against Public Participation ("Anti-SLAAP") statute provides the following immunity: "Lawful conduct or speech that is genuinely aimed in whole or in part at procuring favorable government action is immune from liability, unless the conduct or speech constitutes a tort or a violation of a person's constitutional rights." Minn.Stat. §544.03. The term "government" in this statute "includes a branch, department, agency, official, employee, agent, or other person with authority to act on behalf of the federal government, this state, or any political subdivision of this state, including municipalities and their boards, commissions, and departments, or other public authority." Minn.Stat. §544.01, subd. 2. The term "public participation" is defined as "speech or lawful conduct that is genuinely aimed in whole or in part at procuring favorable government action." Id. at subd. 6.

Defendants may move for dismissal under the Anti-SLAPP statute "on the grounds that the claim materially relates to an act of the moving party that involves public participation." Minn.Stat. §544.02, subd. 1. "[T]he court shall grant the motion and dismiss the judicial claim unless the court finds that the responding party has produced clear and convincing evidence that the acts of the moving party are not immunized from liability under section 544.03." Id. at subd. 2(3). If the motion is granted, the moving party is entitled to recover reasonable attorney's fees and costs. Minn.Stat. §544.04, subd. 1.

4

### The Plaintiff's Claims are Barred by the Anti-SLAPP Statute

In this case, the alleged statements made by the Defendants arise out of the Plaintiff's involvement with the Jordan Area Community Council. The Anti-SLAPP statute applies to neighborhood organizations. See generally *Marchant Investment & Management Co., Inc. v. St. Anthony West Neighborhood Organization, Inc.*, 694 N.W.2d 92 (Minn.App. 2005) (applies the Anti-SLAPP statute to defamation and other claims brought against the St. Anthony West Neighborhood Organization and its officers and directors). Here, because JACC is a neighborhood organization, and because the Plaintiff's claims are brought against JACC members for statements they made in connection with their membership, this case is subject to the Anti-SLAPP statute.

The purpose of the Anti-SLAPP statute is to "protect citizens and organizations from lawsuits that would chill their right to publicly participate in government." *Marchant* at 94. Here, because the Anti-SLAPP statute applies, there is a presumption of immunity for the Defendants and the Plaintiff has the burden to show by clear and convincing evidence that the Defendants' statements are tortious. The issue is whether the Plaintiff has alleged facts that, if taken as true, clearly and convincingly show the Defendants' statements constitute defamation, intentional and negligent infliction of emotional distress, and negligence. See *Marchant* at 95 (stating the issue for an Anti-SLAPP motion brought under Rule 12.03). The Plaintiff has alleged defamation, emotional distress, and negligence.

### Defamation

The Plaintiff's defamation claim, taking the factual allegations as true, fails to clearly and convincingly show the Defendants' statements constitute defamation. The

5

elements of defamation are: 1. a false statement that the defendant knows or reasonably should know is false, 2. communicated to someone other than the plaintiff, and 3. tending to harm the plaintiff's reputation or lower him in the estimation of the community. *Special Force Ministries v. WCCO Television*, 584 N.W.2d 789, 794 (Minn. 1998); *Jadwin v. Minneapolis Star & Tribune Co.*, 367 N.W.2d 476, 491 (Minn. 1985). Statements that assert or imply the existence of a fact are subject to defamation claims. *Marchant* at 95 (quoting *Schlieman v. Gannett Minn. Broad., Inc.*, 637 N.W.2d 297, 308 (Minn.App. 2001). Statements expressing a subjective view or an interpretation, theory, conjecture, or surmise are not actionable. *Id.* Truth is an absolute defense to a defamation claim. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980). In pleading defamation, the plaintiff must plead the allegedly defamatory statements, and cannot merely plead the tenor or import of the statements. *Stead-Bowers v. Langley*, 636 N.W.2d 334, 342 (Minn.App. 2001) (citing *American Book Co. v. Kingdom Publishing Co.*, 73 N.W. 1089, 1090 (Minn. 1898)).

Here, the fact section of the Complaint clearly labels some of the alleged defamatory statements as being false, and does not specifically deny others. However, the Complaint does have a general statement in the "count one: defamation" section that specifically says the written statements made by the Defendants are false. All of the Plaintiff's factual allegations about statements made by the Defendants that are not clearly labeled as "written" statements are therefore not alleged to be false unless specifically labeled as false in the fact section. Similarly, some but not all facts clearly allege that the statements were made to a third party, but there is a general allegation in

the "count one: defamation" section that the written statements were published to third parties.

The Plaintiff does not allege that the Defendants made the alleged statements under the *Jadwin* negligence standard, knowing they were false or not taking reasonable steps to find out if they were false. *Jadwin* at 491. Even if the alleged statements were made, there can be no defamation if the Defendants did not knowingly make false statements or fail to take reasonable steps to determine whether their statements were true or false before making them. Without the necessary negligence element, the Court cannot find the Defendants' statements are clearly and convincingly defamatory.

The Plaintiff's allegation that the defendants said or wrote that he was immoral, unethical, and untrustworthy, fails to clearly and convincingly prove defamation. These allegations are not pled as actual statements, so it is unclear whether the Plaintiff is alleging his own characterization of the statements or whether the Defendants actually used the words "immoral," "unethical," and "untrustworthy" in speaking or writing to others about the Plaintiff. Because of the lack of clarity that would be found in more specifically alleged statements, the allegations that the Defendants called the Plaintiff immoral, unethical, and untrustworthy fail to properly allege defamation. Without an alleged statement that is beyond a mere interpretation of the import of the actual statement, the Court cannot determine whether the comments were communicating opinion or fact, and thus cannot find the statements are clearly and convincingly defamatory.

Similarly, the Plaintiff's allegation that Defendant Goodmundson filed a complaint with the Minnesota Board of Professional Responsibility alleging he acted

improperly and unethically in his role as Chair of an ethics committee fails to clearly and convincingly prove defamation. Here, the Plaintiff has alleged a communication to a third party, but rather than quote or attach the actual complaint, or even paraphrase the factual allegations made to the Board, he alleges she complained of his "improper" and "unethical" behavior to the Board. This allegation fails to properly plead a defamatory statement, for the same reasons as above: the terms "improper" and "unethical" are the Plaintiff's characterizations of the larger statement. Without pleading the statement itself, or even paraphrasing its factual allegations, the Court cannot determine whether the comments were communicating opinion or fact, and thus cannot find the statements are clearly and convincingly defamatory.

The Plaintiff's allegation that Defendant Goodmundson "alleges" that he has engaged in illegal behavior, making "numerous comments that have been published to numerous third parties," fails to clearly and convincingly prove defamation. Compl. ¶27. The Plaintiff has to allege what the "numerous comments" were. Without knowing what the "numerous comments" were, the Court cannot determine whether the comments were communicating opinion or fact, and thus cannot find the statements are clearly and convincingly defamatory.

The Plaintiff's allegations that Defendant McCandless accused him of being a racist and a womanizer, and implied that he stole or misappropriated JACC money, and that Defendant Goodmundson insinuated that he appointed his cohabitation partner to a JACC ethics committee for the purpose of improperly and unethically influencing the outcome of the committee's review, fail to clearly and convincingly prove defamation. These allegations cite more specific statements, but alleging the statements were

communicated or "insinuated" implies that the Complaint is alleging the import or significance of the words, and not the allegedly defamatory words themselves. As pled, the Court cannot find the statements were clearly and convincingly defamatory.

Finally, the Plaintiff's allegations that Defendant Wagner accused the Plaintiff of having a conflict of interest with JACC and failing to disclose it fail to clearly and convincingly prove defamation. One allegation says Wagner "has submitted numerous written correspondences" and "published false statements" accusing the Plaintiff of having a conflict of interest with the JACC board and failing to disclose it. Compl. ¶9, 10. These allegations do not identify who, if anyone, the "written correspondences" or "published false statements" were given to, and only alleges the statements in a conclusory way. These alleged statements cannot clearly and convincingly prove defamation.

Because of the myriad problems with the Plaintiff's defamation pleadings, even if the pleadings are true, the Plaintiff has not clearly and convincingly shown the Defendants' statements constitute defamation. Judgment on the pleadings dismissing the Plaintiff's defamation claim under the Anti-SLAPP statute is appropriate.

### Negligence

The Plaintiff's negligence claim, taking the factual allegations as true, fails to clearly and convincingly show the Defendants' statements constitute negligence. To prove negligence, a plaintiff must prove duty, breach, causation, and damages. *Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 729 (Minn. 1990). Here, the Plaintiff alleges the Defendants owed him a basic duty of care not to publish false statements about him that they knew or should have known were untrue, and that he suffered damages as a

proximate result. There is no allegation of breach, although taking the Complaint as a whole, breach might be implied in a liberal reading.

Taking the pleadings as true, the Plaintiff does not clearly and convincingly show the Defendants' statements are negligence. The statements were made in the context of the Defendants' disapproval with the Plaintiff's handling of his position in JACC. Some of the statements criticize the Plaintiff professionally, and some criticize him personally. Many of the statements, as pled, appear to be opinion statements, for which there is no recovery.

The purpose of the Anti-SLAPP statute is to allow people like the Defendants here to be openly critical of the Plaintiff. It is clear from the Complaint that the critical statements stem from the Plaintiff's elected role in JACC, and the statements are thus given immunity unless the Plaintiff clearly and convincingly shows they are tortious. He has not done so. With JACC being a neighborhood nonprofit organization, it is not surprising that the criticism was personal as well as professional. The alleged statements made by the Defendants do not clearly and convincingly rise to the level of civil negligence.

It is unclear how the Plaintiff has been damaged by any of these statements in the context of a negligence claim. Perhaps he has lost current or prospective clients, or perhaps he has been unable to work for some reason proximately attributable to the Defendants' statements in the negligence context. Whatever his actual damages may be, no reasonable jury would award damages on the negligence claim in this Complaint. Judgment on the pleadings dismissing the Plaintiff's negligence claim under the Anti-SLAPP statute is appropriate.

### Emotional Distress

The Plaintiff's emotional distress claims, taking the factual allegations as true, fail to clearly and convincingly show the Defendants' statements constitute negligent or intentional infliction of emotional distress. To prove intentional infliction of emotional distress, a plaintiff must prove the defendants intentionally or recklessly engaged in extreme and outrageous conduct that caused the plaintiff to suffer severe emotional distress. *Hubbard v. United Press In'l., Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983). The conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* at 439 (quoting *Haagenson v. Nat'l Farmers Union Property & Casualty Co.*, 277 N.W.2d 648, 652, n.3 (Minn. 1979)). The emotional distress must be "so severe that no reasonable man could endure it." *Id.*

Here, the Complaint alleges the Defendants' "relentless defamatory assault" was extreme and outrageous, done intentionally or recklessly, "motivated based upon illegal and/or racial motives," and "affected Plaintiff's performance as an attorney." Compl. ¶43, 40. Even taking the allegations in the Complaint as true, the Plaintiff does not have a case for intentional infliction of emotional distress. The Plaintiff was clearly offended by the Defendants' statements, but the alleged statements are not atrocious or beyond the boundaries of civilized decency. The statements are highly critical of the Plaintiff's performance within JACC and spill over into criticizing his personal character, but they are not atrocious, especially without a clear pleading of specific statements published to a third party. The Plaintiff's damages on this claim appear to be based on his alleged diminished performance as a lawyer, though it is unclear whether this means he lost business or simply did not advocate as well as he would have absent the allegedly

11

defamatory statements. The Plaintiff alleges he suffered "severe" emotional distress as a result of the allegedly defamatory statements, but the pleading does not describe how the distress has manifested or allege that no reasonable man could bear it. The Court cannot find the Defendants clearly and convincingly intentionally inflicted emotional distress on the Plaintiff by their alleged statements.

The Plaintiff has also claimed negligent infliction of emotional distress. To prove negligent infliction, the plaintiff must prove the four basic elements of negligence: duty, breach, causation, and damages; plus the following NIED-specific elements: the plaintiff was in a zone of danger of physical impact which was created by the defendant's negligence; the plaintiff reasonably feared for his own safety; and he suffered emotional distress with attendant physical manifestations as a result. *Engler v. Illinois Farmers Ins. Co.*, 706 N.W.2d 764, 767 (Minn. 2005).

Here, the Plaintiff cannot prove the four basic elements of negligence, as discussed in the above section. He also cannot prove the NIED-specific elements because there is no allegation that the Defendants' statements put him in a physical zone of danger or that the statements made him fear for his own safety. Judgment on the pleadings dismissing the Plaintiff's emotional distress claims under the Anti-SLAPP statute is appropriate.

### Punitive Damages Have Not Been Properly Pled

The Complaint in this case states a claim for punitive damages. A plaintiff is not permitted to claim punitive damages in the original Complaint. Minn.Stat. §549.191. Rather, the plaintiff must make a motion for leave to amend the Complaint to add a claim for punitive damages, accompanied by an affidavit, showing that the plaintiff has *prima*

*facie* evidence that she is entitled to recover punitive damages. *Id.* Here, because punitive damages have been improperly pled with the initial Complaint and without the Court's permission, there is no active claim for punitive damages. There is no punitive damages claim to dismiss.

### Defendants Have a Statutory Right to Recover Reasonable Attorney's Fees and Costs

The Anti-SLAPP statute provides that "[t]he court shall award a moving party who prevails in a motion under this chapter reasonable attorneys fees and costs associated with the bringing of the motion." Minn.Stat. §544.04, subd. 1. Here, the Defendants' attorney has submitted an affidavit of fees and costs showing that the Defendants incurred $1,894.50 in legal fees plus $55 in costs in bringing this Anti-SLAPP motion. The Defendants also incurred an additional $385, the hourly rate for their attorney to attend the hearing, for a total of $2334.50 in fees and costs.

The Defendants also seek to recover damages under §544.04, subd. 2(b) for abuse of process. While the Plaintiff is not prevailing on the merits of his claims, it is not clearly an abuse of process. The Defendants should take nothing on their counterclaim.

### CONCLUSION

Because the Anti-SLAPP statute applies to this case and the Plaintiff has not clearly and convincingly show the Defendants' statements constitute defamation, intentional and negligent infliction of emotional distress, and negligence, all of the Plaintiff's claims must be DISMISSED. The Defendants' counterclaim for abuse of process is also DISMISSED.

C.A.P.

City of Minneapolis
Neighborhood and Community Relations Department

## Introduction

The Americans with Disabilities Act (ADA) gives civil rights protections to individuals with disabilities similar to those provided to individuals on the basis of race, color, sex, national origin, age, and religion. It guarantees equal opportunity for individuals with disabilities in employment, transportation, state and local government services, telecommunications, and in the goods and services provided by businesses.

Neighborhood organizations offer a variety of essential programs and services that are fundamental to the public and to everyday American life. Although the range of services offered by neighborhood organizations varies, it is essential that people with disabilities have the opportunity to participate in the programs and services that they offer. Attending an annual street festival or a neighborhood meeting, participating in a focus group or a neighborhood prioritization plan, or responding to a neighborhood survey are typical neighborhood programs, activities or services covered by the Americans with Disabilities Act or ADA.

This guide provides an informal overview of some basic ADA requirements and provides cost-effective tips on how neighborhoods can comply with the ADA.

## Part One: ADA's Requirements for Neighborhood Organizations

Title II of the ADA applies to state and local governments, including city departments, neighborhood organizations, school districts, water districts, special purpose districts, and other local governments and instrumentalities. Neighborhood organizations that receive city funding are considered local government instrumentality and are covered by Title II of the ADA. The ADA prohibits discrimination on the basis of disability in all services, programs, and activities provided by any of these entities. Therefore, people with disabilities must have an equal opportunity to participate in and benefit from a neighborhood's services, programs, and activities. To accomplish this, the ADA sets requirements for facilities, communications with the public, and policies and procedures governing neighborhood programs, services, and activities.

### Facilities

When programs, services, or activities are located in facilities that existed prior to January 26, 1992, the effective date of title II of the ADA, neighborhoods must make sure that they are also available to persons with disabilities, unless to do so would fundamentally alter a program, service, or activity or result in undue financial or

Page 2

14