UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

_____

PETER RICKMYER,                                         No. 13-cv-559 (SRN/LIB)

        Plaintiff,

v.                                                                   **REPORT AND RECOMMENDATION**

MICHAEL (KIP) BROWNE; MEGAN
GOODMUNDSON; DAN ROTHER;
ROBERT HODSON; JOHN GEORGE
HUBBARD, II; DAVE HADDY; ANN
McCANDLESS; DAVID SCHOOLER; JOHN
WILLARD HOFF; WILLIAM McDONALD;
and JORDAN AREA COMMUNITY
COUNCIL, INC.,

        Defendants.

_____

      This matter came before the undersigned United States Magistrate Judge upon Defendant

Hoff's Motion to Dismiss, [Docket No. 19]; Defendant Schooler's Motion to Dismiss, [Docket

No. 53]; the Motion to Dismiss made by the JACC Defendants,[1] [Docket No. 64]; Defendant

Schooler's Motion for Rule 11 Sanctions, [Docket No. 122]; and Plaintiff's Motion to Amend

Complaint, [Docket No. 171].[2]  The case has been referred to the undersigned Magistrate Judge

_____

[1] The JACC Defendants are Michael (Kip) Browne, Megan Goodmundson, Dan Rother, Robert Hodson, John
George Hubbart II, Dave Haddy, Ann McCandless, and the Jordan Area Community Council, Inc.

[2] Initially, Plaintiff's Motion for Default Judgment, [Docket No. 84], also was referred to this Court.  (See Order of
Reference [Docket No. 154]).  The Hon. Steven E. Rau, U.S. Magistrate Judge, observed that entry of default
judgment was not appropriate as a matter of law, and stated that he would recommend that the motion be denied.
(Hr'g Tr. [Docket No. 187], at 8-9).  This Court agrees with Magistrate Judge Rau's assessment.  However, Plaintiff
withdrew this Motion on December 12, 2013.  (See Notice of Withdrawal [Docket No. 170]).  Therefore, the Court
need not address the motion.

   Additionally, Magistrate Judge Rau heard argument concerning the following non-dispositive motions: Plaintiff's
First Motion to Strike, [Docket No. 36] (seeking to strike Def. Hoff's Mem. Supp. Mot. Dismiss); and Plaintiff's
Second Motion to Strike, [Docket No. 77] (seeking to strike JACC Defs.' Mot. Dismiss); and Plaintiff's Motion for
Leave to Amend Complaint, [Docket No. 131] (seeking leave to file Third Amended Complaint).  However,
Plaintiff also withdrew these Motions.  (See Notice of Withdrawal [Docket No. 170]).

for a report and recommendation, (see Order of Reference [Docket No. 154]), pursuant to 28

U.S.C. § 636(b)(1) and Local Rule 72.1.  For reasons outlined below, the Court recommends that

Defendant Hoff's and Defendant Schooler's Motions to Dismiss, [Docket Nos. 19 and 53], be

**GRANTED in part** and **DENIED in part**; that the JACC Defendants' Motion to Dismiss,

[Docket No. 64], be **GRANTED**; that Plaintiff's Motion to Amend Complaint, [Docket No.

171], be **DENIED**; and that Defendant Schooler's Motion for Rule 11 Sanctions, [Docket No.

122], be **DENIED**.


I.      **BACKGROUND**

On March 11, 2013, Peter Rickmyer[3] ("Plaintiff") initiated this lawsuit against the

following: John Willard Hoff ("Defendant Hoff"); David Schooler ("Defendant Schooler");

Plaintiff's parole officer, William McDonald ("Defendant McDonald"); and the Jordan Area

Community Council, Inc. ("Defendant JACC") and several persons related to the JACC,

including Michael (Kip) Browne ("Defendant M.Browne"), Megan Goodmundson ("Defendant

Goodmundson"),[4] Dan Rother ("Defendant Rother"), Robert Hodson ("Defendant Hodson"),

John George Hubbard II ("Defendant Hubbard"), Dave Haddy ("Defendant Haddy), and Ann

McCandless ("Defendant McCandless") (collectively, the "JACC Defendants").  (See Compl.

[Docket No. 1], at 1-3).

Pursuant to Fed. R. Civ. P. 15(a)(1)(A), Plaintiff amended his Complaint on March 15,

2013.  (See Am. Compl. [Docket No. 5]).  Subsequently, on May 26, 2013, Plaintiff filed his

---

[3] Also known as Peter Richard Stephenson, Peter Richard Stevenson, Peter Richard Rickmyer.  See Minnesota Dep't of Corrections Level 3 Predatory Offender Information, Peter Richard Stephenson, http://www.doc.state.mn.us/level3/OffenderDetail.asp?OID=215933 (last viewed December 12, 2013).

[4] The parties variously spell Goodmundson differently throughout the record and pleadings.  The Court will use the spelling in the case caption, although it notes that Defendant herself spells her last name "Goodmunson."

Second Amended Complaint, [Docket No. 7],[5] which is the operative complaint at this time, and which asserts the following claims:

- Plaintiff alleges that Defendant Hoff, Defendant McDonald, and the JACC Defendants conspired and retaliated against him, infringing his rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution, in violation of the civil rights statutes codified at 42 U.S.C. §§ 1983, 1985, 1986, and in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12203.  (2d Am. Compl. [Docket No. 7], at 22-23);

- Plaintiff brings an "intentional interference with contract" claim against Defendant Hoff, Defendant McDonald, and the JACC Defendants, alleging that they interfered with his "contract" with the Minnesota Department of Corrections.  (Id. at 24);

- Plaintiff brings a "breach of settlement agreement contract" claim against Defendant Schooler, alleging that Defendant Schooler violated the terms of a settlement agreement entered in a previous lawsuit, (Id.); and

- Plaintiff asks the Court to enter default judgment against Defendant Hoff in a Minnesota state-court case, No. 27-cv-10-3378.  (Id. at 24-25).

Defendant McDonald filed and served his Answer, [Docket No. 11], on May 30, 2013.[6]

Defendant Hoff made his Motion to Dismiss, [Docket No. 19], on June 7, 2013; Defendant

Schooler made his Motion to Dismiss, [Docket No. 53], on June 26, 2013; and the JACC

---

[5] The Court observes that the page numbers applied by the CM/ECF at the top of Plaintiff's Second Amended Complaint do not match the page numbers that Plaintiff applied at the bottom of every page.  For example, the caption appears on Page 1 on the CM/ECF, but is marked as Page 2 at the bottom of the page.  The Court uses the CM/ECF page numbers throughout this Report and Recommendation.

[6] Defendant McDonald filed a separate Motion for Summary Judgment, [Docket No. 155], on November 22, 2013. That Motion has been fully briefed and is scheduled for a hearing before the undersigned on January 14, 2014.

Defendants made their Motion to Dismiss, [Docket No. 64], on July 1, 2013.  (In the interest of efficiency, for purposes of this Report and Recommendation, the Court refers to those defendants who have made motions to dismiss—i.e., Defendant Hoff, Defendant Schooler, and the JACC Defendants—collectively as "Defendants.")  Subsequently, on July 17, 2013, Plaintiff made his Motion for Default Judgment.  [Docket No. 84].  The presiding Judge for this case, the Hon. Susan Richard Nelson ("Judge Nelson"), referred each of these Motions to the Hon. Steven E. Rau, U.S. Magistrate Judge ("Magistrate Judge Rau"), for a report and recommendation in accordance with 28 U.S.C. § 636(b)(1)(A)-(C).  (See Order [Docket No. 24]; Order [Docket No. 62]; Order [Docket No. 71]; and Order [Docket No. 143]).  Additionally, Defendant Schooler made his Motion for Rule 11 Sanctions, [Docket No. 122], on August 14, 2013.  Finally, Plaintiff made his current Motion for Leave of Court to Amend Complaint, [Docket No. 171], on December 12, 2013.[7]

On September 3, 2013, Magistrate Judge Rau held a hearing on the Motions,[8] at which time he also disclosed that he had once, many years ago, represented Defendant Schooler.  (Hr'g Tr. [Docket No. 187], at 12-13).  In light of that fact, Plaintiff asked that Magistrate Judge Rau recuse himself.  (Id. at 29, 40-41).  Subsequently, on September 13, 2013, Magistrate Judge Rau recused, (Order of Recusal [Docket No. 152]), and the case was reassigned to Magistrate Judge Jeffrey J. Keyes, who also recused, (Order of Recusal, [Docket No. 153]), resulting in the case being assigned to the undersigned.  On September 27, 2013, Judge Nelson issued an Order, [Docket No. 154], referring to the undersigned the dispositive motions that are the subject of this Report and Recommendation.

---

[7] Previously, on August 20, 2013, Plaintiff made a Motion to Amend Complaint.  [Docket No. 131].  However, he subsequently withdrew that motion, (see Notice of Withdrawal, [Docket No. 170]).

[8] Although not reflected in the Minutes of that hearing, [Docket No.142], Magistrate Judge Rau also ruled from the bench that Plaintiff's Motion to Appoint Counsel, [Docket No. 3], and his Amended Motion to Appoint Attorney, [Docket No. 110], were **DENIED**, for reasons stated on the record.  (Hr'g Tr. [Docket No. 187], at 7).

## II.      FACTS

Plaintiff has multiple convictions in Minnesota and Oklahoma state courts for sexual contact with young boys.  See In re Rickmyer, 519 N.W. 2d 188, 189 (Minn. 1994).  In the present case, Plaintiff's criminal history is relevant because at least some of his claims arise from his belief that certain of the Defendants conspired to have his parole revoked.  Additionally, for purposes of the pending Motions, the Court notes the following:

### A.  Prior Litigation among the Parties

Both Plaintiff and Defendants acknowledge that the facts of the present case are inextricably tied to prior cases, some litigated in Minnesota state courts, and some brought in the U.S. District Court for the District of Minnesota.  By piecing together various exhibits submitted by the parties in this case and in other cases filed in this District, the Court has assembled the following case history:

- Rickmyer v. Hubbard, No. 27-CV-09-10939 (Hennepin Cty., Minn.).[9] Plaintiff's petition for a harassment restraining order against Defendant Hubbard was dismissed with prejudice.

- Rickmyer v. Hoff, No. 27-CV-09-30329 (Hennepin Cty., Minn.).[10] Plaintiff's petition for a harassment restraining order against Defendant Hoff was denied initially when requested in 2009, and again in 2012 after Plaintiff sought to vacate the prior order.   (Decl. Godfread Ex. B [Docket No. 22-2]). Additionally, in 2012, after the case had been closed, Plaintiff nonetheless

---

[9] This case is discussed in Rickmyer v. Hodson, No. 27-CV-10-3378, Order & Mem., slip op., May 17, 2010, at 5 (Hennepin Cty. Minn.).  (See Decl. Godfread Ex. 1 [Docket No. 22-1], at 6).
[10] Defendant Hoff provides a docket of activity in this case, (Decl. Godfread Ex. B [Docket No. 22-2]), which also is briefly discussed in Rickmyer v. Hodson, No. 27-CV-10-3378, Order & Mem., slip op., May 17, 2010, at 5 (Hennepin Cty. Minn.).  (See Decl. Godfread Ex. 1 [Docket No. 22-1], at 6).

sought to file an amended petition, which the presiding judge[11] described as "an effort to circumvent" a 2010 order in a different case that limited Plaintiff's access to Hennepin County courts.   See In re Rickmyer, 2012 Minn. Dist. LEXIS 189 (Hennepin Cty., Minn. June 19, 2012).   Plaintiff's request to submit an amended petition was denied and the Clerk of Court was ordered not to accept any documents submitted by Plaintiff "unless the Chief Judge has specifically approved the filing by written order."   Id.

- Rickmyer v. Hodson, No. 27-CV-10-3378 (Hennepin Cty., Minn.).[12]  Plaintiff brought claims alleging defamation, intentional interference with contracts, discrimination, harassment, "loss of liberty," "loss of free speech," trespassing, and "aiding and abetting."  Defendants included Defendant Hoff, Defendant Schooler, and many of the JACC Defendants, among others.  (See Pl.'s Exs. [Docket No. 7-2], at 13-24).  The state court[13] held that it lacked jurisdiction over Defendant Hoff, who had not been properly served. Rickmyer v. Hodson, 2010 Minn. Dist. LEXIS 30, at *11-12 (Hennepin Cty., Minn. May 17, 2010).   Additionally, the state court dismissed Plaintiff's claims against the JACC Defendants, and granted their motion for sanctions,

---

[11] The Hon. Peter A. Cahill.

[12] The caption for this case identifies the Plaintiff as "Peter Stephenson a/k/a Peter Rickmyer," and Plaintiff originally named as a defendant Joan Fabian in her official capacity as Minnesota Commissioner of Corrections, which subsequently was changed to Tom Roy in his official capacity as Ms. Fabian's successor in interest. Consequently, the parties variously refer to this case as Stephenson v. Roy, Stephenson v. Fabian, Rickmyer v Fabian, and/or Rickmyer v. Roy.  This Court uses Rickmyer v. Roy, in part to reflect that Mr. Roy was the Minnesota Commissioner of Corrects when the case was decided, and in part to differentiate from a subsequent lawsuit captioned Stephenson v. Roy, and discussed infra.

   Plaintiff repeatedly refers to this case in his Second Amended Complaint, to which he has attached his Rickmyer v. Hodson Complaint as an Exhibit.  (Pl.'s Exs. [Docket No. 7-2], at 13-24).  Additionally, several of the Defendants have provided the Order and Memorandum resolving this case.  (See, e.g., Decl. Godfread Ex. A [Docket No. 22-1]).

[13] The Hon. Robert A. Blaeser presiding.

ordering that "Plaintiff may not file any new cases unless an attorney licensed to practice law in Minnesota has signed the complaint and the Chief Judge or the Presiding Judge of Civil has approved." (Id. at *2).[14] Plaintiff's claims against Defendant Schooler were dismissed pursuant to a confidential settlement agreement. ([Docket No. 150] the "Settlement Agreement") (**filed under seal**)). Plaintiff's appeal of Judge Blaeser's Order was denied on procedural grounds. Rickmyer v. Hodson, No. A13-903, *slip op.* (Minn. Ct. App. July 10, 2013).

- Rickmyer v. Roy, No. 27-CV-11-11012 (Hennepin Cty., Minn.).[15] By this action, Plaintiff petitioned for a writ of habeas corpus, and also sought declaratory and injunctive relief and money damages against Defendant McDonald, Defendant Hoff, Defendant M.Browne, and Defendant Goodmundson, among others. (See Rickmyer v. Roy Complaint, in Wells Fargo v. Clark, No. 12-cv-2621 (ADM/JJK) (D. Minn.), Notice of Removal Ex. 2 [Docket No. 1-2], at 12-58).

  o The state court[16] denied Plaintiff's request for habeas corpus without prejudice on May 20, 2011. (See Rickmyer v. Roy Order, *slip op.*, May 20, 2011, in Decl. Renz Ex. B [Docket No. 67-2]).

  o On or about January 8, 2012, Plaintiff made his first attempt to extract this case from the Fourth Judicial District, when he made a motion to remove

---

[14] Plaintiff submitted as an exhibit to the present case a "Motion to Vacate May 17, 2010 Order," signed by Plaintiff and dated February 6, 2013, as well as a supporting affidavit and a notice of hearing. (Pl.'s Exs. [Docket No. 7-2], at 35-41). However, the publicly available record of the docket in Rickmyer v. Hodson shows no such motion.

[15] Plaintiff repeatedly refers to this case, as well, but does not attach any documents from the case. However, he attached a variety of documents related to this case to his Notice of Removal in Wells Fargo v. Clark, No. 12-cv-2621 (ADM/JJK) (D. Minn.).

[16] The Hon. Susan N. Burke presiding.

the entire Fourth Judicial District bench, which that court denied.  (See Rickmyer v. Roy Mem., in Wells Fargo v. Clark, Notice of Removal Ex. 2 [Docket No. 1-2], at 81-87).[17]

o   Subsequently, the state court[18] dismissed with prejudice Plaintiff's claims against Defendant M.Browne and, upon finding that Plaintiff's claims were barred by Minnesota's anti-SLAPP[19] statute, Minn. Stat. § 554.03, ordered Plaintiff to pay Defendant M.Browne's attorney fees related to his motion to dismiss.  (See Rickmyer v. Roy Order and Mem., *slip op.*, Apr. 5, 2012, in Wells Fargo v. Clark, Notice of Removal Ex. 2 [Docket No. 1-2], at 89-105).  On December 14, 2012, judgment was entered in favor of Defendant M.Browne in the amount of $20,000.00.  (Decl. Schooler Ex. 5 [Docket No. 57-5] (Rickmyer v. Roy Notice of Entry of J. (Dec. 14, 2012)).

o   Plaintiff removed the case to Federal court on October 12, 2012; however, the case was subsequently remanded.  See Wells Fargo v. Clark, infra.

o   On January 18, 2013, the state court[20] dismissed this case with prejudice, but noted that "for purposes of any federal court action, this dismissal does

---

[17] Plaintiff did not include the entire Memorandum in his Exhibit, and failed to provide the signature page which includes the Memorandum's date.  (See Rickmyer v. Roy Mem., in Wells Fargo v. Clark, Notice of Removal Ex. 2 [Docket No. 1-2], at 81-87).  However, based on the publicly available docket for that case, and on the Mailing Label provided by Plaintiff, (see Rickmyer v. Roy Mailing Label, in Wells Fargo v. Clark, Notice of Removal Ex. 2 [Docket No. 1-2], at 88), it appears that the state court denied this motion on or about January 17, 2012.

[18] The Hon. Philip D. Bush presiding.

[19] "'SLAPP' stands for 'Strategic Lawsuit Against Public Participation' and refers to lawsuits brought against individuals and organizations for the purpose of discouraging them from publicly participating in government." Boley v. Minn. Advocates for Human Rights, No. 08-cv-5908 (PJS/FLN), 2010 U.S. Dist. LEXIS 4994, at *2 n.1 (D. Minn. Jan. 22, 2010) (Schiltz, J.) (citing Marchant Inv. & Mgmt. Co. v. St. Anthony W. Neighborhood Org., Inc., 694 N.W.2d 92, 94 (Minn. Ct. App. 2005)).

[20] The Hon. Philip D. Bush presiding.

not operate as an adjudication on the merits."   (Decl. Godfread Ex. D
[Docket No. 22-4]).   Plaintiff's appeal was denied on procedural grounds.
<u>Rickmyer v. Roy</u>, No. A13-1207, *slip op.* (Minn. Ct. App. Aug. 27, 2013).

- <u>Stephenson v. Roy</u>, No. 02-CV-11-3668 (Anoka Cty., Minn.).[21]   This is a second petition for a writ of habeas corpus, brought after the habeas corpus petition in <u>Rickmyer v. Roy</u>, <u>supra</u>, was denied.   The state court ultimately denied this second petition for habeas corpus, as well.   (<u>See Stephenson v. Roy</u> Order Denying Pet. Writ of Habeas Corpus and Mem., *slip op.*, Aug. 8, 2011, <u>in</u> <u>Wells Fargo v. Clark</u>, Notice of Removal Ex. 2 [Docket No. 1-2], at 65-79).

- <u>Wells Fargo v. Clark</u>, No. 12-cv-2621 (ADM/JJK) (D. Minn.).   In this action, Plaintiff and others sought to remove five state-court cases to the Federal court, including both <u>Rickmyer v. Hodson</u> and <u>Rickmyer v. Roy</u>.   (<u>See Wells Fargo v. Clark</u> Order [No. 12-cv-2621, Docket No. 30]).   All five cases were remanded to Minnesota state court as improperly removed.   (<u>Id.</u>). Approximately two months after the case was remanded, Plaintiff nonetheless filed in Federal court a "Notice to Court and Cease and Desist Notice" directed to Defendant JACC.   (<u>Wells Fargo v. Clark</u> Notice to Court and Cease and Desist Notice [No. 12-cv-2621, Docket No. 35]).

- <u>Rickmyer v. Browne</u>, No. 13-cv-141 (PAM/FLN) (D. Minn.) (hereinafter, "<u>Rickmyer I</u>").   In <u>Rickmyer I</u>, Plaintiff alleged substantially the same claims that he makes in the present, although his Complaint is much shorter and the

---

[21] Plaintiff attached documents related to this case to his Notice of Removal in <u>Wells Fargo v. Clark</u>, No. 12-cv-2621 (ADM/JJK) (D. Minn.), which is discussed <u>infra</u>.

only named defendants are Defendant M.Browne, Defendant Goodmundson, Defendant Hoff, and Defendant McDonald.  (See Rickmyer I Compl. [No. 13-cv-141, Docket No. 1]).  That case was terminated on January 17, 2013, the day after Plaintiff filed his Complaint, pursuant to Plaintiff's Notice of Voluntary Dismissal.  (Rickmyer I [No. 13-cv-141, Docket No. 3].

- Rickmyer v. Jordan Area Community Council, Inc., No. 13-cv-2900 (JNE/JGG).  Plaintiff sued the JACC alleging violations of the ADA, and seeking injunctive relief.  (Rickmyer v. JACC, Compl. [No. 13-cv-2900, Docket No. 1]).  The Hon. Jeanne J. Graham, U.S. Magistrate Judge, issued a Report and Recommendation recommending that Plaintiff's motion for a temporary restraining order be denied and that the case be dismissed for lack of jurisdiction.  (Rickmyer v. JACC, Report & Recommendation [No. 13-cv-2900, Docket No. 11]).  Subsequently, Plaintiff dismissed his complaint, and the case was dismissed.  (Rickmyer v. JACC, Notice of Voluntary Dismissal [No. 13-cv-2900, Docket No. 12]; Order [No. 13-cv-2900, Docket No. 13])

## B.  Allegations in Plaintiff's Second Amended Complaint[22]

### 1.  Allegations concerning Defendant Hoff, Defendant McDonald, and the JACC Defendants

Plaintiff lives in Hennepin County, Minnesota, and is an eligible member of the Jordan Area Community Council ("JACC").  (2d Am. Compl. [Docket No. 7], at 2, ¶ 1).  He attended JACC Board and Finance Committee meetings between February 2009 and April 2009, where he was outspoken about certain issues, including his belief that JACC meetings should be held in a

---

[22] In reviewing a motion to dismiss under Rule 12(b)(6), the Court "look[s] only to the facts alleged in the complaint."  Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998).  Thus, the facts for this Part are drawn from Plaintiff's Second Amended Complaint.  [Docket No. 7].

different location.  (Id. at 5, ¶¶ 25-26; at 18; 120).  Plaintiff generally alleges that the JACC Defendants at this time "became interested in running me out of my neighborhood and ultimately depriving me of my liberty," and began a campaign of retaliation against him.  (Id. at 4, ¶ 19; at 5-6, ¶ 27; at 21-22, ¶ 151).  Plaintiff asserts that Defendant JACC "authorized [Defendant] Hubbard and [Defendant] Haddy to come to my house in May of 2009 knowing they were not welcomed and making false allegations."  (Id. at 4, ¶ 17).  Subsequently, on July 22, 2009, Plaintiff alleges that Defendant M.Browne's wife contacted Plaintiff's parole officer to obtain a copy of Plaintiff's conditions of release.  (Id. at 4-5, ¶ 20).  The following day, July 23, 2009, Plaintiff was arrested for parole violations.  (Id. at 5, ¶ 21).

Additionally, Plaintiff alleges that on or about November 15, 2009, Defendant Hoff joined in the conspiracy and retaliation by blogging about Plaintiff and communicating with Plaintiff's parole agent, Bobbie C. Jones ("Parole Agent Jones").  (Id. at 6-7, ¶¶ 28-34; at 20, ¶ 141).  Plaintiff filed the Rickmyer v. Hodson State court lawsuit in February 2010, which prompted Defendant Hoff and Defendant Goodmundson to write additional blog posts and make further communications with Parole Agent Jones.  (Id. at 7, ¶¶ 35-39; at 9, ¶¶ 43-44).  Plaintiff asserts that when Parole Agent Jones refused to retaliate against him, Defendants Hoff and M.Browne conspired to "bully agent Jones off my case."  Id. at 9, ¶¶ 40-42).

Plaintiff generally alleges that the JACC Defendants, in a conspiracy with Defendant McDonald, committed fraud in Rickmyer v. Hodson.  (Id. at 3, ¶ 11; at 5, ¶¶ 22-24).  Although Plaintiff does not specify the nature of this "fraud," he states that Defendant M.Browne somehow "prohibited me from amending [a pleading in Rickmyer v. Hodson] to ensure I would lose [the] summary judgment motion on April 20, 2010, which resulted in [the] May 17, 2010 order."  (Id. at 10, ¶ 48; at 20, ¶ 138).  Plaintiff also alleges that, while he was working on an appeal of the

Order that declared him to be a frivolous litigant, Defendant Hoff "on behalf of the JACC group harassed and stalked" Plaintiff at the public law library and used an unnamed person "to gather drafts from tables and wastebaskets . . . allowing Hoff to glean that I was working on an appeal." Id. at 12, ¶¶ 67-68).  Plaintiff states that he "was forced to abandon [his] appeal because there was no way / place I could work on it."  (Id. at 13, ¶ 70).

Plaintiff subsequently filed a complaint against the JACC with the Minnesota Department of Civil Rights in June 2010,[23] which he alleges set off a new round of blog posts, conspiratorial communications and retaliation between various JACC Defendants, Defendant Hoff, and Defendant McDonald, which continued up until he filed his Second Amended Complaint on May 6, 2013.  (Id. at 13-18, ¶¶ 71-104 and ¶¶ 108-11; at 19, ¶ 130).  Plaintiff also alleges that Defendant McDonald had an *ex parte* communication on March 3, 2011, with the judge in Rickmyer v. Hodson.  (Id. at 3-4, ¶ 13; at 17, ¶¶ 105-107).  Plaintiff was arrested on March 9, 2011, and maintains that he has been "in custody (incarcerated, house arrest and or curfew)" since that date.  (Id. at 18, ¶ 114 (parenthetical in original)).

Plaintiff further generally alleges that the Defendants subsequently failed to inform the State court in Rickmyer v. Roy that they had committed fraud in Rickmyer v. Hodson.  (Id. at 3, ¶¶ 12).

**2.  Allegations concerning Defendant Schooler**

As previously mentioned, Plaintiff's claims against Defendant Schooler in Rickmyer v. Hodson were dismissed pursuant to a confidential settlement agreement, which was submitted to this Court **under seal**.  ([Docket No. 150]; see also 2d Am. Compl. [Docket No. 7], at 19, ¶ 125

---

[23] Plaintiff alleges that as a result of this complaint, the City of Minneapolis instructed the JACC to hold its meetings in a location that was handicap-accessible.  (2d Am. Compl. [Docket No. 19], at 18, ¶ 119; see also Pl.'s Exs. [Docket No. 7-2], at 1-5).  Although he acknowledges that, since February 2012, JACC meetings have been held in a location that meets Americans with Disabilities Act standards (the "ADA"), Plaintiff nonetheless alleges that "JACC is continuing to discriminate towards persons with disabilities by violating ADA."  (Id. at 19, ¶¶ 121, 124).

(acknowledging confidential settlement agreement)).  Plaintiff alleges that, during a state court hearing on May 16, 2012, Defendant Schooler violated that confidential settlement agreement by describing Plaintiff as Defendant Schooler's "personal stalker" and seeking to have Plaintiff removed from the courtroom, acts that Plaintiff says "publicly vilified and humiliated" him.  (2d Am. Compl. [Docket No. 7], at 19, ¶¶ 125-26, 128).

### 3.  Plaintiff's Requested Relief

Plaintiff makes a variety of claims for equitable and monetary relief.  First, Plaintiff asks that the Court "take jurisdiction over" Rickmyer v. Hodson "as supplemental jurisdiction."  (2d Am. Compl. [Docket No. 7], at 19, ¶ 131).[24]  Plaintiff then asks that this Court enter default judgment against Defendant Hoff in Rickmyer v. Hodson, (2d Am. Compl. [Docket No. 7], at 19-20, ¶ 132-37), and to vacate the Order in that case that dismissed Plaintiff's claims against the JACC Defendants and imposed "frivolous litigant" limitations on Defendant, alleging that that Order "was based on a fraud upon the Court by [Defendant] M.Browne not allowing me to state a claim by prohibiting me from amending" his pleading.  (Id. at 20, ¶ 138).

Plaintiff also seeks the following money damages from Defendant Hoff, Defendant McDonald, and the JACC Defendants: (1) damages in the amount of $75,000 or more, jointly and severally, for alleged civil rights and ADA violations, (Id. at 23; 158); and (2) damages in excess of $75,000 for intentional interference with Plaintiff's "contract" with the Minnesota Department of Corrections, (Id. at 24, ¶ 161).  Additionally, Defendant seeks damages from Defendant Schooler in excess of $75,000 for the alleged breach of their confidential settlement agreement.  (Id. at 24, ¶ 164).  Finally, Defendant seeks damages from Defendant Hoff in excess

---

[24] In making this request, Plaintiff directs the Court to "settlement agreement, exhibit a."  (2d Am. Compl. [Docket No. 7], at 19, ¶ 131).  Plaintiffs exhibits do, in fact, contain a settlement agreement executed February 13, 2013, between Plaintiff and various Minneapolis Police Department officers named as defendants in Rickmyer v. Hodson. (See Pl.'s Exs. [Docket No. 7-2], at 6-11).

of $75,000 in relation to his request that this Court enter default judgment against Hoff in

Rickmyer v. Hodson.  (Id. at 25, ¶ 169).

## III.     DEFENDANT HOFF'S MOTION TO DISMISS [Docket No. 19]

Plaintiff's Complaint names Defendant Hoff in Counts I and II, and Defendant Hoff in

Count IV.  Defendant Hoff, by his Motion, asks the Court to dismiss these counts pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  (See Docket

No. 19).

### A.  Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

claim showing that the pleader is entitled to relief."  In addressing a motion to dismiss pursuant

to Rule 12(b)(6) for failure to state a claim, "we look only to the facts alleged in the complaint

and construe those facts in the light most favorable to the plaintiff."  Riley v. St. Louis County of

Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc.,

136 F.3d 554, 556 (8th Cir. 1998)), cert. denied 525 U.S. 1178 (1999).  All reasonable inferences

must be drawn in favor of the nonmoving party.  See Maki v. Allete, Inc., 383 F.3d 740, 742 (8th

Cir. 2004).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulistic recitation of the elements of a cause

of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal

quotations and citations omitted).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged;" however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Twombly, 550 U.S. at 556-67. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 664.

## B. Discussion

Plaintiff alleges three counts against Defendant Hoff: (a) In Count I, Plaintiff alleges that Defendant Hoff violated his rights pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 12203; (b) in Count II, Plaintiff alleges intentional interference with contract; and (c) in Count IV, Plaintiff asks this Court to enter default judgment against Defendant Hoff in the state-court action Rickmyer v. Hodson, 27-CV-10-3378.

Defendant Hoff argues that Plaintiff's claims against him should be dismissed for any of three reasons: (1) Plaintiff's claims have been disposed of with an adjudication on the merits pursuant to Fed. R. Civ. P. 41; (2) Plaintiff has failed to state a claim as required under the Iqbal/Twombly standard; and (3) Plaintiff's claims are barred by Minnesota's Anti-SLAPP statute. (See Docket No. 19). Defendant Hoff not only seeks dismissal of the claims against him, but also, pursuant to the Anti-SLAPP statute, seeks an award of attorney's fees and costs. (Id.).

### 1. Plaintiff's claims against Defendant Hoff are not barred by the "two-dismissal rule."

Rule 41 provides that a Plaintiff may voluntarily dismiss his action by filing a notice of voluntary dismissal, which ordinarily will serve as a dismissal without prejudice. Fed. R. Civ. P. 41(a)(1). However, "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits."

Fed. R. Civ. P. 41(a)(1)(B).  This is the so-called "two-dismissal rule."  See Engelhardt v. Bell & Howell Co., 299 F.2d 480, 482 (8th Cir. 1962).

Defendant Hoff argues that the two-dismissal rule applies in the present case, because (1) "the dismissal due to plaintiff's failure to prosecute the [Rickmyer v. Roy] matter once remanded to state court would also act as an adjudication on the merits pursuant to Fed. R. Civ. P. 41(b)," and (2) Plaintiff's voluntary dismissal of Rickmyer v. Browne, 13-cv-141 (PAM/FLN), would constitute a second dismissal.  (Def. Hoff's Mem. Supp. Mot. Dismiss [Docket No. 21] (hereinafter, "Def. Hoff's Mem."), at 10).

The Court is not persuaded.  The two-dismissal rule applies when a plaintiff brings the same claims in multiple actions, and attempts to *voluntarily* dismiss those claims more than once. See Fed. R. Civ. P. 41(a)(1)(B) (two-dismissal rule applies "if *the plaintiff* previously dismissed"); see also Engelhardt, 299 F.2d at 482 (two-dismissal rule "protects a defendant by providing that *if the plaintiff takes advantage of his right of early dismissal on one occasion, he may not repeat the process with impunity*" (emphasis added)).

In the present case, there is no question that Plaintiff's *voluntary* dismissal of Rickmyer v. Browne clearly counts against the two-dismissal rule.  However, the dismissal of Plaintiff's claims in Rickmyer v. Roy was an *involuntary* dismissal,[25] and by its express terms "does not operate as an adjudication on the merits."  (Rickmyer v. Roy Order for Dismissal, *slip op.*, Jan. 18, 2013, in Decl. Godfread Ex. D [Docket No. 22-4], at 3).  Defendant Hoff offers no legal authority, and the Court found none, for the proposition that an *involuntary* dismissal under

---

[25] The dismissal in Rickmyer v. Roy was made pursuant to Minn. R. Civ. P. 41.02, which is similar, but not identical, to Fed. R. Civ. P. 41(b).  Compare Minn. R. Civ. P. 41.01, with Fed. R. Civ. P. 41(b); see also Advisory Committee Note—1968 to Minn. R. Civ. P. 41 (noting that "Minn. R. Civ. P. 41.02 and Fed. R. Civ. P. 41(b) are not identical at the present time").

Federal Rule 41(b), or a state-law equivalent thereof, should count as a prior *voluntary* dismissal for purposes of Federal Rule 41(a)(1)(B).

Therefore, the Court **does not** recommend dismissal pursuant to the two-dismissal rule contained in Fed. R. Civ. P. 41(a).

> **2.  Plaintiff has failed to state a claim for which relief can be granted against Defendant Hoff.**

> **a.   Plaintiff's Count I against Defendant Hoff should be dismissed.**

> **i.   Plaintiff's claims under 42 U.S.C. § 1985 and § 1986**

Plaintiff's claims against Defendant Hoff under 42 U.S.C. § 1985[26] and § 1986[27] fail as a matter of law under Fed. R. Civ. P. 12(b)(6), because Plaintiff has plead no facts whatsoever to support such claims.  Consequently, the Court recommends that Plaintiff's § 1985 and § 1986 claims against Defendant Hoff be **DISMISSED**.

> **ii.   Plaintiff's claims under 42 U.S.C. § 1983**

Plaintiff generally alleges that Defendant Hoff, both individually and as part of a conspiracy involving Defendant McDonald and the JACC Defendants, took actions that resulted in Plaintiff's arrest and Plaintiff's current state of "custody" pursuant to that arrest, thereby violating Plaintiff's rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

> **(a) Plaintiff's § 1983 claims fail as a matter of law.**

These claims under 42 U.S.C. § 1983 fail as a matter of law because, even assuming the allegations in his Complaint to be true, Plaintiff has alleged no facts that would tend to show that

---

[26] Section 1985 makes it illegal (1) to prevent a person from accepting, holding, or discharging the duties of "any office, trust, or place of confidence under the United States," including by threats or intimidation; (2) to obstruct justice or intimidate a party, witness, or juror; and (3) to intimidate voters or "go in disguise on the highway or on the premises of another, for the purpose of depriving . . . any person" of his or her civil rights.  See 42 U.S.C. § 1985.
[27] Section 1986 establishes liability for failure to prevent acts described in § 1985.  See 42 U.S.C. § 1986.

Defendant Hoff is a state actor or was otherwise acting under color of state law when he took the actions he is alleged to have taken in the Complaint.  As this Court has previously explained:

> Section 42 U.S.C. § 1983 does not in and of itself create or establish any federally protected right.  Rather, it creates a cause of action for Plaintiff to enforce federal rights created elsewhere such as those found in the United States Constitution.  Albright v. Oliver, 510 U.S. 266, 271 (1994).  In other words, 42 U.S.C.§ 1983 fulfills the procedural or remedial function of authorizing a plaintiff to assert a claim for relief against a defendant who, ***acting under color of state law***, violated the plaintiff's federal rights.  "***Only state actors can be held liable under § 1983.***"  Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851, 855 (8th Cir. 2001).

Milliman v. Stearns, No. 11-cv-3636 (JRT/LIB), 2012 U.S. Dist. LEXIS 140458, at *16 (D. Minn. May 30, 2012) (Brisbois, M.J.) (hereinafter, "Milliman I") (emphasis added), adopted by 2012 U.S. Dist. LEXIS 139475 (D. Minn. Sept. 27, 2012) (Tunheim, J.).

To successfully assert a § 1983 claim, a plaintiff must at the outset plead facts demonstrating that the individual or individuals committing the offending action were acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  The same standard applies for allegations that a private individual acted under color of state law.  See Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir. 1983) ("When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action."); Simmons v. Sacramento Cnty. Sup. Ct., 318 F.3d 1156, 1161 (9th Cir. 2003).  Plaintiff here, however, has pled no facts to support a claim of action by Defendant Hoff under color of state law.

Plaintiff generally argued at the September 3, 2013, motions hearing that a private party acting in concert with a state official constitutes state action and renders the private party a state actor, and cited Hafer v. Melo, 502 U.S. 21 (1991), in support of that proposition.  (Hr'g Tr.

[Docket No. 187], at 15).  However, <u>Hafer</u> did not address the question of whether a private party's actions constitute state action, but rather, concerned whether "state officials sued in their individual capacities are 'persons' for purposes of § 1983."  <u>Id.</u> at 23, 31 (answering in the affirmative).

Plaintiff's § 1983 claim against Defendant Hoff fails in this case because there are no facts alleged to show Defendant Hoff acted under color of state law.

Additionally, even if Plaintiff could somehow demonstrate that Defendant Hoff was acting under color of state law, the Court finds that the doctrine set forth by the U.S. Supreme Court in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), bars him from recovering.  In <u>Heck</u>, the U.S. Supreme Court held that:

> [I]n order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486-87.  Plaintiff does not specify the *exact* nature of the harms that he allegedly suffered, but it appears that the harm Plaintiff alleges is that his parole was revoked.  (<u>See</u> Hr'g Tr. [Docket No. 187], at 21 ("They worked with Will McDonald to violate my parole, have me put in jail.").  However, Plaintiff has presented no evidence that whatever sentencing consequence he suffered was revoked, expunged or otherwise called into question as required by <u>Heck</u>.  Moreover, the Minnesota state courts denied his *habeas corpus* petitions in <u>Rickmyer v. Roy</u> and <u>Stephenson v. Roy</u>, <u>supra</u>.  Consequently, Plaintiff's § 1983 claim against Defendant Hoff also would be barred by <u>Heck</u>.

**(b) Even assuming that Plaintiff's § 1983 claims did not fail as a matter of law, he has failed to allege facts sufficient to sustain his claims.**

Assuming, *arguendo*, that Plaintiff's § 1983 claims against Defendant Hoff did not fail as a matter of law, Plaintiff nonetheless has failed to sufficiently allege that he has suffered the deprivation of a constitutional right; and, even if he had sufficiently plead such a claim, he has failed to sufficiently allege that Defendant Hoff, either individually or as part of a conspiracy, caused him to suffer such harm.

"In order to prevail on a § 1983 civil conspiracy claim, a plaintiff must show, 'that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." St. James v. City of Minneapolis, No. 05-cv-2348 (DWF/JJG), 2007 U.S. Dist. LEXIS 73791, at *20 (D. Minn. Oct. 2, 2007) (Frank, J.) (quoting Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999)). "Moreover, a plaintiff must prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." Id.

Plaintiff in the present case "has only alleged constitutional violations in the most general of terms. Plaintiff alleges in a mere conclusory fashion that the . . . Defendants violated his constitutional rights . . . . [T]hese allegations are nothing more than mere 'labels and conclusions' lacking any specific factual allegations, and they are therefore wholly insufficient to survive a motion to dismiss." Milliman I, 2012 U.S. Dist. LEXIS 140458, at *17-18. Although Plaintiff here repeatedly invokes the First, Fourth, Fifth, Eighth and Fourteenth Amendments, he never alleges *facts* sufficient to demonstrate or even allege how he was deprived of his rights under those Amendments.[28]

---

[28] Presumably, Plaintiff's claims arise from the consequences of his arrest on July 23, 2009, and/or his arrest on March 3, 2011. However, as previously explained, even if Plaintiff could demonstrate that Defendant Hoff was directly responsible for his arrest and any subsequent punishment, under Heck v. Humphrey, Plaintiff cannot prevail

Additionally, even if Plaintiff had sufficiently alleged a specific constitutional harm, he makes no allegation that Defendant Hoff, individually, took any specific action that resulted in the violation or deprivation of Plaintiff's rights.  For example, although Plaintiff accuses Defendant Hoff of writing inaccurate blog posts concerning Plaintiff's conditions of release, he does not allege that he suffered a violation of his rights as a direct result of those allegedly inaccurate blog posts.[29]

Finally, although Plaintiff alleges generally and in a conclusory manner that Defendant Hoff conspired with Defendant McDonald and the JACC Defendants, he fails to set forth specific *factual allegations* of the nature and manner of the conspiracy sufficient to meet the pleading requirements of Rule 8; Iqbal, supra; and Twombley, supra.  As previously noted, the harm Plaintiff claims to have suffered as a result of the alleged conspiracy is the revocation of his parole.  (See 2d Am. Compl. [Docket No. 7], at 23, ¶¶ 156-57).  However, even if Defendant Hoff communicated directly with Defendant McDonald in order to allege that Plaintiff had violated his conditions of release, "[a] private party does not conspire with government actors for purposes of § 1983 merely by 'invoking an exercise of the state's official authority'—for example, by calling the police." Lawrence v. City of St. Paul, 740 F. Supp. 2d 1026, 1049-50 (D. Minn. 2010) (citing Young v. Harrison, 284 F.3d 863, 870 (8th Cir. 2002)); see also Myers v. Morris, 810 F.2d 1437, 1454 (8th Cir. 1987) ("Various people engaged in investigating and reporting suspected criminal activity does not amount to a conspiracy").  In short, Plaintiff has failed to make a prima facie showing that the Defendant Hoff, by his blogging, violated his rights

---

on such a claim unless the charge that gave rise to the harm he allegedly suffered is invalidated.  See Part III.C.2.a.ii(a), supra.

[29] Again, Plaintiff alleges that, in part because of Defendant Hoff's blog posts, he was incarcerated and/or that he was subjected to more restrictive conditions of release.  However, under Heck, unless and until Plaintiff demonstrates that the proceedings that resulted in such punishment were invalidated, Plaintiff cannot recover under such a claim.

under the United States Constitution or under any Federal statute.  Plaintiff's allegations of a conspiracy are mere "labels and conclusions."  Twombly, 550 U.S. at 555.

Although Plaintiff repeatedly uses the word "conspiracy" in his Second Amended Complaint, he alleges no *specific facts* that would demonstrate either that Defendant Hoff conspired against him, or took any overt act in furtherance of such a conspiracy.  Like the complaint in Iqbal, which only loosely alleged that supervisory officials "knew of, condoned, and willfully and maliciously agreed to" subject the plaintiff to harsh conditions for an illegitimate reason, Plaintiff's allegations in the present case "are conclusory and not entitled to be assumed true."  Iqbal, 556 U.S. at 681; see also Twombly, 550 U.S. at 554-55.  The Court is "mindful that 'conspiracies are by their nature usually clandestine.  It is unlikely that a plaintiff in a conspiracy case will be able to provide direct evidence of a conspiratorial agreement.  Thus, such evidence is not necessary to prove that a civil conspiracy existed.'"  White v. Walsh, 649 F.2d 560, 561 (8th Cir. 1981) (quoting Sparkman v. McFarlin, 601 F.2d 261, 278 n.19 (7th Cir. 1979) (en banc) (Swygert, J., dissenting)).  However, even though a plaintiff need not provide direct evidence of a conspiracy, he still must assert some evidence.[30]  Here, Plaintiff has presented no facts whatsoever that the Court can discern which would support his attempted § 1983 conspiracy claims.

The Court recommends that Plaintiff's § 1983 claims against Defendant Hoff be

**DISMISSED**.

---

[30] For example, in White, the plaintiff alleged that a state court judge, a prosecutor, and his own defense counsel conspired together to have him removed from the courtroom during jury selection for his trial.  White's complaint stated that he instructed his attorney that he wished to be present during all aspects of his trial, including jury selection.  Nonetheless, the judge allowed White to be removed from the courtroom and placed in a holding cell during jury selection, without providing any reason in the record for doing so.  When White was returned to the courtroom, an all-white jury had been seated.  White both objected to the all-white jury and requested that he be appointed a new attorney; the trial court refused to alter the jury, and denied White's request for new counsel.  649 F.2d at 562.  The Court of Appeals concluded, based on the plaintiff's complaint, that he "state[d] sufficient facts to give rise to the inference that there was . . . a meeting of the minds[, and a]coordingly, the district court erred by dismissing White's complaint for lack of specificity."  Id.

### iii.  Plaintiff's claims under 42 U.S.C. § 12203

Under 42 U.S.C. § 12203, it is unlawful for a person to retaliate against a person who participates in an investigation, proceeding or hearing concerning disability rights, or to seek to coerce or intimidate a person because of that person's exercise of such rights.  Plaintiff generally alleges that Defendant Hoff engaged in such retaliation.

The Americans with Disabilities Act provides that: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual . . . on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."  42 U.S.C. § 12203(b).  To establish a retaliation claim under § 12203, "a plaintiff must demonstrate '(1) that he engaged in a statutorily protected activity, (2) that an adverse action was taken against him, and (3) a causal connection between the adverse action and the protected activity.'"  Mershon v. St. Louis Univ., 442 F.3d 1069, 1074 (8th Cir. 2006) (quoting Amir v. St. Louis Univ., 184 F.3d 1017, 1025 (8th Cir. 1999)).[31]

However, in the present case, Plaintiff alleges no *specific facts* that would support his allegation of retaliation, i.e., no specific facts to show that any action taken by Defendant Hoff was either an adverse action against Plaintiff or was connected to Plaintiff's ADA advocacy.  Instead, with regard to any causal connection, Plaintiff provides no facts, but rather, mere legal conclusions, which, by themselves, are insufficient to sustain his claims.  Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  Where Plaintiff does allege specific facts, mainly in the form of references to and quotations from Defendant Hoff's blog posts, those facts suggest that Defendant Hoff's commentary—his alleged adverse action—had little to do with Plaintiff's ADA advocacy, and

---

[31] In both Mershon and Amir, the Eighth Circuit was describing a summary judgment standard.  However, district courts in the Eighth Circuit have applied the same standard to motions to dismiss.  See Parrish v. Carlson Wagonlit Travel Group, 2010 U.S. Dist. LEXIS 33829, at *6-7 (E.D. Mo. Apr. 6, 2010).

23

more to do with Plaintiff's criminal record, (see, e.g., 2d Am. Compl, [Docket No. 7], at 6, ¶¶ 28,

30), and the long history of litigation among these parties.  (See, e.g., Id. at 4, ¶¶ 14-15; at 7-8, ¶

37; at 12, ¶ 66; at 13, ¶¶ 69, 72; at 16, ¶ 101; at 18, ¶ 113; and at 20, ¶ 136).

Therefore, the Court recommends that Plaintiff's § 12203 claim against Defendant Hoff

be **DISMISSED**.

### b.  Plaintiff's Count II against Defendant Hoff should be dismissed[32]

Plaintiff alleges that he had "[a] valid contract" with the Minnesota Department of

Corrections, and that "all defendants except [Defendant] Schooler" intentionally interfered with

that contract, resulting in Plaintiff's being placed "in-custody (incarceration, house arrest, and or

curfew)."  (2d Am. Compl. [Docket No. 7], at 24, Count II caption and ¶ 160 (parenthetical in

original)).

"To successfully state a claim of intentional interference with contract, a plaintiff must

allege facts supporting the following elements: '(1) the existence of a contract; (2) the alleged

wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without

justification; and (5) damages.'" Magee v. Trs. of the Hamline Univ., No. 11-cv-949 (JRT/ABJ),

2012 U.S. Dist. LEXIS 187590, at *20 (D. Minn. Oct. 15, 2012) (Boylan, C.M.J.) (quoting E-

Shops Corp. v. U.S. Bank Nat. Ass'n, 795 F. Supp. 2d 874, 878 (D. Minn. 2011), aff'd, 678 F.3d

659 (8th Cir. 2012)), adopted by 2013 U.S. Dist. LEXIS 45222 (D. Minn. Mar. 29, 2013)

(Tunheim, J.); see also Furlev Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc., 325

N.W.2d 20, 25 (Minn. 1982).

---

[32] Defendant Hoff is not specifically mentioned in the text of Count II.  However, because Plaintiff states that this Count is brought "[a]gainst all defendants except [Defendant] Schooler," and because the allegations contained in this Count mirror those in which Plaintiff claims that Defendant Hoff conspired with Defendant McDonald and/or the JACC Defendants, the Court considers this Count as it might be liberally applied to Defendant Hoff.

In the present case, Plaintiff has failed to allege any facts that would demonstrate even the first element: the existence of a contract. He has neither provided a copy of said "contract" as an exhibit for the Court's review, nor even specifically described in his Second Amended Complaint the nature of the "contract" at issue. In fact, it appears from his Second Amended Complaint that the "contract" between himself and the Minnesota Department of Corrections to which Plaintiff refers is actually his parole or other conditions of release. Plaintiff offers no legal authority, and this Court can find none, suggesting that his conditions of release—which are set by the Department of Corrections, with no consideration provided by Plaintiff—constitute a contract for purposes of a claim such as he attempts to assert in Count II.

Plaintiff has not alleged facts sufficient to demonstrate even the existence of a contract, this claim fails. See Sip-Top, Inc. v. Ekco Group, 86 F.3d 827, 832 (8th Cir. 1996) (to prevail on claim of tortious interference with contract, "[u]nder Minnesota law [the plaintiff] must prove . . . that a contract existed").[33] Accordingly, the Court recommends that Plaintiff's intentional interference with contract claim against Defendant Hoff be **DISMISSED**.

### c. Plaintiff's Count IV against Defendant Hoff should be dismissed

Plaintiff asks this Federal Court to enter default judgment against Defendant Hoff in an earlier State court action, Rickmyer v. Hodson, 27-CV-10-3378. (See 2d Am. Compl. [Docket No. 7], at 24-25, ¶¶ 165-69).

Plaintiff offers no authority, and this Federal Court has found none, suggesting that this Court has the authority to enter judgment in a Minnesota state court case, particularly a case that was closed some three years ago. Rather, Plaintiff merely concludes, without offering any supporting legal authority, that the present case "is a 'new' federal lawsuit which is alternative to State lawsuits 27-cv-10-3378 and 27-cv-11-11012 and therefore this court can take jurisdiction

---

[33] Because Plaintiff's claim fails to meet even the first element, the Court need not consider the other four elements.

over all matters in 27-cv-10-3378 and 27-cv-11-11012."  (Pl.'s Mem. Opp. Mots. Dismiss

[Docket No. 74], at 2, ¶ 4).  In fact, available case authority is consistent with holding that this

Court does not have such authority.  See Lawhorn v. Ayers, 2010 U.S. Dist. LEXIS 118250, at

*6 (W.D. Va. Nov. 5, 2010) ("I do not have jurisdiction to enter a declaratory judgment in a

state-court civil case closed long ago").

The Court recommends that Plaintiff's Count IV, by which he seeks default judgment

against Defendant Hoff in an earlier, closed Minnesota State court action, be **DISMISSED** as

contrary to law.

### 3.   The anti-SLAPP statute

Finally, Defendant Hoff argues that he is immune from suit under Minnesota's anti-

SLAPP statute, which also entitles him to seek an award of attorney's fees and actual and

punitive damages from Plaintiff.  (Def. Hoff's Mem. Supp. Mot. Dismiss [Docket No. 21], at 5-

7).

The Minnesota Legislature in 1994 enacted what is commonly known as the anti-SLAPP

statute, codified at Minn. Stat. §§ 554.01-554.05, "'[t]o protect citizens and organizations from

lawsuits that would chill their right to publicly participate in government.'"  Hoyt v. Goodman,

No. 10-cv-3680 (SRN/FLN), 2011 U.S. Dist. LEXIS 142508, at *13 (D. Minn. Dec. 12, 2011)

(Nelson, J.) (quoting Marchant Inv. & Mgmt. Co. v. St. Anthony W. Neighborhood Org., Inc.,

694 N.W.2d 92, 94-95 (Minn. Ct. App. 2005)).

Because Defendant Hoff prevailed above on his 12(b)(6) argument, this Court need not

reach the question of whether he is immunized from liability under the anti-SLAPP statute.  See

Boley v. Minn. Advocates for Human Rights, No. 08-cv-5908 (PJS/FLN), 2010 U.S. Dist.

LEXIS 4994, at *3 (D. Minn. Jan. 22, 2010) (Schiltz, J.) ("Because defendants have already

prevailed on their statute-of-limitations defense, the Court need not reach any of their many other

defenses, including whether they are immunized from liability under Minn. Stat. § 554.03.").

Also, since the Court does not reach the question of whether Defendant Hoff's actions fall within

the ambit of the anti-SLAPP statute, he has not "'prevail[ed] in a motion under this chapter' and

[is therefore] not entitled to attorney's fees or damages under Minn. Stat. § 554.04." Id.[34]

Accordingly, with regard to his request for an award of attorney's fees and damages, the

Court recommends that Defendant Hoff's Motion to Dismiss, [Docket No. 19], be **DENIED in**

**part**.

### 4.  **Plaintiff's Counts I, II and IV against Defendant Hoff should be dismissed <u>with</u> prejudice.**

There is some disagreement among Federal courts about whether a Rule 12(b)(6)

dismissal is normally one with prejudice or without prejudice.[35]  While the Eighth Circuit does

---

[34] However, as the Hon. Patrick J. Schiltz noted in <u>Boley</u>:
> This does not leave defendants without a remedy.  Minnesota's anti-SLAPP statute creates an affirmative cause of action for parties who believe that they have been sued in federal court in violation of the statute. <u>See</u> Minn. Stat. § 554.045.  But defendants did not bring a counterclaim under this provision and thus the Court need not decide whether they are entitled to relief under it.

2010 U.S. Dist. LEXIS, at *3, n.2.  Similarly, in the present case, although the Court will not recommend awarding Defendant Hoff attorney's fees or other damages, he may, if he so chooses, bring an action  against Plaintiff in Minnesota state court pursuant to Minn. Stat. § 554.045.

[35] <u>Compare</u> <u>CNH America LLC v. Int'l Union</u>, 645 F.3d 785, 795 (6th Cir. 2011) (explaining that "[o]rdinarily, if a district court grants a defendant's 12(b)(6) motion, the court will dismiss the claim without prejudice to give parties an opportunity to fix their pleading defects . . . [b]ut if a party does not file a motion to amend or a proposed amended complaint, it is not an abuse of discretion for the district court to dismiss the claims with prejudice."); <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment. A district court's failure to consider the relevant factors and articulate why dismissal should be with prejudice instead of without prejudice may constitute an abuse of discretion."); <u>Ostrzenski v. Seigel</u>, 177 F.3d 245, 252-53 (4th Cir. 1999) (holding that "the district court should not have dismissed the complaint with prejudice without permitting [the plaintiff] an opportunity to amend," and explaining that "[t]he better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim."); <u>with</u> <u>Petty v. County of Franklin, Ohio</u>, 478 F.3d 341, 346 (6th Cir. 2007) ("12(b)(6) dismissal . . . is generally construed as a dismissal with prejudice on the merits"); <u>Higgins v. City of Tulsa, Oklahoma</u>, 103 Fed. Appx. 648, 651 (10th Cir. 2004) (unpublished) ("[A] dismissal under Rule 12(b)(6) for failure to state a claim is generally with prejudice."); <u>Rollins v. Wackenhut Servs., Inc.</u>, 703 F.3d 122, 133 (D.C. Cir. 2012) (Kavanaugh, J. concurring) ("On the contrary, Rule 41(b) contemplates that a Rule 12(b)(6) dismissal ordinarily operates as a dismissal with prejudice, unless the district court in its discretion states otherwise."); <u>City of Jefferson v. Cingular Wireless, LLC</u>, 2007 WL 1965572, at * (W.D. Mo. Jul. 3, 2007) (explaining that "dismissals

not appear to have addressed the issue directly, decisions from the Eighth Circuit and this Court generally favor dismissals under Rule 12(b)(6) without prejudice, at least where there is no evidence of persistent pleading failures.  See Michaelis v. Neb. State Bar Ass'n, 717 F.2d 437, 438–39 (8th Cir.1983) ("Ordinarily dismissal of a plaintiff's complaint for failure to comply with Rule 8 should be with leave to amend.  But if the plaintiff has persisted in violating Rule 8 the district court is justified in dismissing the complaint with prejudice." (internal citation omitted)); Larson v. Stow, 36 F.3d 1100 (8th Cir. 1994) (table decision); Patil v. Minnesota State University, Mankato, No. 12-cv-1052 (JRT/JSM), 2012 WL 7807608, at *10 (D. Minn. Dec. 10, 2012); Ikechi v. Verizon Wireless, No. 10-cv-4554 (JNE/SER), 2011 WL 218797, at *5 n.6 (D. Minn. Apr. 7, 2011).

In the present case, however, Plaintiff has had ample opportunities to properly assert specific facts to support his claims against the Defendant Hoff: he could have asserted such facts in his Minnesota state court actions Rickmyer v. Hoff and/or Rickmyer v. Hodson;[36] or he could have asserted such facts in his earlier Federal court action, Rickmyer v. Browne, No. 13-cv-141 (PAM/FLN), which he voluntarily dismissed.  The Court finds that Plaintiff has been afforded more than ample opportunity to present the facts he believed supported his claims.

Additionally, the Court notes that the defects in Plaintiff's Count IV cannot be cured by re-pleading, because his claim fails as a matter of law.  See Tatone v. Suntrust Mortg., Inc., 857 F. Supp. 2d 821, 840 (D. Minn. 2012) (Mayeron, M.J.) (dismissing with prejudice where claims fail as a matter of law), adopted by 857 F. Supp. 2d. 821, 823 (Davis, C.J.).

---

under Rule 12(b)(6) are generally with prejudice," but "[g]iven the contorted procedural history of this dispute," dismissing the claim without prejudice).

[36] Plaintiff acknowledged during the September 3, 2013, motions hearing that his claims against Defendant Hoff in the present case are substantially the same as the claims he brought in his Minnesota state court actions.  (Hr'g Tr. [Docket No. 187], at 20 ("MR. RICKMYER: John Hoff started conspiring with the JACC Defendants at some point, and he worked with William McDonald.  In fact, on -- THE COURT: These are all allegations you made in Hennepin County.  MR. RICKMYER:  Correct.").

Consequently, the Court recommends that Plaintiff's claims against Defendant Hoff be **dismissed WITH PREJUDICE**.  See Welk v. GMAC Mortg., LLC, 850 F. Supp.2d 976, 991-92 (D. Minn. Mar. 29, 2012) (dismissing some of the plaintiff's claims with prejudice for a pleading failure under Fed. R. Civ. P. 8 because "plaintiffs have already had two opportunities to plead these claims . . .").

### 5.  Summary

For the reasons set forth above, the Court recommends that Defendant Hoff's Motion to Dismiss, [Docket No. 19], be **GRANTED in part**, such that Plaintiff's Counts I, II and IV against him be **DISMISSED with prejudice**, and **DENIED in part**, such that Defendant Hoff's request for attorney's fees and damages be **DENIED without prejudice**.


## IV.   JACC DEFENDANTS' MOTION TO DISMISS [Docket No. 64]

Plaintiff alleges two counts against the JACC Defendants: (a) In Count I, Plaintiff alleges that the JACC Defendants violated his rights pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 12203; and (b) in Count II, Plaintiff alleges intentional interference with contract.

The JACC Defendants argue (1) that Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted; and (2) that the anti-SLAPP statute immunizes them from suit.  (JACC Defs.' Mem. Supp. Mot. Dismiss [Docket No. 66], at 5-20).

### A.  Standard of Review

The standard of review for this Motion is set forth in Part III.A, supra.

### B.  Discussion

#### 1.  Plaintiff has failed to state a claim for which relief can be granted against the JACC Defendants.

##### a.  Plaintiff's Count I against the JACC Defendants should be dismissed

### i.  Plaintiff's claims under 42 U.S.C. § 1985 and § 1986

Plaintiff's claims against the JACC Defendants under 42 U.S.C. § 1985 and § 1986 fail as a matter of law for the same reasons that those same claims fail against Defendant Hoff— because Plaintiff has alleged no facts whatsoever that would support a claim under § 1985 or § 1986.  See Part III.B.2.a.i, supra.  Accordingly, the Court recommends that Plaintiff's § 1985 and § 1986 claims against the JACC Defendants be **DISMISSED**.

### ii.  Plaintiff's claims under 42 U.S.C. § 1983

Plaintiff generally alleges that the JACC Defendants, both individually and as part of a conspiracy involving Defendant Hoff and Defendant McDonald, took actions that resulted in Plaintiff's arrest and Plaintiff's current state of "custody" pursuant to that arrest, thereby violating Plaintiff's rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

Plaintiff has failed to show any facts to demonstrate that the JACC Defendants were acting under color of state law.  See West, 487 U.S. at 48 (to successfully assert a § 1983 claim, plaintiff must plead facts demonstrating that the defendants were acting under color of state law). The Jordan Area Community Council, itself, is not a governmental entity, but rather, is a nonprofit organization formed pursuant to Minn. Stat. § 317A and 26 U.S.C. § 501(c)(3).  (JACC Articles of Incorporation, Aff. Renz Ex. A [Docket No. 67-1]).  Plaintiff acknowledges as much in his Second Amended Complaint, in which he states that the JACC "is a Minnesota non-profit corporation."  (2d Am. Compl. [Docket No. 7], at 2, ¶ 2).  Plaintiff follows that statement with an allegation that the JACC "is considered a government instrumental" [sic], and argues that the City of Minneapolis Guidelines for Neighborhood Organizations states that "[*n*]*eighborhood organizations* that receive city funding are considered local government instrumentality [sic] and

are covered by Title II of the ADA." (Pl.'s Supplemental Mem. [Docket No. 97], at 2 (emphasis in original)). However, the fact that the City of Minneapolis treats neighborhood organizations as local government instrumentalities *for purposes of the ADA* does not mean that such organizations constitute governmental entities *under federal law for purposes of a § 1983 claim*. As to the JACC Defendants, Plaintiff is thus trying to hold private actors liable under § 1983 withot any allegations to show that their private actions were taken under color of state law. See Part II.B.2.a.ii.(b), supra.

Finally, as with his allegations of conspiracy against Defendant Hoff, Plaintiff has alleged no *specific facts* sufficient to sustain his conspiracy claim against the JACC Defendants.

Additionally, even if his § 1983 claims against the JACC Defendants did not fail for lack of any facts to show action under color of state law, for the same reasons set forth in Part III.B.2.a.ii.(a), supra, the Court finds that Plaintiff's § 1983 claims against the JACC Defendants are also barred by the doctrine set forth in Heck v. Humphrey.

Plaintiff has failed to allege facts sufficient to allow his § 1983 claim against the JACC Defendants to proceed, and therefore, the Court recommends that those claims be **DISMISSED**.

### iii.  Plaintiff's claims under 42 U.S.C. § 12203

Again, as with his claims against Defendant Hoff, addressed in Part III.B.2.a.iii, supra, Plaintiff alleges no *specific facts* that would support his allegation of retaliation under § 12203 as against the JACC Defendants. Instead, Plaintiff's allegations in his Second Amended Complaint amount to no more than mere suppositions and legal conclusions. As previously noted, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by *factual allegations*." Iqbal, 556 U.S. at 679 (emphasis added). Because of the lack of any specific

factual allegations in Plaintiff's Second Amended Complaint, [Docket No. 7], his § 12203 claim

against the JACC Defendants should be **DISMISSED**.

### b. Plaintiff's Count II against the JACC Defendants should be dismissed

As noted in Part III.B.2.b, <u>supra</u>, Plaintiff has failed to allege facts that would

demonstrate even the existence of a contract. Because he has not alleged facts sufficient to

demonstrate the existence of a contract, this claim fails. See <u>Sip-Top, Inc. v. Ekco Group</u>, 86

F.3d 827, 832 (8th Cir. 1996) (to prevail on claim of tortious interference with contract, "[u]nder

Minnesota law [the plaintiff] must prove . . . that a contract existed").

### 2. The anti-SLAPP statute

The JACC Defendants also argue that they are immune from suit under Minnesota's anti-

SLAPP statute; however, unlike Defendant Hoff, the JACC Defendants do not ask for an award

of attorney's fees and damages. (JACC Defs.' Mem. Supp. Mot. Dismiss [Docket No. 66], at

19-20). Because the Court finds that the JACC Defendants prevailed on their 12(b)(6) argument,

it need not reach the question of whether they are immunized from liability under the anti-

SLAPP statute. See <u>Boley</u>, 2010 U.S. Dist. LEXIS 4994, at *3 (D. Minn. Jan. 22, 2010) (Schiltz,

J.).

### 3. Plaintiff's Counts I and II against the JACC Defendants should be dismissed <u>with</u> prejudice.

For the same reasons set forth in Part III.B.4, <u>supra</u>, this Court recommends that

Plaintiff's Counts I and II against the JACC Defendants be **DISMISSED with prejudice**.

### 4. Summary

For the reasons set forth above, the Court recommends that the JACC Defendants'

Motion to Dismiss, [Docket No. 64], be **GRANTED**, and that Plaintiff's Counts I and II against

the JACC Defendants be **DISMISSED with prejudice**.

## V.      DEFENDANT SCHOOLER'S MOTION TO DISMISS [Docket No. 53][37]

Plaintiff asserts only one claim against Defendant Schooler: a breach of contract claim

alleging that Defendant Schooler breached the settlement agreement between Plaintiff and

Defendant Schooler reached in <u>Rickmyer v. Hodson</u>[38] by referring to Plaintiff as his "particular

stalker" when Plaintiff showed up at a hearing in an unrelated state court case.  (2d Am. Compl.

[Docket No. 7], at 19, ¶¶ 125-26, 128; at 24, ¶¶ 162-64).

Defendant Schooler argues that this Court lacks subject matter jurisdiction over

Plaintiff's claim.  (Def. Schooler's Mem. Supp. Mot. Dismiss [Docket No. 56], at 7-9).  In the

alternative, Defendant Schooler argues that Plaintiff has failed to state a claim for breach of

contract, because even if Plaintiff's allegations concerning Defendant Schooler's conduct were

true they would not amount to a breach of the settlement agreement.  (<u>Id.</u> at 6-7).[39]

### A.  Standard of Review

The standard of review for this Motion is set forth in Part III.A, <u>supra</u>.

---

[37] Plaintiff filed no Response to this Motion; instead, he merely argued that "the Court should ignore [Defendant] Schooler's request" in light of his argument that Defendant Schooler was in default.  (<u>See</u> Pl.'s Reply Br. [Docket No. 105], at 1).  As previously noted, Defendant has since withdrawn his Motion for Default Judgment.  (Notice of Withdrawal [Docket No. 170]).

Additionally, the Court notes that the only claim Plaintiff makes in his operative Second Amended Complaint against Defendant Schooler, the breach of contract claim, was <u>not</u> made in Plaintiff's Proposed Amended Complaint.  Although the Court could construe this as a desire by Plaintiff to withdraw his breach of contract claim against Defendant Schoolar and grant Defendant Schooler's Motion to Dismiss, [Docket No. 53], in the interest of completeness, the Court instead will consider the merits of Defendant Schooler's Motion.

[38] No. 27-CV-10-3378 (Hennepin Cty., Minn.).

[39] Additionally, Defendant Schooler argued in his Memorandum that Plaintiff's claims against him should be dismissed for insufficiency of service pursuant to Fed. R. Civ. P. 12(b)(5).  (Def. Schooler's Mem. Supp. Mot. Dismiss [Docket No. 56], at 9-10).  However, Defendant Schooler did not raise the issue during the September 3, 2013, motions hearing before Magistrate Judge Rau.  (<u>See</u> Hr'g Tr. [Docket No. 187]).  Accordingly, the Court considers this argument to be waived.

Finally, citing both 28 U.S.C. § 1927 and this Court's inherent authority, Defendant Schooler asks for an order of sanctions against Plaintiff "for unreasonable and vexatious litigation."  (Def. Schooler's Mem. Supp. Mot. Dismiss [Docket No. 56], at 10-12).  However, while Defendant Schooler argues for sanctions in his <u>Memorandum</u>, [Docket No. 56], he <u>does not</u> make any such request in his actual <u>Motion</u>.  [Docket No. 53].  Accordingly, Defendant Schooler's request for sanctions as an exercise of this Court's authority under 28 U.S.C. § 1927 and/or its inherent authority is **DENIED**.  However, such denial does not constitute a denial of any part of Defendant Schooler's Motion to Dismiss, [Docket No. 53], and has no effect on this Court's consideration of his separate Motion for Rule 11 Sanctions, [Docket No. 122].

**B. Discussion**

"A party invoking federal jurisdiction has the burden of establishing that he has the right to assert his claim in federal court." 281 Care Comm. v. Arneson, 638 F.3d 621, 627 (8th Cir. 2011). In the present case, Plaintiff has not demonstrated why this Court has jurisdiction over his breach of contract claim against Defendant Schooler.

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. However, Plaintiff has not demonstrated how his claim—to wit, that Defendant Schooler breached a settlement agreement reached in an unrelated Minnesota State court case—could possibly "aris[e] under" Federal law. "[A]n action to enforce a settlement agreement is a claim for breach of contract, [and therefore] it should be heard in state court unless it has 'its own basis for jurisdiction.'" Myers v. Richland County, 429 F.3d 740, 745 (8th Cir. 2005) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1994)).[40] Plaintiff has not even asserted such a basis for jurisdiction, much less set forth facts that would demonstrate a basis for the Court's subject matter jurisdiction.

Additionally, Plaintiff has asserted no facts that would suggest that this Court has diversity jurisdiction. See 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between— (1) citizens of different States . . . ."). First, the parties are not diverse, as both Plaintiff and Defendant Schooler are citizens of Minnesota. (2d Am. Compl. [Docket No. 7], at 2, ¶ 1 (Plaintiff is a citizen of Minnesota); Aff. Schooler [Docket

---

[40] Moreover, the settlement agreement before the Supreme Court in Kokkonen was entered into by parties in *Federal* court, and still the Court held that the Federal district court did not have jurisdiction. See Kokkonen, 511 U.S. at 380-81. In the present case, where the settlement agreement at issue was entered into in a separate Minnesota State court case, this Court is particularly loath to assert jurisdiction.

No. 57], at 1, ¶ 1 (Def. Schooler is a citizen of Minnesota)).  Second, even if the parties were

diverse, Plaintiff alleges no facts in support of his assertion that Defendant Schooler's alleged

breach of the Settlement Agreement "damaged [Plaintiff] in an amount in excess of $75,000."

(2d Am. Compl. [Docket No. 7], at 24, ¶ 164).  A complaint does not "suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678 (quoting

Twombly, 550 U.S. at 557).

Finally, the Court finds that it does not have supplemental jurisdiction pursuant to 28

U.S.C. § 1367.  The Court may exercise supplemental jurisdiction over a state law claim that is

"so related to claims in the action within such original jurisdiction that they form part of the

same case or controversy under Article III of the United States Constitution."  In the present

case, the breach of contract claim now under discussion is Plaintiff's only claim against

Defendant Schooler, and it is factually unrelated to any of the other claims attempted to be

asserted in Plaintiff's Second Amended Complaint.

For the reasons set forth above, this Court recommends that Defendant Schooler's

Motion to Dismiss, [Docket No. 53], be **GRANTED**, and that Plaintiff's claims against

Defendant Schooler be **DISMISSED** for lack of subject matter jurisdiction.

## VI.    PLAINTIFF'S MOTION TO AMEND COMPLAINT [Docket No. 171]

On December 13, 2013, Plaintiff made a renewed Motion to Amend Complaint.  [Docket

No. 171].[41]  In his Memorandum, Plaintiff does not specifically state why he now seeks to

---

[41] At the time of the September 3, 2013, motions hearing before Magistrate Judge Rau, the Court had before it
Plaintiff's earlier Motion to Amend Complaint, [Docket No. 131].  (See Hr'g Tr. [Docket No. 187]).  However,
Plaintiff withdrew that Motion on or about December 12, 2013.  (See Notice of Withdrawal [Docket No. 170]).

amend his complaint at this time.[42]  (See Pl.'s Mem. Supp. Mot. Am. Compl. [Docket No. 173], at 1-2).  However, reading his Proposed Amended Complaint[43] liberally, as this Court is required to do with *pro se* pleadings,[44] the Proposed Amended Complaint appears to differ from the operative Second Amended Complaint as follows:

- It adds the following new Defendants:

  o Kelly Browne (hereinafter "K. Browne" to differentiate from Defendant M.Browne);[45]

  o William McDonald in his official capacity as an employee of Hennepin County Community Corrections and Rehabilitation;[46]

  o Hennepin County Community Corrections and Rehabilitation; and

  o Hennepin County.  (See Proposed Am. Compl. [Docket No. 173], at 4).

- It appears to withdraw Plaintiff's § 1985 and § 1986 claims, as neither statute is mentioned in the Proposed Amended Complaint. (See Proposed Am. Compl. [Docket No. 173]).

---

[42] In the Proposed Amended Complaint, itself, Plaintiff notes that the "Equal Employment Opportunity Commission on December 6, 2013 issued [Plaintiff a] Notice of Right to Sue letter and I am amending complaint within 90 days of Notice of Right to Sue letter from Equal Employment Opportunity Commission."  (Proposed Am. Compl. [Docket No. 173], at 5, ¶ 3a).  However, Plaintiff did not attach a copy of his Notice of Right to Sue letter to his Proposed Amended Complaint or otherwise advise the Court of its contents or context.

[43] Plaintiff did not file his Proposed Amended Complaint as a separate document, but rather, it is attached as pages 4-31 of Plaintiff's Memorandum.  (See Pl.'s Mem. Supp. Mot. Am. Compl. [Docket No. 173], at 4-31).  Consequently, the page numbers applied by CM/ECF at the top of each page do not match the page numbers applied by Plaintiff at the bottom of every page.  The Court uses the page numbers applied to the top of the page by CM/ECF.

[44] Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("document[s] filed *pro se* [are] 'to be liberally construed'") (quoting Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)).

[45] It appears that Proposed Defendant K.Browne would be a JACC Defendant; accordingly, with regard to Plaintiff's Proposed Amended Complaint, all references to the JACC Defendants shall be inclusive of Defendant K.Browne, unless otherwise indicated.

[46] Defendant McDonald currently is named as a defendant only in his individual capacity.  (2d Am. Compl. [Docket No. 7], at 1).

36

- It also appears to withdraw Plaintiff's breach of contract claim against Defendant Schooler, as that claim is not mentioned in the Proposed Amended Complaint. (Id.).

- Some claims remain substantially the same, only with changes to the named defendants:

  o Under a newly numbered Count I, it alleges substantially the same § 1983 claim as the one alleged in his original Count I, and adds Defendants with regard to that claim Defendants Schooler and K.Browne, (Id. at 17, ¶¶ 68-75);

  o Under a newly numbered Count VII, it alleges substantially the same intentional interference with contact claim as the one alleged in his original Count II against Defendants Hoff and McDonald; however, instead of naming all of the JACC Defendants as he does in his present Second Amended Complaint, the Proposed Amended Complaint names only Defendant Goodmundson among the JACC Defendants, (Id. at 22, ¶¶ 101-05);

  o Under a newly numbered Count IV, it alleges substantially the same § 12203 claim, and includes Defendant K.Browne among the JACC Defendants, (Id. at 20, ¶¶ 86-90).[47]

---

[47] Additionally, Plaintiff's new Count V purports to add a claim under Title V of the Americans with Disabilities Act against Defendant Hoff, Defendant McDonald, and the JACC Defendants. (Proposed Am. Compl. [Docket No. 173], at 20-21). However, Title V of the ADA is merely another way of referring to 42 U.S.C. §§ 12201-12213. See U.S. Equal Employment Opportunity Commission, "Titles I and V of the Americans with Disabilities Act of 1980," http://www.eeoc.gov/laws/statutes/ada.cfm, (identifying "Subchapter VI" and "Title V" as the same, listing under them § 12203). Consequently, as a matter of law, Plaintiff's new Count V is identical in all respects to his newly numbered Count IV.

- It adds the following new claims:

  o Plaintiff's newly numbered Count II contains a claim under the Minneapolis Civil Rights Ordinance[48] against Defendant Hoff, Defendant McDonald, and the JACC Defendants, (Id. at 18-19, ¶¶ 76-80);

  o Plaintiff's newly numbered Count III contains a claim under the Minnesota Human Rights Act, Minn. Stat. § 363A, against Defendant Hoff, Defendant McDonald, and the JACC Defendants, (Id. at 19-20, ¶¶ 81-85);

  o Plaintiff's new Count VI contains a claim for "intentional interference with judicial process" against Defendants M.Browne, K.Browne, Hoff, Goodmundson, and McDonald, (Id. at 21-22, ¶¶ 96-100);

  o Plaintiff's new Count VIII contains a claim for conspiracy to aid and abet false arrest against Defendants M.Browne, K.Browne, Hoff, Goodmundson, and McDonald, (Id. at 22-23, ¶¶ 106-10);

  o Plaintiff's new Counts IX and XIII contain Monell claims[49] against the JACC, (Id. at 23-24, ¶¶ 111-15; at 27, 130-34);[50]

---

[48] Plaintiff provides a citation to Minn. Stat. 139.40 *et seq*.  That citation is in error, as Chapter 139 of the Minnesota Statutes concerns the Board of Arts, and does not contain a Section 40.  The proper citation is to MINNEAPOLIS, MINN., CODE § 139.40.

[49] A Monell claim is a § 1983 claim brought against a municipality that has adopted some policy, custom or practice that allegedly caused a violation of the claimant's constitutional rights.  See Davison v. City of Minneapolis, Minn., 490 F.3d 648, 659 (8th Cir. 2007) (city "may be held liable under section 1983 . . . if one of its customs or policies caused the violation of" the plaintiff's constitutional rights) (citing Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690-91 (1978)).

[50] Although Plaintiff, himself, does not identify Count IX as a Monell claim, each paragraph thereunder refers to "policies" and/or "customs" of the JACC.  (See Proposed Am. Compl. [Docket No. 173], at 23-24, ¶¶ 111-15).  Accordingly, the Court construes this as a Monell claim.
   Count XIII, on the other hand, is expressly identified as a Monell claim.  (See Id. at 27, ¶¶ 130-34).

o Plaintiff's new Counts X – XII contain a <u>Monell</u> claims against Hennepin
County and Hennepin County Community Corrections and Rehabilitation,
(<u>Id.</u> at 24-27, ¶¶ 116-29);[51]

o Plaintiff's new Count XIV contains a § 1983 claim alleging "failure to
prevent constitutional violations" against the JACC, (<u>Id.</u> at 27-28, ¶¶ 135-
37); and

o Plaintiff's new Count XV contains a § 1983 claim alleging "failure to
prevent constitutional violations" against Hennepin County and Hennepin
County Community Corrections and Rehabilitation, (<u>Id.</u> at 29, ¶¶ 138-41).

**A. Standard of Review**

If a party does not seek to amend their Complaint within the timing scope of Rule
15(a)(1), the party "may amend its pleading only with the opposing party's written consent or the
court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend should be granted "when justice so
requires." <u>Id.</u> The Supreme Court has explained the purposes of Rule 15(a) as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper
> subject of relief, he ought to be afforded an opportunity to test his claim on the
> merits. In the absence of such an apparent or declared reason—such as undue
> delay, bad faith or dilatory motive on the part of the movant, repeated failure to
> cure deficiencies by amendments previously allowed, undue prejudice to the
> opposing party by virtue of allowance of the amendment, futility of the
> amendment, etc.—the leave sought should, as the rules require, be "freely given."

<u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). Although "parties do not have an absolute right to

amend their pleadings, even under this liberal standard," <u>Sherman v. Winco Fireworks, Inc.</u>, 532

---

[51] Although Plaintiff, himself, does not identify Count X (against Hennepin County) and Count XI (against
Hennepin County Community Corrections and Rehabilitation) as <u>Monell</u> claims, each makes repeated reference to
the named defendant's "policies" and/or "customs." (<u>See</u> Proposed Am. Compl. [Docket No. 173], at 24-26, ¶¶
116-23). Accordingly, the Court construes these as <u>Monell</u> claims.
  Count XII, on the other hand, is expressly identified as a <u>Monell</u> claim, and names both Hennepin County and
Hennepin County Community Corrections and Rehabilitation as defendants. (<u>See id.</u> at 26-27, ¶¶ 125-29).

F.3d 709, 715 (8th Cir. 2008), the Court begins "with a presumption of liberality." DeRoche v. All Am. Bottling Corp., 38 F. Supp.2d 1102, 1106 (D. Minn. 1998).

An amendment is considered to be futile if "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." Cornelia I. Crowell GST Trust v. Possis Medical, Inc., 519 F.3d 778, 782 (8th Cir. 2008). As such, an amendment to a pleading can be successfully challenged on the grounds of futility, if the claims created by the amendment would not withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. See Humphreys v. Roche Biomedical Lab., Inc., 990 F.2d 1078, 1082 (8th Cir. 1993).

### B. Discussion

#### 1. The Court will not deny Plaintiff's motion on procedural grounds.

Initially, the Court notes that Plaintiff agreed during the September 3, 2013, motions hearing not to bring any additional motions until those already pending before the Court were decided. (Hr'g Tr. [Docket No. 187], at 6). The JACC Defendants urge the Court to deny Plaintiff's Motion to Amend Complaint, [Docket No. 171], on the grounds that it was filed in contravention of his own agreement not to file additional motions until the pending motions are decided. (JACC Defs.' Mem. Opp. Mot. Am. Compl. [Docket No. 179], at 3).

Additionally, the Court notes that Plaintiff's filing of his Motion and accompanying documents was not in compliance with the Local Rules, which require the filing of both a copy of the proposed amended complaint (which Plaintiff did file), and an additional copy of the proposed amended complaint "that shows—through redlining, underlining, strikeouts, or other similarly effective typographic methods—how the proposed amended pleading differs from the operative pleading." L.R. 15.1(b)(2). Plaintiff filed no such "redlined" version of his Proposed

40

Amended Complaint.  Defendant Schooler urges the Court to deny Plaintiff's Motion to Amend

Complaint, [Docket No. 171], for failure to comply with the Local Rules.  (Def. Schooler's

Mem. Opp. Mot. Am. Compl. [Docket No. 182], at 7).

The Court agrees that it *could* deny Plaintiff's Motion for either of these reasons.

Although the Court recognizes that Plaintiff is proceeding *pro se*, and therefore, that the content

of his pleadings must be "'liberally construed,'" Erickson v. Pardus, 551 U.S. 89, 94 (2007)

(quoting Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)), a *pro se* party's status does not excuse

them from complying with the substantive and procedural law.  Brown v. Frey, 806 F.2d 801,

804 (8th Cir. 1986).

Nonetheless, the Court will not recommend that the Motion be denied on purely

procedural grounds.  Although Plaintiff does not tell the court why he believes he should be

allowed to further amend his complaint, (see Mem. Supp. Mot. Am. Compl. [Docket No. 173], at

1-2), it appears to the Court that the amendments are at least partially directed to curing some of

the defects identified in the motions to dismiss.  The Eighth Circuit has held that, as a procedural

matter, it is plainly erroneous for a district court to grant a motion to dismiss, and then to deny a

pending motion to amend as moot, without consideration of the merits of the motion to amend.

See Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 956 (8th Cir. 2002)(reversing

order granting motion to dismiss, remanding to the district court to reconsider the motion to

amend on the merits); Ideal Instruments, Inc. v. Rivard Instruments, Inc., 434 F. Supp. 2d 640,

646 (N.D. Iowa 2006); Sallis v. Pavlak, No. 09-cv-3614 (JMR/JJG), 2010 U.S. Dist. LEXIS

87831, at *8 (D. Minn. Aug. 25, 2010) (Rosenbaum, J.) (where a court is faced with both a

motion to amend and a motion to dismiss the prior complaint for failure to state a claim "the

Court is advised to consider the motion to amend before deciding the motion to dismiss").  As a

consequence, the Court has considered whether Plaintiff's proposed amendments would save his claims before recommending dismissal of those claims.

> **2. The Court finds the claims in Plaintiff's Proposed Amended Complaint would not survive a Rule 12(b)(6) challenge, and, therefore, recommends that his Motion to Amend Complaint be denied as futile.**[52]

Count I:  Plaintiff, invoking 42 U.S.C. § 1983, alleges that Defendant Hoff, Defendant McDonald, Defendant Schooler, and the JACC Defendants violated his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.  (Proposed Am. Compl. [Docket No. 173], at 17-18, ¶¶ 68-75).

Plaintiff's claims with regard to Defendant Schooler are futile.  Plaintiff's only factual allegations concerning Defendant Schooler mirror those made in his existing complaint. (Compare 2d Am. Compl. [Docket No. 7], at 19, ¶¶ 125-28; with Proposed Am. Compl. [Docket No. 173], at 12, ¶¶ 40-41[53]).  The Court has already determined that those facts failed to support a showing of subject matter jurisdiction by this Court with regard to the breach of contract claim alleged in Plaintiff's Second Amended Complaint.  See Part V.B.2, supra.  Here, Plaintiff seeks to apply those same facts to a different theory—a § 1983 claim—but makes no showing whatsoever as to how those facts, even if true, amount to any violation of his constitutional rights, or that Defendant Schooler was acting under color of state law.  A plaintiff cannot rely on mere general and conclusory allegations to survive the motion to dismiss.  Martin v. Sargent, 780

---

[52] At present, the Court recommends only that Plaintiff's Motion be denied as to (1) its amended and new claims against Defendant Hoff, Defendant Schooler, and the JACC Defendants; and its claims against the new Defendants: K.Browne, Hennepin County, and Hennepin County Community Corrections and Rehabilitation.

The Court will issue a separate Report and Recommendation concerning Defendant McDonald's Motion for Summary Judgment, [Docket No. 155], which is scheduled for hearing on January 14, 2014, and in that Report and Recommendation the Court will address Plaintiff's Motion to Amend Complaint, [Docket No. 171], as it relates to his claims against Defendant McDonald.

[53] Plaintiff also suggests that Paragraphs 25-27 of his Proposed Amended Complaint support his § 1983 claim against Defendant Schooler.  (See Proposed Am. Compl. [Docket No. 173], at 17, ¶ 68).  However, those paragraphs make no mention of Defendant Schooler, but rather, report certain oral or written statements purportedly made by Defendants Hoff and Goodmundson.  (See Id. at 9-10, ¶¶ 25-27).  The only factual allegations concerning Defendant Schooler in the Proposed Amended Complaint are contained in Paragraphs 40-41.

F.2d 1334, 1337 (8th Cir. 1985); see also Twombly, 550 U.S. at 554 ("Factual allegations must

be enough to raise a right to relief above the speculative level."). And while, as previously

noted, the Court construes Plaintiff's claims liberally, "'liberal construction does not require a

court to conjure allegations on a litigant's behalf.'" Martin v. Overton, 391 F.3d 710, 714 (6th

Cir. 2004) (quoting Erwin v. Edwards, 22 Fed. Appx. 579, 580 (6th Cir. 2001)).[54]

Additionally, Plaintiff's proposed amended claims with regard to Defendant Hoff and the

JACC Defendants are also futile, as his Proposed Amended Complaint does nothing to cure the

deficiencies that prompted the Court to recommend dismissal in the first place. In short, Plaintiff

alleges no new facts that would demonstrate that any of the JACC Defendants were acting under

color of state law or why his claims should not be barred by Heck v. Humphrey. See Part

III.B.2.a.ii.(a), supra. Plaintiff also still fails to allege any specific facts (relying only on mere

conclusory allegations and suppositions) to show how Defendant Hoff and the JACC Defendants

"acted alone and or together (two or more in concert) to violate [his] rights." (Proposed Am.

Compl. [Docket No. 173], at 17, ¶ 71 (parenthetical in original)).

Counts II and III: Plaintiff alleges violations of the Minneapolis City Code[55] and the

Minnesota Human Rights Act against Defendant Hoff, Defendant McDonald, and the JACC

Defendants. (Proposed Am. Compl. [Docket No. 173], at 18-20, ¶¶ 76-85).

The Court lacks original subject matter jurisdiction over these claims, which arise solely

under Minnesota State law. Additionally, because the Court ultimately recommends dismissing

---

[54] See also Martin, 391 F.3d at 714 (noting that leniency granted to pro se litigants is "not boundless," and that "[p]ro se plaintiffs are treated to less stringent standards, but they are not automatically entitled to take every case to trial" (internal quotation omitted)); Leeds v. City of Muldraugh, 174 Fed. Appx. 251, 255 (6th Cir. 2006) (although a court must read a pro se complaint liberally, the rules do not require the court "to guess the nature of or create a litigant's claims"); cf. Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004) (when reading a pro se complaint, "the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework," but does not "assume facts that are not alleged").

[55] Presumably, Plaintiff brings his city code claim under MINNEAPOLIS, MINN., CODE § 139.40(m), which prohibits "any reprisal . . . because another person opposed a discriminatory act forbidden under this title."

all of Plaintiff's federal law claims, the Court sees no reason to exercise supplemental jurisdiction over these claims.

"The Court has broad discretion in deciding whether to continue hearing state claims following dismissal of federal claims."  Shimer v. Shingobee Island Water and Sewer Comm'n, No. 02-cv-953 (JRT/FLN), 2003 U.S. Dist. LEXIS 4210, at *26 (D. Minn. Mar. 18, 2003) (Tunheim, J.).  "In determining whether to exercise supplemental jurisdiction, courts consider factors such as judicial efficiency, convenience, and fairness to the litigants, but should 'exercise judicial restraint and avoid state law issues wherever possible.'"  Hylla v. Transp. Commc'n Int'l Union, No. 06-cv-4700 (JRT/RLE), 2007 U.S. Dist. LEXIS 75505, *11-12 (D. Minn. Sept. 28, 2007) (Tunheim, J.) (citing Condor Corp. v. City of St. Paul, 912 F.2d 215, 221 (8th Cir. 1990); and quoting Thomas v. Dickel, 213 F.3d 1023, 1026 (8th Cir. 2000)).  This Court recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's proposed amended state law claims.

Counts IV and V:  Plaintiff alleges that Defendant Hoff, Defendant McDonald, and the JACC Defendants retaliated against him in violation of 42 U.S.C. § 12203.  (Proposed Am. Compl. [Docket No. 173], at 20-21, ¶¶ 86-95).[56]

Plaintiff's proposed amended claims with regard to Defendant Hoff and the JACC Defendants are futile, as Plaintiff still has not plead any *specific facts* that would demonstrate that the actions he alleges were taken by Defendant Hoff and the JACC Defendants were, in fact, in retaliation for his ADA advocacy.

---

[56] As previously noted, although Plaintiff claims that Count IV "arises under Americans [with] Disabilities Act 42 U.S.C. § 12203," (Proposed Am. Compl. [Docket No. 173], at 20,  87), and that Count V "arises under Title V Americans [with] Disabilities Act," (Id. at 21, ¶ 92), those are merely different ways of referring to the same statute and, therefore, as a matter of law the claims are identical.  See fn.47, supra.

Count VI:  Plaintiff alleges "intentional interference with judicial process" against Defendants M.Browne, K.Brown, Hoff, Goodmundson, and McDonald.  (Proposed Am. Compl. [Docket No. 173], at 21-22, ¶¶ 96-100).

This proposed amended claim is futile, as Plaintiff makes no showing of how the facts that he alleges satisfy the elements of such a claim.  In fact, this Court is unaware of any authority—either pursuant to Federal law or to Minnesota State law—that would support Plaintiff's assertion that there *is* such a civil, private cause of action.[57]

Count VII:  Plaintiff alleges intentional interference with contract, a claim that mirrors Count II in his existing Complaint, but which names as defendants only Defenadnts Hoff, Goodmundson, and McDonald.  (Id. at 22, ¶¶ 101-05).

This proposed amended claim is futile.  The fundamental failure, as addressed above, of Plaintiff's previous iteration of this claim is his failure to demonstrate why his conditions of release should even be considered a "contract" for purposes of such a claim.  See Part III.B.2.b, supra.  This deficiency is not remedied by Plaintiff's Proposed Amended Complaint.

Count VIII:  Plaintiff alleges conspiracy to aid and abet false arrest, false imprisonment, and kidnapping against Defendants M.Brown, K.Browne, Hoff, Goodmundson, and McDonald. (Proposed Am. Compl. [Docket No. 173], at 22-23, ¶¶ 106-10).

---

[57] The Court's search of Federal and Minnesota State case law finds just one reference to "interference with judicial process," in Cook v. City of Minneapolis.  No. 06-cv-579 (DWF/AJB), 2007 U.S. Dist. LEXIS 39817 (D. Minn. May 31, 2007) (Frank, J.).  In that case the plaintiff was told at the time of his arrest that he was being arrested "for interference with judicial process." Id. at *11.  However, that brief mention does nothing to illuminate for the Court what Plaintiff's claim might be in the present case.
    The State of Illinois apparently recognizes a tort for "intentional interference with judicial process."  See Harris Trust & Sav. Bank v. Phillips, 154 Ill. App. 3d 574 (Ill. Ct. App. 1987).  However, it is not clear what the elements of such a tort might be, and, more important for purposes of the present Motion, Plaintiff has done nothing to demonstrate either (a) why *this court* should recognize such a cause of action, or (b) that he has sufficiently plead his claim.
    On occasion, the prohibition against "[o]bstructing justice [or] intimidating [a] party, witness or juror" contained in 42 U.S.C. § 1985 has been described as a prohibition against "interference with judicial process."  See, e.g., Bush v. Zeeland Bd. of Educ., 1997 U.S. Dist. LEXIS 3393, at *32 (W.D. Mich. Feb. 27, 1997).  However, Plaintiff's Proposed Amended Complaint does not offer any *specific facts* that would support a § 1985 claim.

This proposed amended claim is futile.  The factual underpinnings of this claim are no different from Plaintiff's § 1983 claims, and they remain equally deficient.  As a matter of law, under <u>Heck v. Humphrey</u>, Plaintiff cannot bring these claims unless the basis for his "arrest" (or "imprisonment" or "kidnapping") has been reversed, and he has plead no facts that would suggest that his arrest was reversed.  Even if he could overcome <u>Heck v. Humphrey</u>, Plaintiff pleads no *specific facts* that would support his claim of a conspiracy, and he continues to fail to demonstrate how his constitutional rights were violated.  <u>See</u> Part III.B.2.a.ii, <u>supra</u>.

<u>Counts IX and XIII</u>:  Plaintiff alleges a <u>Monell</u> claim against the JACC.  (Proposed Am. Compl. [Docket No. 173], at 23, ¶¶ 111-15; at 27, ¶¶ 130-34).

Plaintiff's proposed amended claims are futile, both as a matter of law and because he fails to plead facts that would support them.  His claims would fail as a matter of law because the JACC is a private, non-profit organization, (JACC Articles of Incorporation, Aff. Renz Ex. A [Docket No. 67-1]), which Plaintiff acknowledges.  (Proposed Am. Compl. [Docket No. 173], at 6, ¶ 7).  However, as previously noted, a <u>Monell</u> claim is a § 1983 claim *brought against a municipality* that has adopted some policy, custom or practice that allegedly caused a violation of the claimant's constitutional rights.  <u>See</u> <u>Davison v. City of Minneapolis, Minn.</u>, 490 F.3d 648, 659 (8th Cir. 2007) (city "may be held liable under section 1983 . . . if one of its customs or policies caused the violation of" the plaintiff's constitutional rights) (citing <u>Monell v. Dep't of Soc. Servs. of New York</u>, 436 U.S. 658, 690-91 (1978)).  To bring a <u>Monell</u> claim, "[t]he challenged action must have either been taken by [a] municipality or by a private person whose action may be fairly treated as that of the municipality itself."  <u>Reinhart v. City of Brookings</u>, 84 F.3d 1071, 1073 (8th Cir. 1996) (citing <u>Flagg Bros., Inc. v. Brooks</u>, 436 U.S. 149, 157 (1978)).

As previously noted, Plaintiff has failed to demonstrate why the JACC should be treated as a municipality.  See Part IV.B.1.a.ii, supra.

Even if Plaintiff had shown why the JACC should be treated as a municipality, his mere invocation of the words "policies" and "customs" is insufficient to plead a Monell claim where his Proposed Amended Complaint contains no factual allegations that would support that claim. See Milliman v. Stearns, No. 13-cv-136 (DWF/LIB), 2013 U.S. Dist. LEXIS 141440, at *34-35 n.24 (D. Minn. Aug. 12, 2013) (Brisbois, M.J.), adopted by 2013 U.S. Dist. LEXIS 138099 (D. Minn. Sept. 26, 2013).

Counts X, XI, and XII:  Plaintiff alleges Monell claims against Hennepin County and Hennepin County Community Corrections and Rehabilitation.  (Proposed Am. Compl. [Docket No. 173], at 24-27, ¶¶ 116-29).

These proposed amended claims are futile, because Plaintiff has failed to plead facts sufficient to support them.  Although in this case the named defendants are municipalities and/or municipal entities that are potentially subject to a Monell claim, he has alleged no *specific facts*, beyond his mere invocation of the words "policies" and "customs," that would tend to demonstrate the actual existence of any such custom, pattern, policy, or practice, the application of which operated to violate his constitutional rights.

Counts XIV and XV:  Plaintiff alleges a § 1983 claim for "failure to prevent constitutional violations" against (1) the JACC (Count XIV), and (2) Hennepin County and Hennepin County Community Corrections and Rehabilitation (Count XV).

These proposed amended claims are futile.  It is unclear how any of these claims are any different from Plaintiff's other existing § 1983 claims, which the Court already has determined should be dismissed.

Consequently, the Court recommends that Plaintiff's Motion to Amend Complaint,

[Docket No. 171], be **DENIED** with respect to all defendants <u>except</u> Defendant McDonald.[58]


## VII.   DEFENDANT SCHOOLER'S MOTION FOR RULE 11 SANCTIONS [Docket No. 122]

Defendant Schooler asks the Court for an order of sanctions against Plaintiff, pursuant to

Rule 11 of the Federal Rules.  (<u>See</u> Docket No. 122).

### A.  Standard of Review

Rule 11 of the Federal Rules of Civil Procedure requires that "[e]very pleading, written

motion, and other paper must be signed by at least one attorney of record in the attorney's

name—or by a party personally if the party is unrepresented."  Fed. R. Civ. P. 11(a).  The

purpose of this requirement is to

> certif[y] to the best of the person's knowledge, information, and belief, formed
> after an inquiry reasonable under the circumstances:
>   (1) it is not being presented for any improper purpose, such as to harass, cause
> unnecessary delay, or needlessly increase the cost of litigation;
>   (2) the claims, defenses, and other legal contentions are warranted by existing
> law or by a nonfrivolous argument for extending, modifying, or reversing existing
> law or for establishing new law;
>   (3) the factual contentions have evidentiary support or, if specifically so
> identified, will likely have evidentiary support after a reasonable opportunity for
> further investigation or discovery; and
>   (4) the denials of factual contentions are warranted on the evidence or, if
> specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Rule 11 also provides that "the court may impose an appropriate sanction on any . . .

party that violated the [Rule 11(b)] . . . ."  Fed. R. Civ. P. 11(c)(1).  The rule authorizes both

monetary and non-monetary sanctions.  Fed. R. Civ. P. 11(c)(4).  However, "[a] sanction

imposed under this rule must be limited to what suffices to deter repetition of the conduct or

---

[58] <u>See</u> fn.52, <u>supra</u>.

comparable conduct by others similarly situated."  Id.; see also Segura v. Fannie Mae, No. 13-cv-531 (SRN/JJK), 2013 U.S. Dist. LEXIS 175127, at *2 (D. Minn. Dec. 13, 2013) (Nelson, J.) ("deterrence is the primary purpose of Rule 11 sanctions").  "An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction."  Fed. R. Civ. P. 11(c)(6).

   **B.  Facts**

      This is at least the second lawsuit that Plaintiff has brought against Defendant Schooler, who was also named as a defendant in Rickmyer v. Hodson.  See Part II.A, supra.  In the present case, Defendant Schooler filed his Motion to Dismiss on July 1, 2013.  [Docket No. 64]. Subsequently, on July 9, 2013, he advised Plaintiff of his intention to file a motion for Rule 11 sanctions if Plaintiff did not voluntarily dismiss his claims against Defendant Schooler within 21 days.  (Letter to Pl., Aff. Wilhelm, Ex. 12 [Docket No. 125-12], at 2).  Attached to that letter was a copy of the Rule 11 motion that Defendant Schooler anticipated filing.  (Id. at 3-6).  In that motion, Defendant Schooler described the specific conduct that he believed constituted a Rule 11 violation.  In particular, he asserted that "[t]he claims or other legal contentions asserted against [Defendant] Schooler in Plaintiff's [Second Amended] Complaint are not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," Id. at 3 (citing Fed. R. Civ. P. 11(b)(2)), and that those claims "appear to be asserted for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Id. at 3-4 (citing Fed. R. Civ. P. 11(b)(1)).  Specifically, Defendant Schoolar asserted why he believed the Court lacked subject matter jurisdiction to hear Plaintiff's claims, Id. at 4-5, and stated that the conduct that formed the basis of Plaintiff's claims against him was not prohibited by their earlier Settlement Agreement.  Id. at 4.

Plaintiff did not voluntarily dismiss his claims against Defendant Schooler.

Consequently, on August 14, 2013—more than 21 days after he gave first gave notice to

Plaintiff—Defendant Schooler made his Motion for Rule 11 Sanctions.  [Docket No. 122].

### C.  Discussion

Initially, the Court notes that Defendant Schooler has adhered to Rule 11's "safe harbor"

requirements:

> A motion for sanctions must be made separately from any other motion and must
> describe the specific conduct that allegedly violates Rule 11(b).  The motion must
> be served under Rule 5, but it must not be filed or be presented to the court if the
> challenged paper, claim, defense, contention, or denial is withdrawn or
> appropriately corrected within 21 days after service or within another time the
> court sets.

Fed. R. Civ. P. 11(c)(2).  In the present case, Defendant Schooler met the first requirement by

making his Motion for Rule 11 Sanctions, [Docket No. 122], "separately from any other

motion," and by describing the specific conduct that he alleged violated Rule 11(b).  He met the

second requirement by waiting more than 21 days after serving his Motion on Plaintiff before

presenting the Motion to the Court.

Defendant Schooler argues that Plaintiff's current breach of contract claim, premised on

an alleged breach of their Settlement Agreement from an earlier, unrelated state court action, was

not "objectively reasonable."  (Def. Schooler's Mem. Supp. Rule 11 Mot. [Docket No. 124], at

9-11).  Additionally, he argues that monetary sanctions against Plaintiff would be ineffective,

and that limiting Plaintiff's access to the federal courts would be the only effective sanction.  (Id.

at 12-15).

The Court agrees with Defendant Schooler that Plaintiff's breach of contract claim was

not objectively reasonable.  The Court is not as concerned as Defendant Schooler, however, in

that the intricacies of subject matter jurisdiction may not be readily apparent to a *pro se* litigant.

However, Plaintiff made no substantial response to this Motion.  Although Plaintiff filed a responsive Memorandum, it does not in any way defend assertion of his breach of contract claim against Defendant Schooler.  (See Pl.'s Mem. Opp. Rule 11 Mot. [Docket No. 128]).  Rather, it (1) accuses Defendant Schooler of failing to disclose various developments in various related cases, (Id. at 1-3); (2) argues that the Motion was moot because Defendant Schooler was in default, (Id. at 3-4); and states that the Motion was "premature" because Defendant Schooler "knew I had requested this Court permission to file an amended complaint and the Court issued an Order permitting me to file a motion to amend the complaint."  (Id. at 4).

In fact, Plaintiff's conduct with regard to his attempts to amend his complaint is at least as troubling as his initial breach of contract claim lacking subject matter jurisdiction.  On August 23, 2013—a mere nine days after Defendant Schooler formally made his Motion for Rule 11 Sactions—Plaintiff filed his Proposed Third Amended Complaint, [Docket No. 138],[59] ***which does not contain a breach of contract claim against Defendant Schooler***.  Likewise, Plaintiff's current Proposed Amended Complaint ***does not contain a breach of contract claim against Defendant Schooler***.  (See Proposed Am. Compl. [Docket No. 173], at 4-31).  In other words, it appears that Defendant acknowledged that he did not have a legitimate breach of contract claim against Defendant Schooler—or, at least, that he was willing to withdraw that claim—yet he never voluntarily dismissed his claim.  Plaintiff now tries to shoehorn his existing factual allegations against Defendant Schooler into a new § 1983 claim by asserting (***without any factual support whatsoever***) that Defendant Schooler's "personal stalker" comment on May 16, 2012, was somehow part of a conspiracy "with [Defendant] Hoff and [Defendant] Goodmundson

---

[59] This is the Proposed Amended Complaint that was the subject of Plaintiff's previously withdrawn Motion to Amend Complaint.  [Docket No. 131].  Although the Proposed Third Amended Complaint was never accepted, Plaintiff refers to his current Proposed Amended Complaint as a Fourth Amended Complaint.  (See Proposed Am. Compl. [Docket No. 173], at 4).

to have me removed from my neighborhood and put behind bars for stalking on March 7, 2011."

(Id. at 12, ¶ 40).  However, this alleged conspiracy took shape based on Plaintiff's own pleadings

***more than a year before the "personal stalker" comment was allegedly made***.  Considering

Plaintiff's initial frivolous claim, his refusal to dismiss that claim, and his more recent assertion

of an equally frivolous claim, this Court is persuaded that Rule 11 sanctions would be

appropriate.

Selecting an appropriate sanction is more difficult.  As previously noted, a Rule 11

sanction must be no more than is necessary "to deter repetition of the conduct or comparable

conduct."  Fed. R. Civ. P. 11(c)(4).  Defendant Schooler, himself, suggests that monetary

sanctions would likely be ineffective as a deterrent:

> Financial sanctions alone will not work.  [Plaintiff] is *in forma pauperis* and likely
> judgment-proof.  The $20,000 attorneys' fees award that [Defendant] Michael
> Browne recently obtained against [Plaintiff] had no effect in stopping his
> misconduct.

(Def. Schooler's Mem. Supp. Rule 11 Mot. [Docket No. 124], at 13-14).  The Court agrees.

Additionally, the Court agrees with Defendant Schooler that it has the authority to limit

Plaintiff's access to the Federal courts, so long as Plaintiff is given notice of such limitation, and

is given an opportunity to oppose such limitation before it takes effect.  Ketchum v. Cruz, 961

F.2d 916, 921 (10th Cir. 1992) (citing Tripati v. Beaman, 878 F.2d 351, 354 (10th Cir. 1989)

(per curiam)); cf. Peck v. Hoff, 660 F.2d 371, 374 n.2 (8th Cir. 1981) (in prisoner case, affirming

"pre-filing review procedure" for plaintiff's IFP complaints).

However, despite the record set forth in Part II.A, supra, Plaintiff has not matched the

volume of frivolous litigation that has prompted other Federal courts to act.  See, e.g., In re.

McDonald, 489 U.S. 180 (1989) (limiting petitioner's ability to file IFP for extraordinary writs

after he made "73 separate filings with the Court, . . . [including] 4 appeals, 33 petitions for

certiorari, 19 petitions for extraordinary writs, 7 applications for stays and other injunctive relief,

and 10 petitions for rehearing" (footnotes excluded)); <u>Peck</u>, 660 F.2d 371 (affirming "pre-filing

review procedure" for plaintiff's IFP complaints after plaintiff filed 18 cases and had 23 more

ready to file); <u>Stephens v. Jensen-Carter</u>, Nos. 06-cv-693 and 06-cv-2327, 2007 U.S. Dist.

LEXIS 75115, at *2-3, *18-19 (D. Minn. Sept. 27, 2007) (Schiltz, J.) (barring debtors from

further filings related to their bankruptcies unless signed by an attorney or authorized by a judge

after a "seemingly endless flow of frivolous and abusive filings" over the course of nine years).[60]

Despite the extensive history of litigation between Plaintiff and certain of the Defendants, it does

not yet add up to the "seemingly endless flow of frivolous and abusive filings" in this Court that

prompted other Federal courts to act.

Even if the record supported some sort of limitation on Plaintiff's access to the Federal

courts in Minnesota, this Court is not persuaded that the harsh sanction requested by Defendant

Schooler is appropriate, either.  Defendant Schooler asks for entry of the following order:

> Peter Rickmyer (also known as Peter Stephenson) may not file any new cases in
> the United States District Court for the District of Minnesota unless: (i) an
> attorney authorized to practice law in Minnesota and admitted to practice in the
> United States District Court for the District of Minnesota has signed the
> Complaint; and (ii) the Chief Judge of the United States District for the District of
> Minnesota has approved.

(<u>Id.</u> at 14).  Initially, the Court notes that Defendant Schooler's proposed order would not merely

limit Plaintiff's ability to sue him, or even limit his ability to sue the various Defendants in the

present case, but would impose a blanket restriction on Plaintiff's access to the Federal courts for

any reason.

All of which presents the Court with a dilemma.

---

[60] Similarly, in <u>Schramek v. Jones</u>, 161 F.R.D. 119 (M.D. Fla. 1995), which is cited by Defendant Schooler, the
party subjected to such a sanction had "been a party to fifteen (15) lawsuits in the Tampa Division alone."   <u>Id.</u> at
122.

The Court is persuaded that Plaintiff's conduct warrants Rule 11 sanctions, and is further persuaded that monetary sanctions would likely be ineffective due to ultimately being potentially uncollectable.  Nevertheless, the Court is not persuaded that a blanket limitation on all of Plaintiff's further access to the Federal courts in Minnesota is appropriate at this time. Consequently, while this Court appreciates the seriousness of the motion and does not condone Plaintiff's conduct at issue, the Court declines to impose as sanctions in this matter Defendant Schooler's request for a blanket limitation on all of Plaintiff's future access to Federal court in Minnesota.  Accordingly, the only available sanction remains a monetary one on this record.

Therefore, the Court recommends that Defendant Schooler's Motion for Rule 11 sanctions, [Docket No. 122], be **GRANTED**, and that Defendant Schooler be granted an award of $5,000.00 (five thousand dollars and 00/100) to be paid by Plaintiff as a sanction for violation of Rule 11 in this case.


## VIII.   CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion to Appoint Counsel, [Docket No. 3], and his Amended Motion to Appoint Counsel, [Docket No. 110], are **DENIED**, for reasons stated on the record on September 3, 2013, by Magistrate Judge Rau, in accordance with fn.2, supra;


Additionally, based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED**:

2.  That Defendant Hoff's Motion to Dismiss, [Docket No. 19], be **GRANTED in part**

and **DENIED in part**, and that Plaintiff's claims (Counts I, II, and IV) against

Defendant Hoff be **DISMISSED with prejudice**, as set forth above;

3. That the JACC Defendants' Motion to Dismiss, [Docket No. 64], be **GRANTED**, and

   that Plaintiff's claims (Counts I and II) against the JACC Defendants be

   **DISMISSED with prejudice**, as set forth above;

4. That Defendant Schooler's Motion to Dismiss, [Docket No. 53], be **GRANTED**, and

   that Plaintiff's claim (Count III) against Defendant Schooler be **DISMISSED with**

   **prejudice**, as set forth above;

5. That Plaintiff's Motion to Amend Complaint, [Docket No. 171], be **DENIED** in its

   entirety, except as to Defendant McDonald, which motion thereof remains under

   advisement,[61] as set forth above; and

6. That Defendant Schooler's Motion for Rule 11 Sanctions, [Docket No. 122], be

   **GRANTED**, as set forth above.


Dated: January 7, 2014                          s/Leo I. Brisbois
                                                LEO I. BRISBOIS
                                                United States Magistrate Judge



**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation
by filing with the Clerk of Court, and serving all parties **by January 21, 2014**, a writing that
specifically identifies the portions of the Report to which objections are made and the bases for
each objection. A party may respond to the objections within fourteen days of service thereof.
Written submissions by any party shall comply with the applicable word limitations provided for

---

[61] With regard to Defendant McDonald, Plaintiff's Motion to Amend Complaint, [Docket No. 171], remains under
advisement pending the January 14, 2014, hearing on Defendant McDonald's Motion for Summary Judgment. See
fn.52, supra.

in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.