UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

_____

PETER RICKMYER,                                    No. 13-cv-559 (SRN/LIB)

        Plaintiff,


                                           **ORDER**

v.                                                                     **and**

                              **REPORT AND RECOMMENDATION**

MICHAEL (KIP) BROWNE; MEGAN
GOODMUNDSON; DAN ROTHER;
ROBERT HODSON; JOHN GEORGE
HUBBARD, II; DAVE HADDY; ANN
McCANDLESS; DAVID SCHOOLER; JOHN
WILLARD HOFF; WILLIAM McDONALD;
and JORDAN AREA COMMUNITY
COUNCIL, INC.,

        Defendants.

_____

      This matter came before the undersigned United States Magistrate Judge upon Defendant

McDonald's Motion for Summary Judgment, [Docket No. 155], and upon Plaintiff's Motion to

Amend Complaint, [Docket No. 171].[1]  The case has been referred to the undersigned Magistrate

Judge for a report and recommendation, (see Order of Reference [Docket No. 164]), pursuant to

28 U.S.C. § 636(b)(1) and Local Rule 72.1.  For reasons outlined below, the Court recommends

that Defendant McDonald's Motions for Summary Judgment, [Docket Nos. 155], be

**GRANTED**; and that Plaintiff's Motion to Amend Complaint, [Docket No. 171], be **DENIED**.

---

[1] Plaintiff's Motion to Amend Complaint, [Docket No. 171], was previously **DENIED**, except as it relates to
Defendant McDonald.  (See Mem. Op. & Order [Docket No. 196], at 20-22).

I.    **BACKGROUND**[2]

Peter Rickmyer[3] ("Plaintiff") initiated this lawsuit on or about March 11, 2013, naming as defendants John Willard Hoff ("Defendant Hoff"); David Schooler ("Defendant Schooler"); Plaintiff's parole officer, William McDonald ("Defendant McDonald"); and the Jordan Area Community Council, Inc. ("Defendant JACC") and several persons related to the JACC, including Michael (Kip) Browne ("Defendant Browne"), Megan Goodmundson ("Defendant Goodmundson"),[4] Dan Rother ("Defendant Rother"), Robert Hodson ("Defendant Hodson"), John George Hubbard II ("Defendant Hubbard"), Dave Haddy ("Defendant Haddy), and Ann McCandless ("Defendant McCandless") (collectively, the "JACC Defendants").  (See Compl. [Docket No. 1], at 1-3).

Plaintiff amended his Complaint on March 15, 2013, (see Am. Compl. [Docket No. 5]), and again on May 26, 2013, (see 2d Am. Compl. [Docket No. 7]), and his Second Amended Complaint[5] is the operative complaint at this time.

All of the Defendants except for Defendant McDonald moved to dismiss,[6] and pursuant to Judge Nelson's Memorandum Opinion and Order, [Docket No. 196], Plaintiff's claims against all of the Defendants except for Defendant McDonald were dismissed, leaving Defendant McDonald as the only Defendant remaining in the case.

---

[2] A detailed background of this case was set forth in this Court's previous Report and Recommendation, [Docket No. 189], and by the Hon. Susan Richard Nelson in her Memorandum Opinion and Order adopting the R&R, [Docket No. 196].

[3] Also known as Peter Richard Stephenson, Peter Richard Stevenson, Peter Richard Rickmyer.  See Minnesota Dep't of Corrections Level 3 Predatory Offender Information, Peter Richard Stephenson, http://www.doc.state.mn.us/level3/OffenderDetail.asp?OID=215933 (last viewed December 12, 2013).

[4] The parties variously spell Goodmundson differently throughout the record and pleadings.  The Court will use the spelling in the case caption, although it notes that Defendant herself spells her last name "Goodmunson."

[5] The Court observes that the page numbers applied by the CM/ECF at the top of Plaintiff's Second Amended Complaint do not match the page numbers that Plaintiff applied at the bottom of every page.  For example, the caption appears on Page 1 on the CM/ECF, but is marked as Page 2 at the bottom of the page.  The Court uses the CM/ECF page numbers throughout this Report and Recommendation.

[6] Def. Hoff Mot. Dismiss, [Docket No. 19]; JACC Defs.' Mot. Dismiss, [Docket No. 64]; Def. Schooler's Mot. Dismiss, [Docket No. 53].

In his Second Amended Complaint, Plaintiff asserts two claims against Defendant McDonald:

- In his Count I, Plaintiff alleges that Defendant McDonald (along with Defendant Hoff and the JACC Defendants) conspired and retaliated against him, infringing his rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution, in violation of the civil rights statutes codified at 42 U.S.C. §§ 1983, 1985, 1986, and in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12203.  (2d Am. Compl. [Docket No. 7], at 22-23); and

- In his Count II, Plaintiff brings an "intentional interference with contract" claim against Defendant McDonald, alleging that he (again, in conjunction with Defendant Hoff and the JACC Defendants) interfered with Plaintiff's "contract" with the Minnesota Department of Corrections.  (Id. at 24).

On May 30, 2013, Defendant McDonald filed and served his Answer, [Docket No. 11], and subsequently, on November 22, 2013, he made his Motion for Summary Judgment, [Docket No. 155], and filed his supporting materials, (Def.'s Mem. [Docket No. 158]; Def.'s Affs. [Docket Nos. 159-60]).  Plaintiff responded to the Motion for Summary Judgment on December 2, 2013.  (Pl.'s Resp. [Docket No. 166]).[7]  Defendant McDonald did not file a reply memorandum.

On December 13, 2013, Plaintiff made his Motion to Amend Complaint, [Docket No. 171], and filed his supporting Memorandum, [Docket No. 173].  Defendant McDonald filed his

---

[7] Plaintiff initially responded on November 25, 2013.  (Pl.'s Mem. Opp. Mot. Summ. J. [Docket No. 165]). However, on December 2, 2013, he withdrew that Memorandum in favor of his present Response.  (Request to Withdraw Memorandum [Docket No. 168]).

Response, [Docket No. 177], on December 20, 2013.[8]

      This Court heard oral argument on the Motions on January 14, 2014.  (Minute Entry [Docket No. 190]).


## II.    MOTION FOR SUMMARY JUDGMENT [Docket No. 155]

### A. Facts

      Plaintiff has multiple convictions in Minnesota and Oklahoma state courts for sexual contact with young boys.  See In re Rickmyer, 519 N.W. 2d 188, 189 (Minn. 1994).  Most recently, on November 30, 2004, he was convicted of fourth degree criminal sexual conduct and sentenced to 36 months incarceration and 10 years on conditional release.  (Aff. McDonald, Ex. 1 [Docket No. 159-1]).  In the present case, Plaintiff's criminal history is relevant because at least some of his claims arise from his belief that Defendant McDonald conspired with other Defendants to have his parole revoked.

      Additionally, for purposes of the pending Motions, the Court notes the following facts:

      Plaintiff was released from incarceration on September 25, 2006, and placed on Intensive Supervised Release ("ISR").  (Aff. McDonald [Docket No. 159], at ¶ 4).  Upon his release, Plaintiff initially was assigned to be supervised by ISR Agent Bobbie Chevalier-Jones ("Ms. Chevalier-Jones").  (Aff. McDonald, Ex. 2 [Docket No. 159-1], at 3).  One of the standard conditions of his release was that he "at all times follow the instructions of the" parole officer. (Id. at 5, ¶ 4).  Additionally, the special conditions of his release included a requirement that he "spend at least 40 hours a week performing approved work, undertaking constructive activity

---

[8] Plaintiff subsequently filed a "Reply Affidavit," [Docket No. 185], in support of his Motion to Amend Complaint, despite having been advised by the Court that reply memoranda concerning nondispositive motions are allowed only with the Court's permission.  L.R. 7.1(b)(3).  Notwithstanding Plaintiff's noncompliance with the Local Rules, the Court nonetheless considered his Reply Affidavit in deciding his Motion to Amend Complaint.

designed to obtain employment, or attending a treatment or education program as directed by" his parole officer, (Id. at 3, ¶ 12); and that he "not own or operate a computer that has any form of modem that allows for Internet capabilities, or access the Internet through any technology or third party, . . . without documented approval of the agent/designee."  (Id. at 3, ¶ 18).

Plaintiff currently lives in Hennepin County, Minnesota, and is an eligible member of the Jordan Area Community Council ("JACC").  (2d Am. Compl. [Docket No. 7], at 2, ¶ 1).

Plaintiff attended JACC Board and Finance Committee meetings between February 2009 and April 2009, where he was outspoken about certain issues, including his belief that JACC meetings should be held in a different location.  (Id. at 5, ¶¶ 25-26; at 18; 120).  Plaintiff generally alleges that the JACC Defendants at this time "became interested in running me out of my neighborhood and ultimately depriving me of my liberty," and began a campaign of retaliation against him.  (Id. at 4, ¶ 19; at 5-6, ¶ 27; at 21-22, ¶ 151).  Plaintiff asserts that Defendant JACC "authorized [Defendant] Hubbard and [Defendant] Haddy to come to my house in May of 2009 knowing they were not welcomed and making false allegations."  (Id. at 4, ¶ 17). Subsequently, on July 22, 2009, Plaintiff alleges that Defendant Browne's wife contacted Plaintiff's parole officer to obtain a copy of Plaintiff's conditions of release.  (Id. at 4-5, ¶ 20). The following day, July 23, 2009, Plaintiff was arrested for parole violations.  (Id. at 5, ¶ 21).

On August 6, 2009, the Minnesota Department of Corrections ("Corrections") restructured Plaintiff's conditions of release as a result of his admitting to owning or operating a computer with Internet capabilities in violation of his conditions of release.  (Aff. McDonald, Ex. 3 [Docket No. 159-1], at 6-7).[9]

---

[9] At some time between his initial release and the August 2009 restructuring, Defendant McDonald replaced Ms. Chevalier-Jones as Plaintiff's parole officer.  The precise date of this change does not appear in the record. However, Plaintiff asserts that Defendants Hoff and Browne sought the assistance of Ms. Chevalier-Jones in

In February 2010, Plaintiff sued Defendant Hoff, several of the JACC Defendants, and certain City of Minneapolis employees, alleging defamation, discrimination, and infringement of his rights of free speech and liberty. Rickmyer v. Hodson, No. 27-CV-10-2278 (Hennepin Cty. Minn.) (hereinafter, "Rickmyer v. Hodson"). Subsequently, on April 1, 2010, Plaintiff's conditions of release were again restructured after he admitted that he was not spending the requisite 40 hours per week in work, treatment, or other productive activity, and that he had not sought to meet this requirement. (Aff. McDonald, Ex. 4 [Docket No. 159-1], at 8). Meanwhile, the state court[10] in Rickmyer v. Hodson dismissed Plaintiff's claims against Defendant Hoff, the JACC Defendants and the City of Minneapolis Defendants. Rickmyer v. Hodson, 2010 Minn. Dist. LEXIS 30, at *11-12 (Hennepin Cty., Minn. May 17, 2010). Additionally, the state court labeled Plaintiff a "frivolous litigant" and ordered that "Plaintiff may not file any new cases unless an attorney licensed to practice law in Minnesota has signed the complaint and the Chief Judge or the Presiding Judge of Civil has approved." (Id. at *2).

In the present case, Plaintiff generally alleges that the JACC Defendants, in a conspiracy with Defendant McDonald, committed fraud in Rickmyer v. Hodson. (2d Am. Compl. [Docket No. 7], at 3, ¶ 11; at 5, ¶¶ 22-24). Although Plaintiff does not specify the nature of this "fraud," he states that Defendant Browne somehow "prohibited me from amending [a pleading in Rickmyer v. Hodson] to ensure I would lose [the] summary judgment motion on April 20, 2010, which resulted in [the] May 17, 2010 order." (Id. at 10, ¶ 48; at 20, ¶ 138). Plaintiff also alleges that, while he was working on an appeal of the Order that declared him to be a frivolous litigant, Defendant Hoff "on behalf of the JACC group harassed and stalked" Plaintiff at the public law library and used an unnamed person "to gather drafts from tables and wastebaskets . . . allowing

---

retaliating against him, and that when she refused to do so, they conspired to "bully agent Jones off my case." (2d Am. Compl. [Docket No. 7]) at 9, ¶¶ 40-42).

[10] The Hon. Robert A. Blaeser presiding.

Hoff to glean that I was working on an appeal." Id. at 12, ¶¶ 67-68). Plaintiff states that he "was forced to abandon [his] appeal because there was no way / place I could work on it." (Id. at 13, ¶ 70).

Plaintiff subsequently filed a complaint against the JACC with the Minnesota Department of Civil Rights in June 2010,[11] which he alleges set off a new round of blog posts, conspiratorial communications and retaliation between various JACC Defendants, Defendant Hoff, and Defendant McDonald, which continued up until he filed his Second Amended Complaint. (Id. at 13-18, ¶¶ 71-104 and ¶¶ 108-11; at 19, ¶ 130). On July 29, 2010, Defendant McDonald met with Plaintiff to discuss his transfer from ISR to Enhanced Sex Offender ("ESO") supervision, and, in light of Judge Blaeser's Order in Rickmyer v. Hodson, Defendant McDonald instructed Plaintiff to advise him if he was working on any legal matters and of the name of the attorney that would be signing for him. (Aff. McDonald [Docket No. 159], at ¶ 8). Defendant McDonald discussed this instruction with Plaintiff again on November 4, 2010, and on February 16, 2011, at which time Plaintiff represented that he was not working on any legal matters. (Id.). However, Defendant McDonald learned that on March 2, 2011, Plaintiff had hired a process server to serve Defendant Hoff with a summons dated February 24, 2011; and that on March 7, 2011, Plaintiff had subsequently personally served additional legal documents on Defendant Hoff at the Hennepin County Government Center. (Id. at ¶ 9). Meanwhile, Plaintiff alleges that Defendant McDonald had an *ex parte* communication on March 3, 2011, with the judge in Rickmyer v. Hodson. (2d Am. Compl. [Docket No. 7], at 3-4, ¶ 13; at 17, ¶¶ 105-107).

Plaintiff was arrested on March 9, 2011, and maintains that he has been "in custody

---

[11] Plaintiff alleges that as a result of this complaint, the City of Minneapolis instructed the JACC to hold its meetings in a location that was handicap-accessible. (2d Am. Compl. [Docket No. 19], at 18, ¶ 119; see also Pl.'s Exs. [Docket No. 7-2], at 1-5). Although he acknowledges that, since February 2012, JACC meetings have been held in a location that meets Americans with Disabilities Act standards (the "ADA"), Plaintiff nonetheless alleges that "JACC is continuing to discriminate towards persons with disabilities by violating ADA." (Id. at 19, ¶¶ 121, 124).

(incarcerated, house arrest and or curfew)" since that date. (Id. at 18, ¶ 114 (parenthetical in original)). Subsequently, on March 17, 2011, Defendant McDonald filed a report alleging that Plaintiff had violated the conditions of his release by, *inter alia*, preparing and filing legal papers in violation both of Judge Blaeser's Order and of Defendant McDonald's instruction. (Aff. McDonald, Ex. 5 [Docket No. 159-1], at 9-12).

On March 24, 2011, Corrections held a revocation hearing, at which Plaintiff was represented by counsel. (Aff. McDonald, Ex. 6 [Docket No. 159-1], at 13-17). Relevant to the present case, the Hearing Officer found: (1) that the requirement that Plaintiff advise his parole officer of legal work he was engaged in was reasonable; (2) that Plaintiff did not deny serving legal documents on Defendant Hoff, and that this "constitute[d] a deliberate failure to comply with this directive." (Id. at 14). Consequently, the Hearing Officer ordered Plaintiff's release revoked, and assigned 90 days of incarceration. (Id. at 13). Four days later, on March 28, 2011, Plaintiff appealed his revocation. (Aff. Bowman, Ex. 2 [Docket No. 160-2]). That administrative appeal was denied. (Aff. Bowman [Docket No. 160], at ¶ 3).

Subsequently, Plaintiff filed two petitions for habeas corpus related to the revocation of his conditional release:

- Rickmyer v. Roy, No. 27-CV-11-11012 (Hennepin Cty., Minn.). By this action, Plaintiff petitioned for a writ of habeas corpus. The state court[12] denied without prejudice Plaintiff's request for habeas corpus on May 20, 2011, (see Rickmyer v. Roy Order, *slip op.*, May 20, 2011, in Decl. Renz Ex. B [Docket No. 67-2]);[13] and

---

[12] The Hon. Susan N. Burke presiding.

[13] In Rickmyer v. Roy, Plaintiff also sought declaratory and injunctive relief and money damages against various parties, including Defendant McDonald. He also, at one point, sought to remove the case to the Federal Court. (See Wells Fargo v. Clark, No. 12-cv-2621 (ADM/JJK) (D. Minn.), Notice of Removal Ex. 2 [Docket No. 1-2], at 81-87).

- <u>Stephenson v. Roy</u>, No. 02-CV-11-3668 (Anoka Cty., Minn.).[14]  This was a second petition for a writ of habeas corpus, brought on the same underlying facts and after the habeas corpus petition in <u>Rickmyer v. Roy</u>, <u>supra</u>, was denied.  The state court ultimately denied this second petition for habeas corpus, as well.  (<u>See</u> <u>Stephenson v. Roy</u> Order Denying Pet. Writ of Habeas Corpus and Mem., *slip op.*, Aug. 8, 2011, <u>in Wells Fargo v. Clark</u>, Notice of Removal Ex. 2 [Docket No. 1-2], at 65-79).  Plaintiff appealed, and the Minnesota Court of Appeals affirmed the district court's order denying his petition.  <u>Stephenson v. Roy</u>, No. A11-1797, *slip op.*, (Minn. Ct. App. May 9, 2012).

**B.  Standard of Review**

Summary judgment is appropriate when the evidence demonstrates that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); <u>Smutka v. City of Hutchinson</u>, 451 F.3d 522, 526 (8th Cir. 2006).  A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party bears the burden of bringing forward sufficient admissible evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The evidence

---

The Hon. Ann D. Montgomery Ordered the case remanded to the Minnesota state court.  <u>Wells Fargo v. Clark</u>, No. 12-cv-2521, Order [Docket No. 30], *slip op.*, (D. Minn. Jan. 11, 2013).  Subsequently, the Minnesota state court, the Hon. Philip D. Bush presiding, dismissed the case with prejudice, but noted that "for purposes of any federal court action, this dismissal does not operate as an adjudication on the merits."  (Decl. Godfread Ex. D [Docket No. 22-4]).  Plaintiff's appeal was denied on procedural grounds.  <u>Rickmyer v. Roy</u>, No. A13-1207, *slip op.* (Minn. Ct. App. Aug. 27, 2013).  His petition for review by the Minnesota Supreme Court was denied.  <u>Rickmyer v. Roy</u>, No. A13-1207, *slip op.*, (Minn. Oct. 23, 2013).

[14] As noted in fn.3, <u>supra</u>, "Peter Richard Stephenson" is one of Plaintiff's aliases.

must be viewed in the light most favorable to the nonmoving party, and the nonmoving party

must be given the benefit of all reasonable inferences to be drawn from the underlying facts in

the record.  Mirax Chem Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569

(8th Cir. 1991).  However, the nonmoving party may not rest on mere allegations or denials in its

pleadings, but must set forth specific admissible evidence-based facts showing the existence of a

genuine issue.  Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).  The movant is

entitled to summary judgment where the nonmoving party has failed "to establish the existence

of an element essential to that party's case, and on which the party will bear the burden of proof

at trial."  Celotex, 477 U.S. at 322.  No genuine issue of material fact exists in such a case

because "a complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial."  Id. at 323.

## C.  Discussion

### 1.  Plaintiff's Count I

#### a.  Plaintiff's § 1983 claim

Plaintiff's § 1983 claims against Defendant McDonald arise out of actions Defendant

McDonald took in his quasi-judicial rule in his official capacity as a probation officer assigned to

Plaintiff.  Accordingly, Defendant McDonald is entitled to absolute judicial immunity, thus

barring Plaintiff's § 1983 claim against him.  Additionally, even if Defendant McDonald were

not entitled to such immunity, Plaintiff's § 1983 claims against Defendant McDonald still would

be barred by the doctrine outlined by the U.S. Supreme Court in Heck v. Humphrey.  512 U.S.

477 (1994).[15]

---

[15] Defendant McDonald also argues that Plaintiff's claim fails because he is entitled to qualified immunity from
claims against him in his individual capacity.  However, because the Court finds that Defendant McDonald is
entitled to absolute immunity, and further finds in the alternative that Plaintiff's claims are barred by the doctrine set
forth in Heck v. Humphrey, the Court need not reach this defense.

### i.   Defendant McDonald is entitled to judicial immunity.

"It is well settled, under both federal and state law, that judges are completely immune from civil lawsuits based on claims of misconduct during the performance of their judicial functions."  Nazario v. Quaintance, No. 12-cv-554 (JRT/AJB) 2012 U.S. Dist. LEXIS 119738, at *18 (D. Minn. Aug. 3, 2012) (Boylan, M.J.),[16] adopted by 2012 U.S. Dist. LEXIS 118515 (D. Minn. Aug. 22, 2012); see also Pierson v. Ray, 386 U.S. 547, 553-54 (1967).  The U.S. Supreme Court has extended this doctrine to officials whose duties are "functionally comparable" to those of judges.  Butz v. Economou, 438 U.S. 478, 513 (1978).  The Eighth Circuit has held that a probation officer is entitled to absolute immunity when his acts giving rise to a plaintiff's claims are "closely connected" to the judicial decision maker, such as making recommendations directly to the judicial officer.  Figg v. Russell, 433 F.3d 593, 599-600 (8th Cir. 2006); Anton v. Getty, 75 F.3d 393, 396 (8th Cir. 1996).[17]  In Jenson v. Jorgenson, 2005 U.S. Dist. LEXIS 48095 (D.S.D. Sept. 29, 2005), the U.S. District Court for the District of South Dakota extended that principle to a parole officer's report that a parolee was in violation of his parole agreement and recommendation that the parolee's parole be revoked, concluding that:

> The purpose of these actions was to provide assistance, information and recommendations to the Parole Board members in their decision-making process regarding revocation of Jensen's parole or suspended sentence.  There is no allegation or evidence that [the parole officer] harbored any ill-will toward [the parolee] or had any other non-adjudicatory reason to make the recommendations that he did.  As in Anton, these specific actions of defendants [parole officer] were adjudicative in nature.  Accordingly, [the parole officer] is entitled to

---

[16] Citing Pierson v. Ray, 386 U.S. 547, 553-54 (1967); Stump v. Sparkman, 435 U.S. 349, 355-57 (1978); Mireles v. Waco, 502 U.S. 9, 11 (1991); Liles v. Reagan, 804 F.2d 493, 495 (8th Cir. 1986).  See also Hoppe v. Klapperich, 224 Minn. 224, 234, 28 N.W.2d 780 (1947) ("'it is unquestionable, and has been from the earliest days of the common law, that a judicial officer cannot be called to account in a civil action for [ ] determinations and acts in [an] judicial capacity, however erroneous or by whatever motives prompted'") (quoting Stewart v. Case, 53 Minn. 62, 66, 54 N.W. 938 (1893)).

[17] Likewise, this District has held that, in making a presentence investigation report, "a probation officer 'serves as the court's eyes and ears and must exercise discretion in conducting his investigation and making his recommendations, without fear of subsequent civil liability.'"  Weseman v. Meeker County, 659 F. Supp. 1571, 1577-78 (D. Minn. 1987) (Rosenbaum, J.) (quoting Crosby-Bey v. Jansson, 586 F. Supp. 96, 99 (D.D.C. 1984)).

absolute immunity for his actions in relation to the revocation of [parolee]'s suspended sentence.

Id. at *23-24. Accordingly, in the present case, Defendant McDonald is entitled to absolute immunity for his acts of reporting Plaintiff's violations of his conditions of release and recommending the revocation of his release.

> ### ii. Even if Defendant McDonald is not entitled to absolute quasi-judicial immunity, the Heck v. Humphrey doctrine bars Plaintiff's § 1983 claims against him.

In Heck v. Humphrey, 512 U.S. 477 (1994), the U.S. Supreme Court addressed the question of whether a state prisoner could challenge the constitutionality of his conviction in a suit for damages brought pursuant to 42 U.S.C. § 1983. The Supreme Court held that:

> [I]n order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486-87.

In his Second Amended Complaint, it is evident that the harms that he allegedly suffered, but it appears that the harm Plaintiff alleges is that his parole was revoked. (See Hr'g Tr. [Docket No. 187], at 21 ("They worked with Will McDonald to violate my parole, have me put in jail."). Additionally, in what appears to be a response to Defendant McDonald's Heck v. Humphrey defense, Plaintiff notes that he "has not been charged or convicted of any crime" since at least January 2007. (Pl.'s Mem. Opp. Mot. Summ. J. [Docket No. 166], at 2). However, courts have routinely applied the Heck v. Humphrey doctrine to parole revocation proceedings. See, e.g., Spencer v. Kemna, 523 U.S. 1, 17 (1998) (discussing claim related to parole revocation in the context of Heck v. Humphrey); Williams v. Consovoy, 453 F.3d 173, 177 (3d Cir. 2006)

(applying <u>Heck v. Humphrey</u> to claim arising from parole revocation); <u>Knowlin v. Thompson</u>, 207 F.3d 907, 909 (7th Cir. 1999) (same); <u>White v. Gittens</u>, 121 F.3d 803, 807 (1st Cir. 1997) (same); <u>Crow v. Penry</u>, 102 F.3d 1086, 1087 (10th Cir. 1996) (same); <u>Littles v. Board of Pardons & Paroles Div.</u>, 68 F.3d 122, 123 (5th Cir. 1995) (same); <u>Moreno v. California</u>, 25 F. Supp. 2d 1060, 1062 (N.D. Cal. 1998) (same).

Plaintiff has presented no evidence that the sentencing consequences he suffered because of the reports by Defendant McDonald have been revoked, expunged or otherwise called into question as required by <u>Heck v. Humphrey</u>.  Moreover, the Minnesota state courts twice denied his habeas corpus petitions related to the revocation of his conditional release in <u>Rickmyer v. Roy</u> and <u>Stephenson v. Roy</u>, <u>supra</u>.

Consequently, even if Defendant McDonald were not entitled to absolute judicial immunity, he still would be entitled to summary judgment because Plaintiff's § 1983 claim against him is barred by <u>Heck v. Humphrey</u>.  <u>See</u> <u>Entzi v. Redmann</u>, 485 F.3d 998, 1003 (8th Cir. 2007) (affirming district court's grant of summary judgment, in part because the plaintiff's claims were barred by <u>Heck v. Humphrey</u>).

### b.  Plaintiff's §§ 1985, 1986, and 1988 claims[18]

Plaintiff's claims against Defendant McDonald under 42 U.S.C. § 1985,[19] § 1986,[20] and § 1988[21] fail as a matter of law, because Plaintiff has plead no facts whatsoever to support such

---

[18] Because these claims also arise out of Defendant McDonald's official actions as Plaintiff's probation officer, Plaintiff has not made any showing as to why Defendant McDonald should not be entitled to absolute immunity as discussed in Part II.C.1.a.i, <u>supra</u>.  Additionally, because these claims too are related to the revocation of Plaintiff's conditional release, and Plaintiff has not demonstrated that the revocation of his conditional release was itself revoked, expunged, or otherwise called into question, these claims also are barred by the doctrine set forth in <u>Heck v. Humphrey</u>, as discussed in Part II.C.1.a.ii, <u>supra</u>.  However, in the interest of completeness, the Court addresses the further reasons that Defendant McDonald has set forth as to why he is entitled to summary judgment on these claims.

[19] Section 1985 makes it illegal (1) to prevent a person from accepting, holding, or discharging the duties of "any office, trust, or place of confidence under the United States," including by threats or intimidation; (2) to obstruct justice or intimidate a party, witness, or juror; and (3) to intimidate voters or "go in disguise on the highway or on

claims.  Plaintiff appears to concede this point, as none of these statutes is mentioned in his

Proposed Fourth Amended Complaint.[22]  (See Proposed 4th Am. Compl. [Docket No. 173]).

Accordingly, Defendant McDonald is entitled to summary judgment with regard to any claims

brought pursuant to 42 U.S.C. §§ 1985, 1986, or 1988.

### c.  Plaintiff's ADA § 12203 claim[23]

Defendant McDonald also is entitled to summary judgment with regard to Plaintiff's

ADA retaliation claim.

The ADA provides that: "It shall be unlawful to coerce, intimidate, threaten, or interfere

with any individual . . . on account of his or her having aided or encouraged any other individual

in the exercise or enjoyment of, any right granted or protected by this chapter."  42 U.S.C. §

12203(b).  Plaintiff only generally alleges that Defendant McDonald engaged in such retaliation.

To establish a retaliation claim under § 12203, "a plaintiff must demonstrate '(1) that he

engaged in a statutorily protected activity, (2) that an adverse action was taken against him, and

(3) a causal connection between the adverse action and the protected activity.'"  Mershon v. St.

Louis Univ., 442 F.3d 1069, 1074 (8th Cir. 2006) (quoting Amir v. St. Louis Univ., 184 F.3d

1017, 1025 (8th Cir. 1999)).

---

the premises of another, for the purpose of depriving . . . any person" of his or her civil rights.  See 42 U.S.C. §
1985.

[20] Section 1986 establishes liability for failure to prevent acts described in § 1985.  See 42 U.S.C. § 1986.

[21] Section 1988 does not create an independent cause of action, but rather, it permits recovery of attorney's fees and
expert fees in civil rights cases.

[22] Plaintiff previously submitted, and then withdraw, a Proposed Third Amended Complaint.  See fn.26, infra.

[23] Because this claim also arises out of Defendant McDonald's official actions as Plaintiff's probation officer,
Plaintiff has not made any showing as to why Defendant McDonald should not be entitled to absolute immunity as
discussed in Part II.C.1.a.i, supra.  Additionally, because this claim too is related to the revocation of Plaintiff's
conditional release, and Plaintiff has not demonstrated that the revocation of his conditional release was itself
revoked, expunged, or otherwise called into question, this claim also is barred by the doctrine set forth in Heck v.
Humphrey, as discussed in Part II.C.1.a.ii, supra.  However, in the interest of completeness, the Court addresses the
further reasons that Defendant McDonald has set forth as to why he is entitled to summary judgment on this claim.

However, in the present case, Plaintiff offers no specific factual support for his allegation of retaliation, i.e., no admissible evidence to show that any action taken by Defendant McDonald was either an adverse action against Plaintiff or was connected to Plaintiff's ADA advocacy. Instead, there is ample evidence in the record—including Plaintiff's own admissions in various proceedings related to the revocation of his conditions of release—that Defendant McDonald's actions in performing his duties as a probation officer arose from Plaintiff's own failures to abide by his conditions of release.  Consequently, Defendant McDonald is entitled to summary judgment on Plaintiff's § 12203 claim against him.

## 2.  Plaintiff's Count II[24]

Plaintiff alleges that he had "[a] valid contract" with the Minnesota Department of Corrections, and that Defendant McDonald intentionally interfered with that contract, resulting in Plaintiff's being placed "in-custody (incarceration, house arrest, and or curfew)."  (2d Am. Compl. [Docket No. 7], at 24, Count II caption and ¶ 160 (parenthetical in original)).

"To successfully state a claim of intentional interference with contract, a plaintiff must allege facts supporting the following elements: '(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages.'"  Magee v. Trs. of the Hamline Univ., No. 11-cv-949 (JRT/ABJ), 2012 U.S. Dist. LEXIS 187590, at *20 (D. Minn. Oct. 15, 2012) (Boylan, C.M.J.) (quoting E-Shops Corp. v. U.S. Bank Nat. Ass'n, 795 F. Supp. 2d 874, 878 (D. Minn. 2011), aff'd, 678 F.3d 659 (8th Cir. 2012)), adopted by 2013 U.S. Dist. LEXIS 45222 (D. Minn. Mar. 29, 2013)

---

[24] Because this claim also arises out of Defendant McDonald's official actions as Plaintiff's probation officer, Plaintiff has not made any showing as to why Defendant McDonald should not be entitled to absolute immunity as discussed in Part II.C.1.a.i, supra.  Additionally, because this claim too is related to the revocation of Plaintiff's conditional release, and Plaintiff has not demonstrated that the revocation of his conditional release was itself revoked, expunged, or otherwise called into question, this claim also is barred by the doctrine set forth in Heck v. Humphrey, as discussed in Part II.C.1.a.ii, supra.  However, in the interest of completeness, the Court addresses the further reasons that Defendant McDonald has set forth as to why he is entitled to summary judgment on this claim.

(Tunheim, J.); see also Furlev Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc., 325

N.W.2d 20, 25 (Minn. 1982).

      In the present case, Plaintiff has failed to demonstrate even the first essential element: the

existence of a contract.  It appears from his Second Amended Complaint that the so-called

"contract" between himself and the Minnesota Department of Corrections to which Plaintiff

refers is actually his probation or other conditions of release.  Plaintiff offers no legal authority,

and this Court can find none, suggesting that his conditions of release—which are set by the

Department of Corrections, with no consideration provided by Plaintiff—constitute a cognizable

contract for purposes of the state law tort claim he attempts to assert in Count II.

      Because Plaintiff cannot demonstrate even the existence of a contract, his claim must fail.

See Sip-Top, Inc. v. Ekco Group, 86 F.3d 827, 832 (8th Cir. 1996) (to prevail on claim of

tortious interference with contract, "[u]nder Minnesota law [the plaintiff] must prove     . . . that a

contract existed").[25]  Consequently, Defendant McDonald is entitled to summary judgment with

regard to Plaintiff's Count II.

### D.  Plaintiff's Additional Arguments

      Plaintiff also makes two general objections to Defendant McDonald's Motion for

Summary Judgment: (1) that Defendant McDonald should not prevail because of the doctrine of

"unclean hands," (Pl.'s Resp. [Docket No. 166], at 2); and (2) that the Court should deny the

Motion in order to more fully develop the record, (Id. at 10).  This Court is not persuaded by

either of these objections.

---

[25] Because Plaintiff's claim fails to meet even the first element, the Court need not consider the other four elements. However, with regard to the third element, intentional procurement of the breach of the contract, the Court notes that the record with regard to the revocation of Plaintiff's release demonstrates that it was Plaintiff who—on multiple occasions, and often by his own admission—failed to perform the conditions of his release as required.

1.   **Unclean Hands**

"Unclean hands is an equitable defense which prevents a party from maintaining a suit in equity."  EEOC v. Hibbing Taconite Co., 266 F.R.D. 260, 269 (D. Minn. 2009) (Erickson, C.M.J.) (citing Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814-15 (1945)("[Unclean hands] is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant," and thus, "while 'equity does not demand that its suitors shall have led blameless lives' as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue" [citations omitted]).).

Presumably, although it is never expressly stated, Plaintiff's "unclean hands" argument arises from his claim that Defendant McDonald allegedly conspired with other Defendants to revoke his conditional release, and that Defendant McDonald held an *ex parte* meeting with the judge in Rickmyer v. Hodson, supra.  Even assuming, if only for the sake of argument, that Plaintiff's "unclean hands" argument could possibly be proper in the present case, the argument fails because Plaintiff has not plead it sufficiently.  To sufficiently plead unclean hands against Defendant McDonald, Plaintiff must plead (1) that Defendant McDonald "acted in bad faith, or inequitably" in his dealings with Plaintiff, and (2) that said bad faith or inequity was in regards to the matter in the present case, or that it prejudiced Plaintiff in the present case.  Hibbing Taconite, 266 F.R.D. at 269 (in context of motion to dismiss).  As demonstrated supra, although Plaintiff alleges that Defendant McDonald acted improperly with regard to the revocation of his conditional release, the facts in the present record actually demonstrate that Plaintiff's

conditional release was properly revoked after Plaintiff committed—and admitted to—various violations of his conditions of release.

### 2.  Development of the Record

Plaintiff offers no specific argument as to why he believes the present record is not sufficiently developed in order to decide the Motion for Summary Judgment: e.g., Plaintiff neither disputes any of the facts set forth by Defendant McDonald in his and his attorney's Affidavits and attached Exhibits, nor does he identify any fact or set of facts that he might yet learn through any additional discovery.  Therefore, Plaintiff has given the Court no reason not to consider and recommend granting the pending Motion for Summary Judgment.

### E.  Summary

Because Plaintiff's claims arise out of Defendant McDonald's actions in his official capacity as Plaintiff's probation officer, Defendant McDonald is entitled to absolute judicial immunity;  and even if he were not entitled to absolute immunity, Plaintiff's claims are barred by the doctrine set forth in Heck v. Humphrey.  Additionally, Plaintiff has set forth no admissible evidence in support of any of his 42 U.S.C. §§ 1985, 1986, or 1988 claims.  Furthermore, Plaintiff's Count I alleging a 42 U.S.C. § 12203 retaliation claim fails because the record demonstrates that Defendant McDonald's actions were not retaliation against protected disability advocacy activity, but rather, arose from Plaintiff's violations of his conditions of release. Finally, with regard to Plaintiff's Count II intentional interference with contract claim, Plaintiff has utterly failed to provide any evidence from which the Court could conclude that there was a contract in the first instance.

For these reasons, this Court recommends that Defendant McDonald's Motion for Summary Judgment, [Docket No. 155], be **GRANTED** in its entirety.

III.    **PLAINTIFF'S MOTION TO AMEND COMPLAINT [Docket No. 171]**

   A. **Facts**

On December 13, 2013, Plaintiff made a renewed Motion to Amend Complaint.  [Docket No. 171].[26]  That Motion was denied with regard to Defendant Hoff, the JACC Defendants, and the new defendants that his Proposed Fourth Amended Complaint[27] sought to add.  (Mem. Op. & Order [Docket No. 196], at 20-22).  Thus, only the proposed amendments as they relate to Defendant McDonald remain pending before the Court.

With regard to Defendant McDonald, Plaintiff does not specifically state why he seeks to amend his complaint at this time.[28]  (See Pl.'s Mem. Supp. Mot. Am. Compl. [Docket No. 173], at 1-2).  However, reading his Proposed Fourth Amended Complaint[29] liberally, as this Court is required to do with *pro se* pleadings,[30] the Proposed Fourth Amended Complaint appears to differ from the operative Second Amended Complaint only as follows:

   • Defendant McDonald is named as a defendant in both his individual capacity

      and in his official capacity as an employee of Hennepin County Community

      Corrections and Rehabilitation, (Proposed 4th Am. Compl. [Docket No. 173]

---

[26] Plaintiff made a previous Motion to Amend Complaint, [Docket No. 131], but subsequently withdrew that Motion on or about December 12, 2013.  (See Notice of Withdrawal [Docket No. 170]).  Plaintiff self-described that withdrawn proposed complaint as his Third Amended Complaint.  [Docket No. 138].  He describes his present proposed amended complaint as his Fourth Amended Complaint.  (See Proposed 4th Am. Compl. [Docket No. 173], at 4).

[27] See fn.26, supra.

[28] In the Proposed Fourth Amended Complaint, itself, Plaintiff notes that the "Equal Employment Opportunity Commission on December 6, 2013 issued [Plaintiff a] Notice of Right to Sue letter and I am amending complaint within 90 days of Notice of Right to Sue letter from Equal Employment Opportunity Commission."  (Proposed 4th Am. Compl. [Docket No. 173], at 5, ¶ 3a).  However, Plaintiff did not attach a copy of his Notice of Right to Sue letter to his Proposed Fourth Amended Complaint or otherwise advise the Court of its contents or context.

[29] Plaintiff did not file his Proposed Fourth Amended Complaint as a separate document, but rather, it is attached as pages 4-31 of Plaintiff's Memorandum.  (See Pl.'s Mem. Supp. Mot. Am. Compl. [Docket No. 173], at 4-31).  Consequently, the page numbers applied by CM/ECF at the top of each page do not match the page numbers applied by Plaintiff at the bottom of every page.  The Court uses the page numbers applied to the top of the page by CM/ECF.

[30] Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("document[s] filed *pro se* [are] 'to be liberally construed'") (quoting Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)).

at 1 (caption));[31]

- Plaintiff appears to withdraw his § 1985, § 1986, and § 1988 claims, as neither statute is mentioned in the Proposed Fourth Amended Complaint, (See Id.);

- Plaintiff's newly numbered Count I asserts a § 1983 claim against Defendant McDonald that is substantially the same as the § 1983 claim asserted in his previous Count I, (Id. at 17, ¶¶ 68-75);

- Plaintiff's newly numbered Count VII alleges substantially the same intentional interference with contact claim as the claim alleged in his original Count II, (Id. at 22, ¶¶ 101-05);

- Under a newly numbered Count IV, the Proposed Fourth Amended Complaint alleges substantially the same § 12203 claim as that previously alleged as part of Count I in the Second Amended Complaint, (Id. at 20, ¶¶ 86-90);[32]

- The Proposed Fourth Amended Complaint adds the following new claims relative to Defendant McDonald:

  o Plaintiff's newly numbered Count II contains a claim under the Minneapolis Civil Rights Ordinance,[33] (Id. at 18-19, ¶¶ 76-80);

  o Plaintiff's newly numbered Count III contains a claim under the Minnesota Human Rights Act, Minn. Stat. § 363A, (Id. at 19-20, ¶¶ 81-

---

[31] Defendant McDonald currently is named as a defendant only in his individual capacity.  (2d Am. Compl. [Docket No. 7], at 1).

[32] Additionally, Plaintiff's new Count V purports to add a claim under Title V of the Americans with Disabilities Act against Defendant Hoff, Defendant McDonald, and the JACC Defendants.  (Proposed 4th Am. Compl. [Docket No. 173], at 20-21).  However, Title V of the ADA is merely another way of referring to 42 U.S.C. §§ 12201-12213.  See U.S. Equal Employment Opportunity Commission, "Titles I and V of the Americans with Disabilities Act of 1980," http://www.eeoc.gov/laws/statutes/ada.cfm, (identifying "Subchapter VI" and "Title V" as the same, listing under them § 12203).  Consequently, as a matter of law, Plaintiff's new Count V is identical in all respects to his newly numbered Count IV.

[33] Plaintiff provides a citation to Minn. Stat. 139.40 et seq.  That citation is in error, as Chapter 139 of the Minnesota Statutes concerns the Board of Arts, and does not contain a Section 40.  The proper citation is to MINNEAPOLIS, MINN., CODE § 139.40.

85);

o   Plaintiff's new Count VI contains a claim for "intentional interference with judicial process," (<u>Id.</u> at 21-22, ¶¶ 96-100); and

o   Plaintiff's new Count VIII contains a claim for conspiracy to aid and abet false arrest, (<u>Id.</u> at 22-23, ¶¶ 106-10).

## B.  Standard of Review

The Federal Rules of Civil Procedure allow twenty-one (21) days after service during which Plaintiff may freely amend his complaint.  Fed. R. Civ. P. 15(a)(1)(A).  After that period, Plaintiff may amend his complaint "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(1)(2).  The Supreme Court has explained the purposes of Rule 15(a) as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of such an apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be "freely given."

<u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  Although "parties do not have an absolute right to amend their pleadings, even under this liberal standard," <u>Sherman v. Winco Fireworks, Inc.</u>, 532 F.3d 709, 715 (8 th Cir. 2008), the Court begins "with a presumption of liberality."  <u>DeRoche v. All Am. Bottling Corp.</u>, 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998).

An amendment is considered to be futile if "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  <u>Cornelia I. Crowell GST Trust v. Possis Medical, Inc.</u>, 519 F.3d 778, 782 (8th Cir. 2008).  As such, an amendment to a pleading can be successfully challenged on the grounds of futility, if the claims

created by the amendment would not withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  See Humphreys v. Roche Biomedical Lab., Inc., 990 F.2d 1078, 1082 (8th Cir. 1993).

## C. Discussion

### 1. Count I

Plaintiff, invoking 42 U.S.C. § 1983, alleges that Defendant McDonald (along with Defendant Hoff, Defendant Schooler, and the JACC Defendants) violated his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.  (Proposed 4th Am. Compl. [Docket No. 173], at 17-18, ¶¶ 68-75).

Plaintiff's claims are futile, as his Proposed Amended Complaint does nothing to cure the deficiencies that prompted the Court to recommend summary judgment in the first place.  In short, Plaintiff alleges no new facts that would demonstrate why Defendant McDonald should not be entitled to absolute immunity, or why his claims would not be barred by Heck v. Humphrey.

### 2. Counts II and III

Plaintiff alleges violations of the Minneapolis City Code[34] and the Minnesota Human Rights Act.  (Proposed 4th Am. Compl. [Docket No. 173], at 18-20, ¶¶ 76-85).

The Court lacks original subject matter jurisdiction over these claims, which arise solely under Minnesota State law.  Additionally, because the Court ultimately recommends granting summary judgment with regard to Plaintiff's federal law claims, the Court sees no reason to exercise supplemental jurisdiction over these claims.

---

[34] Presumably, Plaintiff brings his city code claim under MINNEAPOLIS, MINN., CODE § 139.40(m), which prohibits "any reprisal . . . because another person opposed a discriminatory act forbidden under this title."

"The Court has broad discretion in deciding whether to continue hearing state claims following dismissal of federal claims."  Shimer v. Shingobee Island Water and Sewer Comm'n, No. 02-cv-953 (JRT/FLN), 2003 U.S. Dist. LEXIS 4210, at *26 (D. Minn. Mar. 18, 2003) (Tunheim, J.).  "In determining whether to exercise supplemental jurisdiction, courts consider factors such as judicial efficiency, convenience, and fairness to the litigants, but should 'exercise judicial restraint and avoid state law issues wherever possible.'"  Hylla v. Transp. Commc'n Int'l Union, No. 06-cv-4700 (JRT/RLE), 2007 U.S. Dist. LEXIS 75505, *11-12 (D. Minn. Sept. 28, 2007) (Tunheim, J.) (citing Condor Corp. v. City of St. Paul, 912 F.2d 215, 221 (8th Cir. 1990); and quoting Thomas v. Dickel, 213 F.3d 1023, 1026 (8th Cir. 2000)).  This Court therefore declines to exercise supplemental jurisdiction over Plaintiff's new proposed amended state law claims.

### 3.  Counts IV and V

Plaintiff alleges that Defendant McDonald (in concert with other Defendants) retaliated against him in violation of 42 U.S.C. § 12203.  (Proposed 4th Am. Compl. [Docket No. 173], at 20-21, ¶¶ 86-95).[35]

Plaintiff's proposed amended claims with regard to Defendant McDonald are futile, as the record demonstrates that the actions taken by Defendant McDonald in his capacity as a probation officer were, in fact, the result of Plaintiff's repeated violations of his conditions of release, and there is no evidence nor any specific facts alleged in the record to demonstrate that they were taken in retaliation for any ADA-related advocacy.

---

[35] As previously noted, although Plaintiff claims that Count IV "arises under Americans [with] Disabilities Act 42 U.S.C. § 12203," (Proposed Am. Compl. [Docket No. 173], at 20,  87), and that Count V "arises under Title V Americans [with] Disabilities Act," (Id. at 21, ¶ 92), those are merely different ways of referring to the same statute and, therefore, as a matter of law the claims are identical.  See fn.47, supra.

### 4.  Count VI

Plaintiff alleges "intentional interference with judicial process" against Defendant

McDonald and other Defendants.  (Proposed 4th Am. Compl. [Docket No. 173], at 21-22, ¶¶ 96-

100).

This proposed amended claim is futile.  This Court is unaware of any authority—either

pursuant to Federal law or to Minnesota State law—that would support Plaintiff's assertion that

there even *is* such a civil, private cause of action.[36]

### 5.  Count VII

Plaintiff alleges intentional interference with contract, a claim that mirrors Count II in the

presently operative Complaint.  (Proposed 4th Am. Compl. [Docket No. 173], at 22, ¶¶ 101-05).

This proposed amended claim is futile.  The fundamental flaw, as addressed above,

concerning Plaintiff's previous iteration of this claim remains his failure to demonstrate why his

probation subject to conditions of release should even be considered a "contract" for purposes of

such a claim.  See Part II.C.2, supra.  This deficiency is not remedied by Plaintiff's Proposed

Fourth Amended Complaint.

### 6.  Count VIII

Plaintiff alleges conspiracy to aid and abet false arrest, false imprisonment, and

---

[36] The Court's search of Federal and Minnesota State case law finds just one reference to "interference with judicial process," in Cook v. City of Minneapolis, No. 06-cv-579 (DWF/AJB), 2007 U.S. Dist. LEXIS 39817 (D. Minn. May 31, 2007) (Frank, J.).  In that case the plaintiff was told at the time of his arrest that he was being arrested "for interference with judicial process."  Id. at *11.  However, that brief mention does nothing to illuminate for the Court what Plaintiff's claim might be in the present case.

  The State of Illinois apparently recognizes a tort for "intentional interference with judicial process."  See Harris Trust & Sav. Bank v. Phillips, 154 Ill. App. 3d 574 (Ill. Ct. App. 1987).  However, it is not clear what the elements of such a tort might be, and, more important for purposes of the present Motion, Plaintiff has done nothing to demonstrate either (a) why *this court* should recognize such a cause of action, or (b) that he has sufficiently plead his claim.

  On occasion, the prohibition against "[o]bstructing justice [or] intimidating [a] party, witness or juror" contained in 42 U.S.C. § 1985 has been described as a prohibition against "interference with judicial process."  See, e.g., Bush v. Zeeland Bd. of Educ., 1997 U.S. Dist. LEXIS 3393, at *32 (W.D. Mich. Feb. 27, 1997).  However, Plaintiff's Proposed Fourth Amended Complaint does not offer any *specific facts* that would support such a § 1985 claim.

kidnapping against Defendant McDonald and other Defendants. (Proposed 4th Am. Compl. [Docket No. 173], at 22-23, ¶¶ 106-10). It is evident that Plaintiff again refers to the revocation of his conditional release.

This proposed amended claim is futile. The factual underpinnings of this claim are no different from Plaintiff's § 1983 claim, and they remain equally deficient. As a matter of law, under Heck v. Humphrey, Plaintiff cannot bring these claims unless the basis for his "arrest" has been revoked or expunged, and he has plead no facts that would suggest that his "arrest," or more precisely the revocation of his conditional release, have ever been revoked or expunged.

Consequently, Plaintiff's Motion to Amend Complaint, [Docket No. 171], as to Defendant McDonald is **DENIED** in all respects.[37]


IV.    **CONCLUSION**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion to Amend Complaint, [Docket No. 171], is **DENIED**, as set forth above.


Additionally, based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED**:

2.  That Defendant McDonald's Motion for Summary Judgment, [Docket No. 155], be **GRANTED**, as set forth above; and

---

[37] Because Plaintiff's Motion to Amend Complaint, [Docket No. 171], was previously denied with regard to all other Defendants, (see Mem. Op. & Order [Docket No. 197], at 20-22), the Motion is now terminated.

**3.** That all claims against Defendant McDonald in this case be **DISMISSED with**

**prejudice**.


Dated: February 19, 2014                                    s/Leo I. Brisbois_____
                                                           LEO I. BRISBOIS
                                                           United States Magistrate Judge


# N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by March 5, 2014**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within **fourteen (14) days** of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.